UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                )

GRANITE STATE INSURANCE      )
COMPANY,                           )
                                )

         Plaintiff,       )

                                )  Civil Action No.: 09 CV 10607 (RJH) (DCF)
         -against-        )           ECF Case
                                )

CLEARWATER INSURANCE COMPANY,  )
f/k/a ODYSSEY REINSURANCE     )
CORPORATION, f/k/a SKANDIA     )
AMERICA REINSURANCE        )
CORPORATION,                 )
                                )

         Defendant.     )
--------------------------------------------------------x

## CLEARWATER INSURANCE COMPANY'S
## MEMORANDUM OF LAW IN SUPPORT
## <u>OF ITS MOTION TO COMPEL</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

    A.   The Contracts at Issue in this Litigation ............................................................. 2

       i.     Corporate History of McGraw and Related Companies ................................... 3

      ii.    The Halliburton Settlement ............................................................................ 5

     iii.   Notice of the Halliburton Settlement under the McGraw Fac Certs ............... 6

     iv.   The Federal Mogul Settlement ...................................................................... 8

      v.    Notice of the Federal Mogul Settlement under the McGraw Fac Certs ......... 8

    B.   Clearwater's Answer ......................................................................................... 9

    C.   Clearwater's Discovery Requests .................................................................... 10

ARGUMENT ............................................................................................................... 13

    I.    The Federal Rules of Civil Procedure reflect a liberal discovery policy and a broad
construction of relevance ..................................................................................... 13

    II.   The documents requested by Clearwater contain, or are reasonably likely to lead to,  the
discovery of admissible evidence ........................................................................ 14

      A.   Document Requests Nos. 23, 24 and 28 ........................................................ 14

      B.   Documents concerning other reinsurers........................................................ 18

      1.    Requests Nos. 16, 39 and 42........................................................................ 18

      2.    Requests Nos. 15 and 20 ............................................................................. 20

      3.    Granite State's "confidential/business proprietary" material objection has no merit 21

CONCLUSION............................................................................................................. 22

## TABLE OF AUTHORITIES

### Cases

*AIU Ins. Co. v. TIG Ins. Co.*,
   No. 07 Civ. 7052, 2008 WL 5062030 (S.D.N.Y. Nov. 25, 2008)……..........13, 20

*Arkwright Mutual Ins. Co. v. National Union Fire Ins Co. of Pittsburgh, PA.*,
   90 Civ. 7811, 1993 WL 437767 (S.D.N.Y. Oct. 26, 1993)………………....…15

*Bramell v. Aspen Exploration, Inc.*,
   No. 4:05-CV-384, 2008 WL 4425368 (E.D. Tex. Sep. 24, 2008)………………21

*Chembio Diagnostic Systems, Inc. v. Saliva Diagnostic Systems, Inc.*,
   236 F.R.D. 129 (E.D.N.Y. 2006)……………………………………….…………22

*Condit v. Dunne*,
   225 F.R.D. 100 (S.D.N.Y. 2004)………………………………………………...13

*Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*,
   951 F.2d 1357 (2d Cir. 1991)………………………………………………...13, 16

*Dean v. Anderson*,
   No. 01-2599, 2002 WL 1377729 (D. Kan. June 06, 2002)………………………21

*JPMorgan Chase Bank, N.A. v. IDW Group, LLC*,
   No. 08 Civ. 9116, 2009 WL 1422743 (S.D.N.Y. 2009)…………………………13

*Melendez v. Greiner*,
   No. 01 Civ.07888, 2003 WL 22434101 (S.D.N.Y. Oct. 23, 2003)……………...13

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Clearwater Ins. Co.*,
   No. 04-CV-5032, 2007 WL 2106098 (S.D.N.Y. July 21, 2007)……………18, 20

*Novomoskvovsk Joint Stock Co. "Azot" v. Revson*,
   No. 95 Civ. 5399, 1996 WL 282085 (S.D.N.Y. May 28, 1996)…….…………...21

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)……………………………………………...13, 16, 18

*Security Ins. Co. of Hartford v. Trustmark Ins. Co.*,
   218 F.R.D. 18 (D. Conn. 2003) (Feb. 5, 2003)………………………………18, 20

*Travelers Cas. and Sur. Co. v. Insurance Co. of North America*,
   609 F.3d 143 (3d Cir. 2010)………………………………………………...20

*Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.,*
    762 F. Supp. 566 (S.D.N.Y. 1991)…………………………………….…………17

**Rules**

Federal Rule of Civil Procedure 26(b)(1)………………………………………….…13

**Other References**

Barry R. Ostranger and Mary Kay Vyskocil, <u>Modern Reinsurance Law and Practice</u>
(2d ed. 2000)…………………………………………………………………….………………1

Defendant Clearwater Insurance Company (f/k/a Odyssey Reinsurance Corporation and Skandia America Reinsurance Corporation) ("Clearwater"), by its attorneys Clyde & Co US LLP, respectfully submits this memorandum of law, together with the Declaration of Adam A. Nagorski ("Nagorski Dec.") dated October 22, 2010, in support of its Motion to Compel dated October 22, 2010.

## PRELIMINARY STATEMENT

This breach of contract action was brought by Plaintiff Granite State Insurance Company ("Granite State") against Defendant Clearwater Insurance Company ("Clearwater") seeking to recover amounts allegedly due under certain facultative reinsurance certificates.[1] Clearwater disputes any obligation for the amounts Granite State seeks because they are not covered under the facultative reinsurance contracts and Granite State failed to fulfill its obligations under those contracts, including, but not limited to, its obligation to "notify [Clearwater] promptly of any event or development which. . . might result in a claim against [Clearwater]." (Facultative Reinsurance Certificates at General Conditions ¶ 3(a), Nagorski Dec. Exs. 21 and 22)

In response to Clearwater's document requests in this matter, Granite State has categorically refused to produce any documents responsive to Clearwater's Requests Nos. 23, 24, and 28. It has also refused to produce documents responsive to Requests Nos. 15, 16, 20, 39, and 42 to the extent those requests call for the production of documents relating to reinsurers other than Clearwater. Clearwater has tried repeatedly to meet and confer with Granite State

---

[1] "Reinsurance is the transfer from an insurer to a reinsurer of all or a portion of the risk assumed under a policy or a group of policies." Barry R. Ostranger and Mary Kay Vyskocil, <u>Modern Reinsurance Law and Practice</u> § 1.01[a] (2d ed. 2000). Facultative certificates are "reinsurance contracts negotiated with respect to a specific risk insured by a particular policy or policies." *Id.* at § 1.03.

concerning its refusal to produce these documents.  (Nagorski Dec. ¶ 3, Exs. 3-9)  Granite State,

however, has not agreed to produce any of them, thus necessitating this motion to compel.

Clearwater respectfully submits that because the documents it seeks contain, or are likely

to lead to the discovery of, admissible evidence concerning the claims and defenses in this

litigation, Granite State should be made to produce them.

## STATEMENT OF FACTS

**A.      The Contracts at Issue in this Litigation**

Granite State is one of many property and casualty insurers within the American

Insurance Group of companies ("AIG Companies").  (*See* Granite State Rule 7.1 Stmt., Dkt. No.

2 (Granite State is an indirect subsidiary of Chartis Inc. and, in turn, American International

Group, Inc.))  As is described further below, this litigation involves reinsurance coverage for

payments to Federal Mogul Corporation ("Federal Mogul") and affiliated entities made in

connection with the AIG company-wide settlement of various insurance policies issued by

numerous AIG Companies, including Granite State. (*See* 2008 Federal Mogul Settlement at

Attachment A, Nagorski Dec. Ex. 26)

Two of the AIG Company policies covered by the 2008 Federal Mogul Settlement

(discussed further below) were issued by Granite State to McGraw Edison Company

("McGraw"), one of which was effective March 1, 1980 to March 1, 1981 with limits of $10

million part of $25 million excess of $25 million and the other of which was effective March 1,

1981 to March 1, 1982 with limits of $15 million part of $25 million excess of $25 million (the

"Granite State/McGraw Policies").[2]  (Amended Complaint, Dkt. No. 17 at ¶¶ 14, 16)

---

[2] The Amended Complaint also lists two other policies issued by Granite State to McGraw, but
those policies are now the subject of the parties' dispute in arbitration.  (*See* Letter from Stephen

Granite State and Clearwater entered into facultative reinsurance certificates under which Clearwater agreed, subject to certain terms and conditions, to cover Granite State for a portion of losses that Granite State paid under the Granite State/McGraw Policies.  Under the facultative certificates covering the Granite State/McGraw Policies (the "McGraw Fac Certs"), Granite State agreed, among other things, to (1) "notify [Clearwater] promptly of any event or development which [Granite State] reasonably believes might result in a claim against [Clearwater]" and (2) "forward to [Clearwater] copies of such pleadings and reports of investigations as are pertinent to the claim and/or as may be requested by [Clearwater]."  (Nagorski Dec. Exs. 21 and 22, at General Conditions ¶ 3(a))[3]

### i.    Corporate History of McGraw and Related Companies

McGraw, through its subsidiary Studebaker-Worthington, Inc. ("Studebaker-Worthington"), was the successor corporation of Wagner Electric Corporation ("Wagner Electric"), which manufactured and sold asbestos-containing products.  (*See* January 4, 2007 memorandum by Leticia Diaz at 2-3, Nagorski Dec. Ex. 25; June 14, 2010 letter from Leticia Diaz to Evelyn Drew at 1-2, Nagorski Dec. Ex. 35)  In 1984 and 1985, McGraw sold to Dresser Industries, Inc. ("Dresser") certain subsidiaries of Studebaker-Worthington other than Wagner Electric, which also manufactured various asbestos-containing products (the "Studebaker-

---

M. Kennedy to Stuart E. Cotton, dated July 2, 2010, Nagorski Dec. Ex. 19; Letter from Stuart E. Cotton to Stephen M. Kennedy, dated September 10, 2010, Nagorski Dec. Ex. 20)  The parties have nevertheless agreed to exchange documents relating to all four of the McGraw policies that Granite State originally sued under. (*See* Letter from Adam A. Nagorski to Matthew J. Lasky, dated September 17, 2010, Nagorski Dec. Ex. 6 at 3; Letter from Matthew J. Lasky to Adam A. Nagorski dated September 22, 2010, Nagorski Dec. Ex. 7 at 2)

[3] This litigation also involves a reinsurance contract between Granite State and Clearwater covering a policy issued by Granite State to Colt Industries Inc. (Amended Complaint, Dkt. No. 17 at ¶ 6.)  Documents relating to that reinsurance contract are not the subject of this motion to compel.

Worthington Subsidiaries"). (*Id.*) Thereafter, McGraw sold Wagner Electric which eventually became a part of Federal Mogul. (*Id.*)

In 1998, the Studebaker-Worthington Subsidiaries sold to Dresser became a part of the Halliburton Company ("Halliburton"). (*Id.*) As a result of the sale of the Studebaker-Worthington Subsidiaries and Wagner Electric, asbestos-bodily injury claims were asserted against (1) Federal Mogul, as successor to, among others, Wagner Electric; and (2) Halliburton, as successor to, among others, the Studebaker-Worthington Subsidiaries. (*Id.*) In response, Halliburton and Federal Mogul made competing claims under the Granite State/McGraw Policies as well as other policies issued by additional AIG Companies other than Granite State. (*Id.*; *see also* June 10, 2009 memorandum to "ALL INTERESTED REINSURERS" by Leticia Diaz at 2-3, Nagorski Dec. Ex. 25.)

In response to Halliburton's and Federal Mogul's claims under its insurance policies, the AIG Companies, including Granite State, raised various coverage issues. (*Id.*) As a result, insurance coverage actions between the AIG Companies and Halliburton and/or Federal Mogul ensued. (*Id.*) As further described below, the settlements of those actions were handled by the AIG Companies on an AIG company-wide basis, and involved many more AIG insurers and policies than just Granite State and the Granite State/McGraw Policies. (*See, e.g.*, 2008 Federal Mogul Settlement, Nagorski Dec. Ex. 26 (executed by a single representative for all AIG Companies, but involving over forty policies issued by ten different AIG companies between 1969 and 1985); June 10, 2009 memorandum to "ALL INTERESTED REINSURERS" by

Leticia Diaz, Nagorski Dec. Ex. 25 (describing the settlement between "AIG Companies" and

Halliburton))[4]

ii.    **The Halliburton Settlement**

In November 2004, the AIG Companies finalized a settlement agreement of its coverage

dispute with Halliburton under all of the AIG Companies' policies (the "2004 Halliburton

Settlement"). (*See* January 4, 2007 memorandum by Leticia Diaz at 1, Nagorski Dec. Ex. 25)

Under this agreement, the AIG Companies agreed to pay over a five year period approximately

$223 million out of approximately $550 million in total policy limits. (*See* September 13, 2010

AIG memorandum to reinsurers, Nagorski Dec. Ex. 36 at 2 (stating that there were three sets of

policy limits at issue in the Halliburton settlement, which totaled $250 million, $232.878 million,

and $68 million) This settlement amount thereby represented approximately a sixty percent

(60%) discount off the total available limits of $550 million. Under the settlement agreement,

Halliburton agreed to accept immediate payment of approximately $173 million which

represented the net present value of the approximately $223 million settlement amount. (*See id.*

at 3)

As part of AIG's settlement with Halliburton, the parties had to resolve the issue of

Halliburton's and Federal Mogul's competing claims under the AIG Companies' policies,

including the Granite State/McGraw Policies. This issue was resolved by a "Partitioning

Agreement," also in November 2004, between AIG, Halliburton and Federal Mogul. (Nagorski

Dec. Ex. 26) Pursuant to that agreement, the limits of all AIG Companies' policies under which

Federal Mogul and Halliburton had made competing claims were evenly split (50/50) between

---

[4] Granite State has agreed to produce documents "in its possession or the possession of any
affiliates that were involved in the handling of the claims at issue." (Letter from Matthew J.

Halliburton and Federal Mogul. (*See id.*; September 13, 2010 AIG memorandum to reinsurers at 3, Nagorski Dec. Ex. 36)

As it relates to the two Granite State/McGraw Policies at issue in this litigation, the Partitioning Agreement split the limits of those policies as follows: (1) under the March 1, 1980 – March 1, 1981 Policy of $10 million, Federal Mogul received $5 million and Halliburton received $5 million; and (2) under the March 1, 1981 – March 2, 1982 Policy of $15 million, Federal Mogul received $7.5 million and Halliburton received $7.5 million. (*See id.*; *see also* McGraw Fac Certs, Nagorski Dec. Exs. 21 and 22; Letter from Steve Schwesinger to Evelyn Drew, dated November 23, 2009, Nagorski Dec. Ex. 28)

### iii.    Notice of the Halliburton Settlement under the McGraw Fac Certs

Although the McGraw Fac Certs require Granite State to provide Clearwater with "prompt" notice of claims, Granite State did not advise Clearwater of the 2004 Halliburton Settlement until April 2009, almost five years after it happened and many years after it had known about the numerous asbestos-bodily injury claims asserted against McGraw and had been involved in coverage litigations concerning the Granite State/McGraw Policies. (*See* E-mail correspondence from MaryEllen Wakeman to Michael Somma dated April 1, 2009, Nagorski Dec. Ex. 23; January 4, 2007 memorandum by Leticia Diaz, Nagorski Dec. Ex. 25) Since this initial April 2009 notice, Granite State has also failed to provide information necessary to support its claims under the McGraw Fac Certs, including even a copy of the Halliburton Settlement, and has been largely unresponsive to Clearwater's requests for supporting documentation. (*See* Correspondence between Granite State and Clearwater personnel dating between June 2009 and June 2010, Nagorski Dec. Exs. 24-35)

---

Lasky to Adam A. Nagorski dated September 22, 2010, Nagorski Dec. Ex. 7 at 1.)

The AIG Companies have advised their reinsurers, including, Clearwater, that the $223 million global settlement with Halliburton has "been allocated pursuant to a bathtub allocation model", meaning that it has allocated the settlement payments to the limits of the lowest level AIG policies first and then to the next higher layers as the limits of the lower layers are deemed exhausted. (*See* Letter from Leticia Diaz to Evelyn Drew dated June 14, 2010 at 3, Nagorski Dec. Ex. 35)  As a result of this allocation approach, Granite State has billed its reinsurers including Clearwater as if it were liable for one hundred percent (100%) of the limits of the Granite State/McGraw Policies, despite the fact that it received a discount of approximately sixty percent (60%) on those limits (as did the other AIG Companies)  (*See, e.g.*, June 8, 2009 letter from Julie Tavernese to MaryEllen Wakeman, Nagorski Dec. Ex. 24 (noting that Granite State had reserved the "full policy limits" of the Granite State/McGraw Policies))[5]

In response to these billings, Clearwater has asked Granite State to provide it with various information, including, for example, information relating to the reserving of the underlying claims. (*See, e.g., id.* (requesting payment and reserve allocations for settlements under the McGraw Policies; *see also* Correspondence between Granite State and Clearwater personnel dating between June 2009 and June 2010, Nagorski Dec. Exs. 25-35.)  Clearwater also objected to, among other things, the AIG Companies' allocation of the 2004 Halliburton Settlement, and late notice of the claims under the McGraw Fac Certs.  (*See, e.g.*, June 8, 2009 letter from Julie Tavernese to MaryEllen Wakeman, Nagorski Dec. Ex. 24 (asking "why AIG advised us of these reserve increases in April, 2009 when they were aware an exposure existed at

---

[5] As noted above, pursuant to the Partitioning Agreement, the 100% amount available to Halliburton under the two Granite State/McGraw Policies at issue here was $5 million under the March 1, 1980-81 policy (which represents 50% of the $10 million policy limit) and $7.5

the time they settled the Dresser [Halliburton] claim in 2004"); E-mail correspondence from

Evelyn Drew to MaryEllen Wakeman dated October 21, 2009, Nagorski Dec. Ex. 27 (asking

whether the Halliburton settlement was on discounted basis, and if so, why Granite State is

reserving the full limits of the Granite State/McGraw Policies))

### iv.   The Federal Mogul Settlement

In December 2008, AIG entered into a settlement agreement with Federal Mogul

resolving their coverage disputes under all of the policies that the AIG Companies issued to

Federal Mogul, including the Granite State/McGraw Policies (the "2008 Federal Mogul

Settlement") (Nagorski Dec. Ex. 26)  Under the 2008 Federal Mogul Settlement Agreement, AIG

agreed to pay Federal Mogul $72 million out of a total of approximately $150 million in policy

limits.  (*Id.*; Letter from Leticia Diaz to Evelyn Drew dated June 14, 2010 at 2, Nagorski Dec.

Ex. 35)  This amount therefore represents a discount off of the total AIG policy limits of at least

fifty-two percent (52%).

### v.   Notice of the Federal Mogul Settlement under the McGraw Fac Certs

Granite State did not notify Clearwater of the Federal Mogul claims until April 2009,

despite the fact that Granite State and the other AIG Companies had entered into the Halliburton

Settlement and the Partitioning Agreement in November 2004 and had earlier been involved in

multiple coverage litigations concerning the Granite State/McGraw Policies.  (*See, e.g.*, E-mail

correspondence from MaryEllen Wakeman to Michael Somma dated April 1, 2009, Nagorski

Dec. Ex. 23; E-mail correspondence from MaryEllen Wakeman to Evelyn Drew dated July 29,

2009 and attachments thereto, Nagorski Dec. Ex. 25)  Subsequent to its initial notice in April

---

million under the March 1, 1981-82 policy (which represents 50% of the $15 million policy
limit).

2009, Granite State has failed to provide Clearwater with information relevant to its claims under the McGraw Fac Certs. (*See* Correspondence between Granite State and Clearwater personnel dating between June 2009 and June 2010, Nagorski Dec. Exs. 25-35.)

From the information that Granite State has provided to Clearwater regarding the 2008 Federal Mogul Settlement, it appears that the AIG Companies are – like the 2004 Halliburton Settlement Agreement – billing their reinsurers based on a bathtub allocation. (*See* Letter from Lynn A. Mitchell to Jeffrey M. Wactlar dated February 23, 2009 and accompanying worksheets, Nagorski Dec. Ex. 26) Under this approach, Granite State is billing Clearwater as if it were liable for one hundred percent (100%) of the "split" limits under 1980-81 and 1981-82 Granite State/McGraw Policies when, in fact, it received from Halliburton a discount of approximately fifty-two percent (52%) off those limits. (*See id.*; Letter from Leticia Diaz to Evelyn Drew dated June 14, 2010, Nagorski Dec. Ex. 35)

As with the 2004 Halliburton Settlement, Clearwater has written to Granite State regarding the 2008 Federal Mogul Settlement objecting to, among other things, its "bathtub" allocation and late notice of claims. (*See, e.g.*, E-mail correspondence from Evelyn Drew to Chris Magnotta dated December 29, 2009, Nagorski Dec. Ex. 31 (asking why the Federal Mogul Settlement payment "was allocated only the lower layer policies and not to all [AIG] policies released"); June 8, 2009 letter from Julie Tavernese to MaryEllen Wakeman, Nagorski Dec. Ex. 24 (asking "why AIG advised us of these reserve increases in April 2009 when they were aware an exposure existed at the time they settled the Dresser [Halliburton] claim in 2004")).

**B.   Clearwater's Answer**

In its Answer to the Amended Complaint, Clearwater asserts several affirmative defenses, including: (1) Granite State "failed to implement reasonable and adequate practices and

procedures to ensure the proper reporting to Clearwater of notice and related claim information," (2) Granite State's claims "may be barred in whole or in part by its failure to provide timely and sufficient notice of loss under the applicable facultative certificates," (3) some or all of the claims paid by Granite State "may not be covered or may be excluded from the coverage provided by the applicable facultative certificates," and (4) Clearwater's obligations under each facultative certificate "are subject to all terms, conditions and limitations in such certificate." (Dkt. No. 18 at ¶¶ 45-48)

## C.   Clearwater's Discovery Requests

The following are the Clearwater document requests in response to which Granite State has categorically refused to produce documents and Granite State's Objections to those requests:

**Clearwater Request No. 23.**  Any and all documents concerning any discussion, correspondence, e-mails, or other communications concerning the existence, need, sufficiency, and/or adequacy of reporting or notice procedures, practices, or guidelines used by AIG to report to or notify its reinsurers regarding any asbestos losses or claims.

*AIG Specific Objection No. 23.*  Granite State objects to this Request as vague, overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

**Clearwater Request No. 24.**  Any and all documents concerning any discussion, correspondence, e-mails, or other communications concerning the timeliness or untimeliness of AIG's reporting of asbestos losses or claims to reinsurers.

*AIG Specific Objection No. 24.*  Granite State objects to this Request as vague, overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

**Clearwater Request No. 28.**  Any and all documents concerning any reviews, analyses, or studies by any consultant or other third party concerning AIG's reserves relating to asbestos exposures, claims, and/or losses.

*AIG Specific Objection No. 28.*  Granite State objects to this Request as vague, overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

(Nagorski Dec. Ex. 1 at 8-9; Nagorski Dec. Ex. 2 at 11-13)

Additionally, Granite State has refused to produce documents relating to other reinsurers.

(Nagorski Dec. Ex. 2 at 2, General Objection No. 4). Based on this refusal, Granite State is

withholding documents responsive to the following requests:

**Clearwater Request No. 15.** Any and all notices or reports by AIG to its reinsurers concerning actual or potential losses, claims, or reserves under the AIG Policies and/or the 1982 and 1983 McGraw Policies,[6] including, but not limited to, precautionary notices.

*Specific Objection No. 15.* Granite State objects to this Request to the extent it seeks confidential and business propriety information relating to reinsurers other than Clearwater. Without waiving these or any of Granite State's General Objections, Granite State refers Clearwater to its Response to Request No.7.[7]

**Clearwater Request No. 16.** Any and all documents and communications concerning any reinsurance in addition to the Clearwater Fac Certs potentially or actually available to AIG for any losses, expenses, and/or defense costs under the AIG Policies.

*Specific Objection No. 16.* Granite State objects to this Request to the extent it seeks confidential and business propriety information relating to reinsurers other than Clearwater. Granite State also objects to this request as vague, overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

**Clearwater Request No. 20.** Any and all documents and communications concerning AIG notifying Clearwater – including, but not limited to, the decision to, or the decision not to, notify Clearwater or reinsurers generally – regarding

---

[6] "AIG Policies" and the "1982 and 1983 McGraw Policies" refer to the policies issued by Granite State to McGraw that are reinsured under the McGraw Fac Certs that are the subject of the Amended Complaint. (Nagorski Dec. Ex. 1 at 4; Amended Complaint, Dkt. No. 17 at ¶¶ 14, 16, 18, 20)

[7] AIG's response to Request No. 7 reads: "Granite State objects to this Request as it is vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these or any of Granite State's General Objections, Granite State refers Clearwater to the responsive documents in its initial production dated May 25, 2010. Further, Granite State will produce the relevant reinsurance claims files for the Colt Industries Inc. ("Colt") and McGraw Edison Company ("McGraw Edison") losses which have been billed to Clearwater and which are the subject of this action as set forth in Granite State's Amended Complaint, dated April 28, 2010, but which are not subject to Clearwater's arbitration demand, dated July 2, 2010."

actual or potential claims, losses, and/or settlements relating to the AIG Policies and/or the 1982 and 1983 McGraw Policies, either directly or through an intermediary.

*Specific Objection No. 20.*  Granite State objects to this Request to the extent it seeks confidential and business propriety information relating to reinsurers other than Clearwater. Without waiving these or any of Granite State's General Objections, Granite State refers Clearwater to its Response to Request No.7.

**Clearwater Request No. 39.**  Any and all documents concerning the reinsurance of all of the policies issued by AIG that are the subject of the Dresser Settlement Agreement, the Partitioning Agreement, or the Federal-Mogul Settlement Agreement, including, but not limited to, documents concerning the reinsurance contracts covering those policies and any and all analyses, reports, and other documents concerning the allocation to the reinsurance contracts covering those policies.

*Specific Objection No. 39.*  Granite State objects to this Request to the extent it seeks confidential and business propriety information relating to reinsurers other than Clearwater. Granite State further objects to this Request as it is vague, overboard, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these or any of Granite State's General Objections, Granite State refers Clearwater to its Response to Request No.7.

**Clearwater Request No. 42.**   Any and all documents concerning AIG's allocation of payments under settlements of the AIG Policies to reinsurers, including, but not limited to, documents concerning the method of such allocation and/or how AIG accounted for any discount off total available AIG policy limits that it received in any settlement.

*Specific Objection No. 42.*  Granite State objects to this Request to the extent it seeks confidential and business propriety information relating to reinsurers other than Clearwater. Without waiving these or any of Granite State's General Objections, Granite State refers Clearwater to its Response to Request No.7.

**ARGUMENT**

**I.    The Federal Rules of Civil Procedure reflect a liberal discovery policy
and a broad construction of relevance**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Rule 26(b)(1) should be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Accordingly, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. . . . Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Id.*; *see also Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) ("This obviously broad rule [26(b)(1)] is liberally construed.") (citing *Oppenheimer Fund*, 437 U.S. at 351); *JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, No. 08 Civ. 9116, 2009 WL 1422743, at *1 (S.D.N.Y. 2009) (same).[8]

"Once any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper." *Condit v. Dunne*, 225

---

[8] Clearwater contends that Illinois law governs the substantive issues in this case, and its citation to case law decided by courts in New York and/or other states in this memorandum is solely in support of the discovery issues it has raised in its motion to compel. *See, e.g.*, *AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052, 2008 WL 5062030, at *4 (S.D.N.Y. Nov. 25, 2008) (applying New York law for the narrow purpose of resolving a discovery dispute concerning privilege because "[a]lthough the parties disagree as to which state's law governs the underlying breach-of-contract dispute . . . they agree that New York law governs the attorney-client privilege issues").

F.R.D. 100, 106 (S.D.N.Y. 2004) (citation and internal quotation omitted).  The party objecting

to discovery of information must explain why its objections are proper.  *Melendez v. Greiner*,

No. 01 Civ.07888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003) (Freeman, J.).  "General

and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude

discovery of requested information." *Melendez*, 2003 WL 22434101, at *1 (also holding that "if

the defendants wish to resist discovery on the ground of burden, then they must adequately

demonstrate the nature and extent of the claimed burden. . . . '[C]onclusory assertion of

burdensomeness is 'entitled to no weight whatsoever.'") (citations omitted).

## II.    The documents requested by Clearwater contain, or are reasonably likely to lead to, the discovery of admissible evidence

The documents sought by Clearwater may be organized into two groups: (1) documents

responsive to requests with which Granite State has categorically refused to comply (Requests

Nos. 23, 24 and 28); and (2) documents concerning reinsurers other than Clearwater (Requests

Nos. 15, 16, 20, 39, 42).  Granite State's objections to producing these documents are based on

relevance, vagueness, over breadth and/or burdensomeness, and, with respect to documents

relating to other reinsurers, confidentiality and proprietary information.  These objections are

unfounded and should be rejected.

### A.    Document Requests Nos. 23, 24 and 28

Clearwater's Requests Nos. 23, 24 and 28 are relevant to two central issues in this

litigation:  (1) whether Granite State complied with its obligation under the McGraw Fac Certs to

"notify [Clearwater] promptly of any event or development . . . which [Granite State] reasonably

believes might result in a claim against [Clearwater]"; and (2) whether Granite State[9]

implemented routine practices and procedures to ensure prompt notice of asbestos claims to its

reinsurers, including Clearwater. (*See* Clearwater's Answer to Amended Complaint, Dkt. 18 at

¶¶ 45-46)[10]

Request No. 23 seeks documents concerning any communications relating to the

"existence, need, sufficiency, and/or adequacy of reporting or notice procedures, practices, or

guidelines used by AIG to report to or notify its reinsurers regarding any asbestos losses or

claims." (Nagorski Dec. Ex. 1 at 8.)  On its face, this request is clearly designed to lead to the

discovery of admissible evidence concerning, for example: (1) whether and the extent to which

Granite State actually has reinsurance asbestos claims reporting procedures in place; (2) if such

procedures are in place, when they were implemented; (3) whether such procedures adequately

take into account the particular reporting obligations of each reinsurance contract, including the

---

[9] To be clear, for the purposes of Clearwater's discovery requests and its motion to compel, references to "Granite State" are intended to include Granite State and American International Group, Inc. and its corporate affiliates, such as AIG Domestic Claims, Inc. and Chartis Claims, Inc. (*See, e.g.*, Letter from Leticia Diaz to Casey Johnson dated July 17, 2009 and Letter from Leticia Diaz to Evelyn Drew dated June 14, 2010, Nagorski Dec. Exs. 25 and 35)  Indeed, when pressed by Clearwater, Granite State agreed to produce documents "in its possession or the possession of any affiliates that were involved in the handling of the claims at issue." (*See* Letter from Adam A. Nagorski to Matthew J. Lasky dated August 11, 2010 at 1, Nagorski Dec. Ex. 3; Letter from Matthew J. Lasky to Adam A. Nagorski dated September 22, 2010 at 1, Nagorski Dec. Ex. 7)

[10] Based on comments made by counsel for Granite State during the parties' October 21, 2010 conference call with Magistrate Judge Freeman, Clearwater expects Granite State to argue that Clearwater's defenses are not meritorious and, therefore, the discovery Clearwater seeks should be denied.  While Clearwater maintains that its defenses are valid, any argument by Granite State that discovery may be denied because of the alleged lack of merit of Clearwater's defenses should be rejected, as the merits of claims and defenses in a case are not the proper subject of discovery motions. *See Arkwright Mutual Ins. Co. v. National Union Fire Ins Co. of Pittsburgh, PA.*, 90 Civ. 7811, 1993 WL 437767, at *3 (S.D.N.Y. Oct. 26, 1993) (holding, in a reinsurance dispute, that insurer's discovery motion was not proper forum for deciding substantive merits of reinsurer's claim of rescission).

McGraw Fac Certs; and (4) whether the procedures are adequate to ensure that Granite State

meets its reinsurance reporting obligations under those contracts.

Request No. 24 seeks documents concerning communications relating to "the timeliness

or untimeliness of AIG's reporting of asbestos losses or claims to reinsurers." (Nagorski Dec.

Ex. 1 at 8)  To the extent that there are documents concerning whether Granite State has been

timely or untimely in reporting asbestos claims to its reinsurers, those documents would be

relevant to or could lead to the discovery of admissible evidence relating to (1) whether Granite

State has implemented reinsurance reporting procedures for asbestos losses, and the sufficiency

of any such procedures; and (2) whether Granite State complied with its notice obligations under

the McGraw Fac Certs.

Granite State objected to Request Nos. 23 and 24 on the grounds that they are "vague"

"overbroad", and not reasonably calculated to lead to the discovery of admissible evidence.

(Nagorski Dec. Ex. 2 at 11)  These requests, however, are clear on their face.  Further, while

Clearwater has a reasonable basis to seek documents relating to Granite State's reporting of any

type of reinsurance claims, it has limited its requests to information solely relating to asbestos

claims, which are the type involved in this litigation.  Therefore, contrary to Granite State's

contention, the document requests are reasonably tailored to encompass matters that bear on

issues that are or may be involved in this case. *See Oppenheimer Fund*, 437 U.S. at 351; *Daval*

*Steel Products,* 951 F.2d at 1367.

Request No. 28 seeks "[a]ny and all documents concerning any reviews, analyses, or

studies by any consultant or other third party concerning AIG's reserves relating to asbestos

exposures, claims, and/or losses." (Nagorski Dec. Ex. 1 at 12)  Granite State has stated in a meet

and confer discussion that its notification to reinsurers of claims may depend upon the level of

reserves it has posted for those claims. (*See* Nagorski Dec. ¶ 4) *See also Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 762 F. Supp. 566, 581 (S.D.N.Y. 1991) ("Under industry custom and practice one element in the timeliness of notice under a reinsurance agreement is the posting of a reserve by the ceding company"), *rev'd in part, on other grounds*, 4 F.3d 1049 (2d Cir. 1993).

Accordingly, to the extent that Granite State's practices and procedures of notifying reinsurers of asbestos claims are based on, in any way, the underlying reserves its sets for those claims, then it should be made to produce documents concerning any analysis or study of the adequacy of its asbestos loss reserves and/or its practices and procedures for setting such reserves.

Clearly, if those documents establish that AIG Companies do not routinely and/or timely establish loss reserves for asbestos claims, then those documents would be relevant to the issue of whether AIG Companies have established routine procedures to ensure prompt notice to its reinsurers. According to publicly available information, Clearwater is aware of at least one analysis concerning the AIG Companies' asbestos loss reserves, conducted by Milliman, Inc. (*See* February 6, 2006 press release issued by American International Group, Nagorski Dec. Ex. 37) Specifically, according to an AIG press release, Milliman provided "an independent, comprehensive review of the loss reserves of AIG's principal property-casualty insurance operations, including an independent ground up study of AIG's asbestos and environmental (A&E) exposures," and "encompassed nearly all of AIG's carried loss reserves." (*Id.*).

It is apparent from this press release that documents relating to the Milliman analysis or any other analysis or study, "bear[] on, or reasonably could lead to other matter that could bear on . . ." the issue of AIG's policies and practices regarding the setting of asbestos loss reserves, and, therefore, its policies and practices regarding its notification to reinsurers of such losses.

*Oppenheimer Fund*, 437 U.S. at 351. Therefore, contrary to Granite State's objections, Request

No. 28 is reasonably calculated to lead to the discovery of admissible evidence.

**B.    Documents concerning other reinsurers**

Granite State has objected to Clearwater's Requests Nos. 15, 16, 20, 39, and 42 to the

extent they call for the production of documents relating to reinsurers other than Clearwater.

Granite State's objections, however, have no merit and it should be made to produce all

documents responsive to these requests because they bear on matters at issue in this case.

Indeed, federal courts in this circuit have ordered the production of documents related to non-

party reinsurers when relevant to the issues raised. *See National Union Fire Ins. Co. of

Pittsburgh, Pa. v. Clearwater Ins. Co.*, No. 04-CV-5032, 2007 WL 2106098, at \*3 (S.D.N.Y.

July 21, 2007) (granting Clearwater's motion to compel from an AIG company "communications

with other reinsurers concerning the '[underlying] Settlement, the Settlement Amount or the

same loss'," because they "could . . . lead to relevant documents" concerning coverage issues);

*Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 18, 22-23 (D. Conn. 2003) (Feb.

5, 2003) (granting motions to compel documents concerning other reinsurance policies based on

the relevance of the requests to allegations of misrepresentation by the reinsured).

**1.    Requests Nos. 16, 39 and 42**

As noted above, Granite State and the other AIG Companies have allocated the Federal

Mogul claims to their policies on a "bathtub" basis as if the AIG Companies were liable for one

hundred percent (100%) of their policy limits when in fact they received a discount off those

limits of approximately fifty-two percent (52%). (*See* Letter from Lynn A. Mitchell to Jeffrey

M. Wactlar dated February 23, 2009 and accompanying worksheets, Nagorski Dec. Ex. 26;

Letter from Leticia Diaz to Evelyn Drew dated June 14, 2010 at 2, Nagorski Dec. Ex. 35)  In

response to Granite State's presentation of the Federal Mogul claims at issue in this case,

Clearwater questioned the AIG Companies' bathtub allocation, particularly why the Granite

State/McGraw Policies were treated as being fully exhausted notwithstanding the discount

Granite State received in its settlement. (*See, e.g.*, E-mail correspondence from Evelyn Drew to

Chris Magnotta dated December 29, 2009, Nagorski Dec. Ex. 31; E-mail correspondence from

Evelyn Drew to MaryEllen Wakeman dated October 21, 2009, Nagorski Dec. Ex. 27)  To the

extent that Granite State is billing Clearwater for amounts that exceed the discount received

under the reinsured policies, such amounts are not covered by McGraw Fac Certs. (*See id.*;

Answer to Amended Complaint, Dkt. No. 18 at ¶¶ 44, 47)

Clearwater's Request no. 42 calls for the production of documents relating to the

reinsurance allocation of loss amounts by the AIG Companies concerning the 2008 Federal

Mogul Settlement, the Partitioning Agreement, and 2004 Halliburton Settlement.  These

documents are, therefore, indisputably calculated to lead to the discovery of admissible evidence

concerning Clearwater's defense that it is not obligated to cover amounts in excess of the

discount Granite State achieved under the Granite State/McGraw Policies.

Requests nos. 16 and 39 call for the production of documents concerning any and all of

the reinsurance to which the AIG Companies did allocate and/or could potentially have allocated

the claims relating to the 2008 Federal Mogul Settlement, the Partitioning Agreement and 2004

Halliburton Settlement.  Clearwater is entitled to this information as it concerns the issue of

whether the AIG Companies' allocation of the claims in dispute was reasonable and consistent

with the way in which it settled the underlying claims.  Indeed, to the extent that Granite State

argues in this case (as Clearwater expects) that Clearwater is obligated to pay the amounts at

issue under the follow-the-fortunes or settlements doctrine, the issue of whether the post-

settlement allocation of the Federal Mogul claims was designed to maximize the AIG

Companies' reinsurance collections may have to be decided, assuming that the follow-the-

fortunes or settlements doctrine applies to this case.[11]

In short, the information sought by Requests Nos. 16, 39 and 42 concerning (1) the

reinsurance potentially available to the AIG Companies for the 2004 Halliburton and 2008

Federal Mogul Settlements and (2) its allocation of those allocations to its reinsurers is relevant

to the issue of whether the AIG Companies' chosen "bathtub" allocation of those settlements was

improperly designed to maximize reinsurance recoverables.

### 2.    Requests Nos. 15 and 20

Finally, Requests nos. 15 and 20 seek documents relating to AIG's notice of actual or

potential claims to its reinsurers, including Clearwater, with respect to only the Granite

State/McGraw Policies identified in Granite State's Amended Complaint.  Contrary to Granite

State's objections, these documents contain or are reasonably likely to lead to the discovery of

admissible evidence concerning the issue of whether Granite State has in place adequate

practices and procedures to ensure prompt notice of asbestos claims to its reinsurers, including

Clearwater, which goes to Clearwater's defense regarding Granite State's lack of such adequate

practices and procedures (Answer to Amended Complaint, Dkt. No. 18 at ¶ 45) *See National

Union*, 2007 WL 2106098, at *3; *Security Ins. Co.*, 218 F.R.D. 18, 22-23. *C.f. AIU Ins. Co.*,

2008 WL 5062030, at *9 (insurer not obligated to produce documents concerning other

---

[11] For a discussion of the limits of the follow-the-fortunes/settlements doctrine, see generally
*Travelers Cas. and Sur. Co. v. Insurance Co. of North America*, 609 F.3d 143 (3d Cir. 2010)
(recognizing that follow-the-fortunes/settlements doctrine does not apply where reinsured acts in
a self-serving manner).  Clearwater, however, maintains that the follow-the-fortunes/settlements
doctrine does not apply in this matter and that it does not have any obligation to pay Granite
State under the McGraw Fac Certs based on that doctrine.

reinsurers where reinsurer's defense based only on argument that reinsured did not meet prompt notice provision under the specific contract in dispute).[12]

These requests are in no way overly burdensome to comply with as they call for the production of documents concerning only four policies.

### 3.    Granite State's "confidential/business proprietary" material objection has no merit

In refusing to honor its discovery obligations by producing information relating to other reinsurers, Granite State has asserted the boilerplate objection that such information is "confidential/business proprietary information." (Nagorski Dec. Ex. 2 at 2, General Objection No. 4)  However, "merely labeling . . . material 'proprietary and confidential' is not by itself sufficient to bar its production." *Novomoskvovsk Joint Stock Co. "Azot" v. Revson*, No. 95 Civ. 5399, 1996 WL 282085, at *1 (S.D.N.Y. May 28, 1996). *See also Dean v. Anderson*, No. 01-2599, 2002 WL 1377729, at *3 (D. Kan. June 06, 2002) ("[I]t is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery."); *Bramell v. Aspen Exploration, Inc.*, No. 4:05-CV-384, 2008 WL 4425368, at *4 (E.D. Tex. Sep. 24, 2008) (same).  Furthermore, information concerning other reinsurers is not a

---

[12] The parties' dispute over Clearwater's requests is substantially different than that in *AIU Ins. Co.*, where a reinsured was not made to produce its notices to reinsurers under reinsurance contracts other than the ones that were sued upon.  2008 WL 5062030, at *9 (requiring, however, that the reinsured to produce documents concerning "the circumstances under which [the reinsured] determined it was appropriate to give notice under the reinsurance contracts at issue"). In this case, documents reflecting or concerning notice to Clearwater and other reinsurers goes to Clearwater's affirmative defense regarding Granite State's lack of adequate practices and procedures to ensure prompt notice of losses and claim information to its reinsurers.  By contrast, in *AIU Ins. Co.*, the reinsurer did not even argue that documents pertaining to other reinsurers were relevant.  *Id.*  Furthermore, Clearwater's requests are narrowly tailored, as they relate only to notices to reinsurers under the Granite State/McGraw Policies identified in Granite State's Amended Complaint, whereas the discovery request in *AIU Ins. Co.* related much more broadly

trade secret and, in any event, "there is no absolute privilege for trade secrets and similar confidential information." *Chembio Diagnostic Systems, Inc. v. Saliva Diagnostic Systems, Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006). Accordingly, Granite State refusal to produce documents based on conclusory assertions that it is "confidential/business proprietary information" should be rejected.

## CONCLUSION

For the foregoing reasons, Clearwater respectfully submits that this Court should grant Clearwater's motion to compel in its entirety.

Dated: October 22, 2010
        New York, New York

                                    Respectfully submitted,

                                    CLYDE & CO US LLP

                                    Stephen M. Kennedy (SK-5572)
                                    Adam A. Nagorski (AN-0075)
                                    The Chrysler Building
                                    405 Lexington Avenue
                                    New York, New York 10174
                                    (212) 710-3900
                                    *Attorneys for Defendant,*
                                    *Clearwater Insurance Company*

---

to "notices from [the reinsured] to its reinsurers . . . relating to the [asbestos claims asserted against the insured]." *Id.* at *8.