# EXHIBIT 23

To    : "Claims Email - ImageRight" <claims-emails-prod@odysseyre.com>
From  : "Mantle, Joan (Stamford)" <JMantle@OdysseyRe.com>

Date  : Thu, 2 Apr 2009 08:45:49 -0400
Subject: FW: ASBESTOS/ Mc Graw Edison - Cl # 170-054282  - Amt Due $119,513.20

no clm for cedant

-----Original Message-----
From: Somma, Michael (Stamford)
Sent: Wednesday, April 01, 2009 4:52 PM
To: Mantle, Joan (Stamford)
Subject: ASBESTOS/ Mc Graw Edison - Cl # 170-054282 - Amt Due
$119,513.20


-----Original Message-----
From: Wakeman, MaryEllen [mailto:MaryEllen.Wakeman@aiuholdings.com]
Sent: Wednesday, April 01, 2009 4:14 PM
To: Somma, Michael (Stamford)
Subject: RE: Mc Graw Edison - Cl # 170-054282 - Amt Due $119,513.20

Dear Mr.Somma,

Please see the attached bill for $119,513.20, on this above claim.
Please note, I have a request for supporting documentation out to the
examiner that I will forward on to you when I receive it.

Please review and advise

Regards,

MaryEllen Wakeman
American Home
P.O. Box 1024
Manchester, N.H. 03105-1024

Ph # 603 645-7336
Fax # 866-685-3631

CW 01094

# EXHIBIT 24

**Wakeman, MaryEllen**

| | |
|---|---|
| **From:** | Drew, Evelyn Y. (Stamford) [EDrew@OdysseyRe.com] |
| **Sent:** | Tuesday, June 23, 2009 9:05 AM |
| **To:** | Wakeman, MaryEllen |
| **Cc:** | Magnotta, Chris; Chavez, Theresa (Stamford) |
| **Subject:** | McGraw Edison |

**Attachments:**  IR110000.pdf



IR110000.pdf (48 KB)

&lt;&lt;IR110000.pdf&gt;&gt;

MaryEllen:

As per your request, attached, please find a copy of the query forwarded by Julie Tavernese dated June 8, 2009.

Thank you.

Regards,
Evelyn

***********************************************************************
CONFIDENTIALITY This e-mail and any attachments are confidential and may also be privileged. If you are not the named recipient, please notify the sender immediately and do not disclose the contents to another person, use it for any purpose, or store or copy the information in any medium.

www.odysseyre.com
***********************************************************************

1



*OdysseyRe*

Ms. Maryellen Wakeman                                    June 8, 2009
Insurance Company State of Pennsylvania
P.O. Box 1024
Manchester, NH 03105-1024

RE:        Ceding Company:      ISCOP / Granite State
           Insured:             McGraw Edison
           Dates of Loss:       3/1/80, 3/1/81, 3/1/82 & 3/1/83
           CIC Claim #'s:       SC26285*1980*3, SC27675*1981*2
                                SC29066*1982*2 & SC30932*1983*2
           ISCOP Claim #'s:     170-053344, 170-054282, 170-053345,
                                170-054281, 170-053346, 170-057620 &
                                170-058016

Dear Ms. Wakeman:
This will acknowledge receipt of your recent reserve notices as well as payment requests
for the above referenced asbestos losses. After our review of the information provided
additional details as well as material are required before consideration can be given to
your payment requests.

Please provide us with complete copies of the following Granite State policies including
the policies if they follow form. The Policy numbers are as follows:

3/1/80      066801963
3/1/81      066812370
3/1/82      066823216
3/1/83      066833982

Please explain why AIG advised us of these reserve increases in April 2009, when they
were aware an exposure existed at the time they settled the Dresser claim in 2004. We
will require your payment / reserve allocation spreadsheet for all the Studebaker /
McGraw Edison claims. Please confirm that your settlement with the Dresser /
Studebaker claims were on a discount basis (information in our 1971 file indicates that
you saved $108mm from your total limits of $370mm). If you did settle on a discounted
basis, please explain why no discount is being taken off your reserves as the LMS sheets
presented is for full policy limits. We will require copies of the Brattle / NERA models
used to determine the various policy exposures.

Please advise if you settled the Federal Mogul exposure under the vertical partition
agreement. If you did negotiate an agreement we will need complete details of your
settlement and the allocation methodology for these claims as well. If you did not settle
the Federal Mogul claims, then please explain your rationale for posting full policy limits

Odyssey America Reinsurance Corporation • 300 First Stamford Place, Stamford, CT  06902 • Phone (203) 977-8000 • Fax: (203) 356-0196 • www.odysseyre.com

Granite State  000303



*OdysseyRe*

reserves when only half of the limits are exposed for the settlement with the Studebaker / McGraw claims.

We would also like to review your Studebaker / McGraw Edison files, please provide us with some dates so that we may set-up a file a mutually agreeable file review for these claims.

Once all requested information is received and reviewed, consideration will be given to your requests.

Thank you for your anticipated cooperation in this matter.

Regards,

Julie Tavernese
Assistant Vice President
Claim Department

Odyssey America Reinsurance Corporation • 300 First Stamford Place, Stamford, CT 06902 • Phone (203) 977-8000 • Fax: (203) 358-0196 • www.odysseyre.com

Granite State  000304

# EXHIBIT 25

To: "Claims Email - ImageRight" <claims-emails-prod@odysseyre.com>
From: "Drew, Evelyn Y. (Stamford)" <EDrew@OdysseyRe.com>
?: Mon, 17 Aug 2009 08:46:49 -0400
ject: sc26285*1980*3

-----Original Message-----
From: Wakeman, MaryEllen [mailto:MaryEllen.Wakeman@aiuholdings.com]
Sent: Wednesday, July 29, 2009 9:16 AM
To: Drew, Evelyn Y. (Stamford)
Cc: Magnotta, Chris; Chavez, Theresa (Stamford)
Subject: RE: Insured: Mc Graw Edison - Cl # 170-054282 - Grand Total Due
$485,132.40

Good Morning Evelyn,

Please see the attached report from the examiner on this above claim.

Please review and advise payment status

Regards,

MaryEllen Wakeman
Facultative Reinsurance Collections
 mmercial Insurance, a Division of AIU Holdings
 Executive Park Drive
Bedford, H.N. 03110
Ph # 603 645-7336
Fax # 866-685-3631

-----Original Message-----
From: Wakeman, MaryEllen
Sent: Wednesday, June 24, 2009 3:00 PM
To: 'Drew, Evelyn Y. (Stamford)'
Cc: Magnotta, Chris; 'Chavez, Theresa (Stamford)'
Subject: RE: Insured: Mc Graw Edison - Cl # 170-054282 - Grand Total Due
$485,132.40

Evelyn,

Please note, I have the request from Julie out to our examiner to date
and I will to our underwriter for a copy of the policies. So I will add
this request to the one I have out already. I will sent it on to you
when I receive it. Also the Cl # 170-053345 - was a typo on the DOL: as
this is 03/01/81, just for the record.

 ase review and advise

 Thank you!

CW 00953

MaryEllen Wakeman
Facultative Reinsurance Collections
Commercial Insurance, a Division of AIU Holdings
1 Executive Park Drive
Bedford, H.N. 03110
Ph # 603 645-7336
Fax # 866-685-3631


-----Original Message-----
From: Drew, Evelyn Y. (Stamford) [mailto:EDrew@OdysseyRe.com]
Sent: Wednesday, June 24, 2009 2:51 PM
To: Wakeman, MaryEllen
Cc: Magnotta, Chris; Chavez, Theresa (Stamford)
Subject: RE: Insured: Mc Graw Edison - Cl # 170-054282 - Grand Total Due
$485,132.40

MaryEllen:

Regarding your email below, please be advised that there is an query
pending from Julie Tavernese dated June 8, 2009, a copy of which I
forwarded to you yesterday.

In addition to Julie's queries, please advise as to why AIG is
maintaining 3 claim numbers for the 3/1/80 date of loss, i.e.,
170-054282, 170-053344 and 170-053345.  Do these claim numbers relate to
different layers?  If so, please advise as to which claim number relates
which layer as the proofs we have received indicate that these claim
numbers all relate to the $2.5M layer excess of $0.

Thank you.

Regards,
Evelyn

-----Original Message-----
From: Wakeman, MaryEllen [mailto:MaryEllen.Wakeman@aiuholdings.com]
Sent: Wednesday, June 24, 2009 2:13 PM
To: Drew, Evelyn Y. (Stamford)
Subject: Insured: Mc Graw Edison - Cl # 170-054282 - Grand Total Due
$485,132.40

Evelyn,

Please see the attached June 2009 bill for $365,433.20 on this claim.

Please review and advise

Regards,

MaryEllen Wakeman
Facultative Reinsurance Collections
Commercial Insurance, a Division of AIU Holdings
1 Executive Park Drive

CW 00954

Bedford, H.N. 03110
Ph # 603 645-7336
# 866-685-3631

**************************************************************
CONFIDENTIALITY This e-mail and any attachments are confidential and may
also be privileged. If you are not the named recipient, please notify
the sender immediately and do not disclose the contents to another
person, use it for any purpose, or store or copy the information in any
medium.

www.odysseyre.com
**************************************************************

CW 00955

To: "Kafaf, Richard" <Richard.Kafaf@aiuholdings.com>
From: "MFP-05017310" <MFP-05017310@tosscan.com>
e: Fri, 17 Jul 2009 14:31:42 -0400
oject: McGraw Edison R&Q 07/17/2009 13:31


Scanned from MFP-05017310.
Date: 07/17/2009 13:31
Pages:15
Resolution:200x200 DPI
----------------------------------------
Please open the attached document.

CW 00956

**AIG Domestic Claims Inc.**
Asbestos Claims Department
101 Hudson Street, 29<sup>th</sup> Floor
Jersey City, New Jersey 07302

_____

July 17, 2009

Casey Johnson
Resolute Management Inc
United Plaza
30 South 17<sup>th</sup> Street, Suite 700
Philadelphia, PA 19103

Re;         Insured      :     McGraw Edison
            Policy No    :     66801963 (03-01-1980 to 1981)
            Claim No     :     170-054282
            DOL          :     03/01/1980

Dear Ms. Johnson:

This is in reply to your email dated April 3, 2009 to AIU Holdings requesting additional information for this claim: Please find attached:

> The Settlement Agreement and the Bankruptcy Courts approval of the Settlement Agreement..

> The All Interested Reinsurer Status Report dated January 4, 2007

> The June 10, 2009 All Interested Reinsurer Report supporting the payment of $1,827,166 for claim number 170-054282 for the policy noted above

> The Halliburton/Dresser AIG Settlement Payment Allocation spreadsheet

> The underlying policy 523 077418 7 issued by the United States Fire Insurance Company effective March 1, 1980 to March 1, 1981.

This information and documents contained herein are provided for the sole purpose of responding to your inquiry and should not be used for any purpose other than the handling of our claim by intermediaries and our reinsurers. The documents and information provided herewith, or portions thereof, are privileged (as attorney client privilege and work product) and are provided with the understanding that you will maintain their confidentiality. If any information contained in this response or its enclosures is forwarded to retrocessionaires, we expect that the reinsurer will attempt to ensure that its confidentiality is maintained. If any other party requests this information

CW 00957

or documentation, please advise us as to the identity of the requesting party and the
nature of the request.  No information or documentation provided with or in this letter
should be given to any other party without our prior written approval.

Yours truly,

Leticia Diaz
Asbestos Claims Department

CW 00958

**AIG Domestic Claims Inc.**
Toxic Tort Claims Department
101 Hudson Street, 29th Floor
Jersey City, New Jersey 07302
Direct Dial: (201) 631-7782 Facsimile: (201) 631-5008

---

INSD:     **DRESSER/HALLIBURTON**
DATE:     **January 4, 2007**
ANALYST:  **Leticia C. Diaz**
TOXICANT: ASBESTOS

**CURRENT STATUS:** An agreement has been reached with Dresser Industries, Inc./DII Industries/Halliburton (Dresser). The Releasing Policyholders have agreed to release all claims, present and future, known or unknown, in connection with the policies at issue in the Harbison-Walker Adversary Proceeding, as well as the portion of the policies portioned to Dresser in the Federal Mogul Adversary Proceeding for all asbestos related claims. Pursuant to the agreement reached, scheduled payments commencing in March 2005 and ending in December 2014 will be processed. The next payment due date is March 30th, 2007.

## HISTORICAL INFORMATION:

**KEY UPDATES SINCE OCTOBER 2003:** **Please note that the information below is being provided from a historical and informational purpose only. All issues pertaining to Dresser/Halliburton have been resolved via the Settlement Agreement finalized and executed on November 12, 2004.**

1)    In October 2003, ACE filed a DJ action in New York County Supreme in its effort to consolidate all pending DJ actions discussed below and to be heard in a New York court. AIG companies were named as nominal defendants in this action, along with all other insurers with coverage to Dresser/Halliburton and its entities. The bankruptcy court has imposed a stay on this action, which is still in effect as of the date of this report.

2)    On December 16, 2003, Dresser/Halliburton filed its pre-packaged petition for Chapter 11 Bankruptcy protection in the U.S. Bankruptcy Court for the Western District of Pa (Judge Fitzgerald). This is a collective filing on behalf of Dresser and seven other entities formerly related to Dresser, and it is titled the Mid-Valley bankruptcy. (The eight entities are DII Industries, Mid-Valley, Inc., Kellogg Brown & Root, Inc., KBR Technical Services, Inc., Kellogg Brown & Root Engineering Corp., Kellogg Brown & Root Int'l, Inc. (Del.), Kellogg Brown & Root Int'l, Inc. (Panama) and BPM Minerals, LLC).

3)    In response to the Mid-Valley bankruptcy, ACE has filed, and various carriers have joined in on, various motions with the bankruptcy court: 1) motion to dismiss the pre-pack filing; 2) motion for insurer standing; 3) motion to strike Eric Green as the Future's Representative; 4) that the bankruptcy court should abstain from adjudicating

CW 00959

the non-core state law insurance coverage issues (Motion to Abstain); 5) motion to lift the stay imposed by the bankruptcy court as to ACE's DJ action in New York. To date, AIGTS has not participated or joined in on any such motions filed by ACE or various other carriers who have thus far joined ACE.

4)     The insurers' motion to dismiss the pre-pack is set for hearing on February 11, 2004, which is when motions regarding insurer standing and Eric Green will also be addressed further.

## BACKGROUND INFORMATION:

Dresser is seeking coverage under policies issued to **Studebaker-Worthington, Inc.** (S-W) from 1967-1979 and **McGraw-Edison Company (M-E)** from 1979-1985 for asbestos liabilities associated with products manufactured by Worthington Company and asbestos exposures associated with Atlantic Locomotive Company ("ALCO"). Dresser is also seeking coverage under policies issued to itself (to cover **Harbison-Walker** asbestos liabilities) and to **Kellogg Brown & Root** (to cover the latter's asbestos liabilities).

As of 1967, Worthington Company was an independently operated entity and ALCO was its subsidiary. In 1967, however, Studebaker Corp. and Worthington Company merged to form S-W. Also in 1967, S-W purchased stock of Wagner. Accordingly, both ALCO and Wagner continued to be operated as wholly-owned subsidiaries of S-W. It is noted that in 1976, ALCO merged into another of S-W's subsidiaries, Turbodyne.

In 1979, S-W merged with Kane Holding, Inc. (an indirect subsidiary of M-E). **Accordingly, S-W, ALCO and Wagner all operated as indirect subsidiaries of M-E.** In 1984, Dresser purchased ALCO (Turbodyne operations) from M-E.

In 1985, however, the above corporate arrangements split into two separate branches that now constitute the **Dresser/Halliburton branch** and the **Federal-Mogul branch**, with both branches having shared interests in the S-W and M-E coverage from 1967-1985, as presented above.

Specifically, the **Dresser/Halliburton branch** is comprised of the following:
- ALCO / Turbodyne operations (purchased from M-E in 1985)
  (In 1985, Dresser assumed all assets and liabilities of ALCO/Turbodyne and dissolved same) (ALCO claims are product BI claims stemming from asbestos-containing locomotive parts)
- Worthington operations/division (purchased from M-E in 1985)
  (In 1996, Dresser assumed all assets and liabilities of S-W and dissolved same) (Worthington claims are product BI claims stemming from asbestos-containing valves and gaskets in pumps and compressors)

Additionally, the following complete the **Dresser/Halliburton branch**:
- Harbison-Walker Refractory (acquired by Dresser in 1967)
- Kellogg Brown & Root (KBR)

In 1998, Halliburton then purchased and merged with Dresser, with Halliburton allegedly serving as a holding company. Halliburton is one of the world's largest oilfield services companies and a provider of engineering and construction services. Halliburton purchased Brown & Root, an engineering and construction company, in 1962, and it acquired M.W. Kellogg through the merger with Dresser, which acquired Kellogg in 1988. KBR, accordingly, serves as Halliburton's engineering and construction group, one of two wholly-owned operating subsidiaries. The other subsidiary is what it calls its Energy Services Group.

The **Federal-Mogul branch** is comprised of the following: Moog Automotive/Cooper Industries/Wagner (brake pads/clutch facings). The specific history is as follows:
- in 1985, Cooper purchased the Wagner Division from M-E (this is the key acquisition which allows Federal Mogul to invoke S-W and M-E coverage)
- in 1997, Wagner is merged into Cooper's subsidiary Moog
- in 1998, Federal-Mogul, Inc. purchased Moog and renamed it Federal-Mogul Products, Inc.

## COVERAGE:

As indicated above, Dresser is seeking coverage under policies issued to Studebaker-Worthington, Inc. (S-W) from 1967-1979 and McGraw-Edison Company (M-E) from 1979-1985 for asbestos liabilities associated with products manufactured by Worthington Company and asbestos exposures associated with Atlantic Locomotive Company ("ALCO").

Dresser, however, is also seeking coverage for asbestos losses attributed to Harbison-Walker (H-W) and KBR. Accordingly, there are three (3) sets of policy limits at issue: 1) S-W and M-E's; 2) H-W's; and 3) KBR's.

Total policy limits for S-W (1967-79) & M-E (1979-85):

| Insurer | S-W Limits | M-E Limits | Total Limits |
|---|---|---|---|
| AIU | $20M | $55M | $75M |
| American Home | $10M | 0 | $10M |
| Birmingham | $10M | 0 | $10M |
| Granite State | $11M (AIU) | $85M | $96M |
| ICSOP | $2M | 0 | $2M |
| National Union | $25M | $20M | $45M |
| Lexington | $12M | 0 | $12M |
| Totals | $90M | $160M | $250M |

AIGTS: $164M
AIU: $86M

Total policy limits for H-W (1971-1983) (named insured is Dresser):

| Insurer | Total Limits |
|---|---|
| AIU | $120M |
| NH (AIU-London) | $1.378M |
| Granite State | $10M |
| Landmark | $5M |
| National Union | $20M |
| Lexington | $76.5M |
| Totals | $232.878M |

**AIGTS: $111.5M**
**AIU: $121.378M**


Total policy limits for KBR

Total limits issued to KBR is approximately $68M, of which $18M was issued by AIU.

**AIGTS: $50M**
**AIU: $18M**

**Total Combined Limits for all Insureds:**

**AIGTS (plus Lexington): $325.5M**
**AIU: $225.378M**


## PENDING ACTIONS/BANKRUPTCIES:

There are a total of 2 DJ actions, 1 bankruptcy and 3 adversary proceedings pending at this time involving Dresser and its entities. There are also two separate on-going mediations being conducted at this time.

A)    Dresser's Declaratory Relief Action (N.D. Texas) – Dresser Coverage Action

In August 2001, Dresser filed its DJ action against its insurers in Dallas County, TX. Certain London insurers then had the Dresser Coverage Action removed to federal court (N.D. Texas), and they have further sought to have this action transferred to U.S. District Court for the Western District of Pennsylvania. This matter has now been transferred to the Western District of Pa. Due to the status of the bankruptcies (pending and proposed) and other related matters, this action, for all intents and purposes, has been stayed (although an official stay has not been ordered by court).

B)    Harbison-Walker Bankruptcy

On February 14, 2002, H-W filed its Voluntary Petition under Chapter 11 in the U.S. Bankruptcy Court for the Western District of Pennsylvania. The case is assigned to Judge Fitzgerald.

C)    Dresser/H-W Adversary Proceeding

On March 21, 2002, H-W filed its Complaint in Harbison-Walker Refractories Co. v. Dresser Industries, Inc., et al., in the same U.S. Bankruptcy Court for the Western District of Pennsylvania.

H-W, as debtor, initially filed this action against Dresser and its carriers. The basis for naming Dresser is perceived to be due to disputes between H-W and Dresser regarding H-W's claims handling of H-W's asbestos liabilities. Dresser allegedly criticized H-W's claims handling procedures by pointing out, among other things, that H-W's settlement amounts were too high and that H-W billed carriers for amounts not incurred and/or paid, thereby leading to premature exhaustion of the policies at issue. (For more information of H-W, see (E) below regarding GIT Adversary Proceeding).

Currently, H-W and Dresser are working together in this matter, with Dresser taking over all responsibilities, as against the carriers. For all intents and purposes, this proceeding is basically the same as the Dresser Coverage Action, discussed above.

D)    KBR Declaratory Relief Action (TX) – KBR Coverage Action

In March 2002, KBR filed its coverage action against its insurers in Texas state court. We have been advised by our counsel, Cozen O'Connor, that this matter is moving slowly at this time.

Cozen also advised that the KBR portion of the overall Dresser situation may get resolved by the following set of circumstances: 1) London and Dresser had entered into a coverage-in-place agreement many (unknown) years ago, the terms of which are currently in dispute; 2) the two parties are in negotiations to resolve their dispute (no suits have been filed); and 3) if the parties can reach an agreement, such resolution would allegedly resolve all KBR asbestos liabilities at issue in the overall Dresser matter.

E)    Global Industrial Technologies' (GIT) Adversary Proceeding

At this time, Cozen has very little information with respect to this matter. GIT, however, is connected to Harbison-Walker in that, in 1992, Harbison-Walker spun-off into several other entities (INDRESCO, RHI, etc.). It is believed that GIT was the successor to INDRESCO (GIT, however, is allegedly also connected to Honeywell's NARCO, etc, serving or having served as the umbrella company for all these entities).

It is also noted that after all of its spin-offs in the 1990s, Harbison-Walker still survives as a stand-alone entity, with its representatives attending (but not participating) in the on-going mediations.

F)    Dresser Industries v. Federal Mogul Products, Inc.
      <u>(US Bankruptcy Court – District of Delaware)</u>

This is the adversary proceeding instituted by Dresser against Federal Mogul in connection with the latter's bankruptcy filing in the same Delaware bankruptcy court. This adversary proceeding involves the <u>S-W and M-E asbestos liabilities</u> and the dispute between these two parties for rights to, and coverage under, the policies issued to S-W and M-E from 1967 to 1985. Once again, Federal Mogul's interest in these policies at issue stems from its eventual acquisition of the <u>Wagner</u> Division of M-E.

## <u>DRESSER'S CURRENT STATUS:</u>

### <u>Dresser's Bankruptcy Filing</u> (but see key updates above)

Dresser, KBR and other Halliburton subsidiaries are expected to file their bankruptcy also in the U.S. Bankruptcy Court for the Western District of Pennsylvania. The anticipated filing is 3rd quarter of 2003 (proposed to be filed on July 14, 2003). This filing is to be in the form of a <u>pre-packaged Chapter 11,</u> and the Disclosure Statements and solicitation packages are to be sent out in the very near future. The filing of this pre-packaged Chapter 11 is expected to follow the Harbison-Walker bankruptcy discussed above and also be assigned to Judge Fitzgerald.

As per Dresser's Term Sheet, the following two trusts are to be created under its reorganization plan:

-    Section 524(g) Asbestos Trust; and
-    Section 105 Silica Trust

According to the Term Sheet, both trusts will be funded with "Halliburton money" filtered through its various subsidiaries at issue. Halliburton's total contribution is planned to be upto $4.2B, as follows:

-    Cash – not to exceed $2.775B for both trusts combined
     (this amount is to address currently pending asbestos and silica claims in the amount of approx. $2.5B – the total number of claimants covered by this amount has been estimated at **340,000 claimants**)

     Halliburton has supposedly guaranteed this amount regardless of insurance proceeds, but of course <u>it will seek reimbursement from its insurers</u> for the amount.

- 59.5 million shares of Halliburton common stock (value to be set on date of filing of the Disclosure Statement/Plan) (the potential value ranges from $20/share to $28/share – resulting in projections between $836M and $955M)

- Two one-year notes (one each from Dresser and KBR) guaranteed by Halliburton (expected to have an aggregate market value of $30M)

- any insurance proceeds recovered in excess of $2.3B (BUT not to exceed $700M)

It is noted that Dresser's counsel, Kirkpatrick & Lockhart, has presented the following figures regarding Dresser's insurance program:

- **Total limits issued to S-W and M-E by all carriers – approx. $1.8B in solvent coverage**
  - approx. $160M in insolvent coverage
  - Excess of approx. $60M in SIRs
- Approximately $53M in limits allegedly impaired
- Approximately $30M in limits governed by various coverage-in-place agreements (CIPs) – including $12M in exhausted coverage

With respect to CIPs or other insurance agreements, Kirkpatrick has advised of prior agreements with Lloyds, London, North Star Reinsurance, Lumbermens Mutual, Stonewall Insurance and Wagner brake-related CIPs. Kirkpatrick also advised of other exhausted agreements with the following carriers: 1) National Union; and 2) Continental Insurance.

Our counsel, Cozen, has advised that the **total limits issued to cover H-W by all carriers amount to approx. $2.1B (with London issuing $1.2B)**. Once again, these are policies with Dresser as the named insured. **Accordingly, the combined limits available to Dresser as issued by all carriers amount to approx. $3.9B (not including total limits issued to KBR by all carriers).**

Cozen further advised that Dresser reached an <u>agreement in principle</u> with **the Asbestos Creditors Committee (ACC)** in December 2002 with respect to resolving its outstanding liabilities. The contribution plan of approx. $4.2B, as presented above, is the means through which Dresser will satisfy this agreement when executed (this agreement has not been executed as of the date of this report). Once again, although the total number of current claimants has been estimated at 340,000 (to be covered by the cash contribution of $2,775B), **the number of future claimants has not been determined to date.**

In December 2002, prior to the introduction of the above agreement in principle between Dresser and ACC, negotiations took place between Dresser and the carriers to resolve <u>solely the H-W asbestos liabilities</u>, with settlement offers being made by some of the

carriers. London, for instance, offered $450M (out of its total limits of $1.2B issued to H-W). AIGTS, at the time, offered $44.2M (out of its total limits of $111.5M issued to H-W by DBG and Lexington). (The actual breakdown per DBG company and Lexington is as follows: 1) Granite State - $4.4M; 2) National Union - $9.8M; 3) Lexington - $30M; and 4) Landmark – 0). The AIG's proposal was conditioned upon various points, including the right of complete buy back of all of its Dresser policies.

Ultimately, as among London and various domestic carriers, including AIG, the total settlement package amounted to approx. $700M. Dresser rejected these offers to resolve the H-W asbestos liabilities, and it then introduced its $4.2B plan to resolve all of its asbestos liabilities.

### Key points and issues:

1. Dresser's $4.2B plan is a proposal to resolve all of its asbestos liabilities for all of its entities, and current mediations are focused on same. Once again, the combined limits available to Dresser as issued by all carriers amount to approx. $3.9B (not including total limits issued to KBR by all carriers).

2. The KBR portion of the overall Dresser situation <u>may</u> get resolved if London and Dresser can resolve their dispute with respect to their coverage-in-place agreement.

3. There are issues regarding late notice of these asbestos claims by Dresser and its entities. This issue has not been fully explored or litigated, and the discovery process in any relevant actions in which we can explore this issue has not even commenced.

4. There are issues raised by the carriers, including AIG, as to whether Dresser has standing to invoke S-W and M-E policies at issue. With respect to the Delaware adversary proceeding (between Dresser and Federal Mogul), Phase I of this action is to address the corporate histories of both parties so as to address this issue.

5. As with any such bankruptcies involving the ACC and future asbestos claimants, we need to closely monitor the Trust Distribution Plan (TDP) to be proposed by the debtor, Dresser. The TDP will set forth the criteria to be utilized in reviewing and assessing the claims submitted for payment under the trusts created, and hence we need to seek a stringent TDP (to the extent that we are allowed by the bankruptcy court) in order to ensure that only those worthy claims qualify for payment under such trusts.

**Dresser Other Claims:**

Dresser also has other non-asbestos, non-silica claims for which we are attempting to obtain current status reports.

**Hearing Loss/HAVS**

The hearing loss and HAVS claims against Dresser arise out of hand tools manufactured by Dresser's former subsidiary, Intool, Inc., formerly Industrial Tool Division of Dresser Industries, Inc. Intool is now a division of Indresco, a Dresser relative (see below).

Indresco's Intool Division manufactures portable pneumatic tools (drills, high-powered screwdrivers, grinders, and mechanically operated wrenches) under the Cleco trademark. Intool also manufactures aircraft parts, automobile shock absorbers, and industrial equipment under the Cleco brand name. Cleco is another defendant.

By way of background, Dresser Industries, Inc. purchased Cleco Pneumatic Tool, including the Cleco hand tool product line, in May 1969. Dresser purchased Cleco from G.W. Murphy Industries, which had purchased it in 1967 from the Cleveland Pneumatic Tool Company. Cleveland Pneumatic was founded in 1894. In April, 1979, Dresser merged Cleco Pneumatic Tool with its Air Tool division and called the new division the Industrial Tool Division of Dresser Industries, Inc. The division was renamed Intool in 1987. On August, 1992 Dresser spun off seven "non-core" subsidiaries (including Intool) as part of a new independent publicly traded company named Indresco ("Industrial Dresser Companies"). In November 1995, Indresco was restructured and changed its name to Global Industrial Technologies, Inc.

Indresco was divided into three manufacturing divisions: (1) refractories (protective ceramic liners, tiles and bricks), (2) mining and specialty equipment, and (3) air tools for the automotive and aerospace industries. The hearing loss and HAVS claims arise out of the latter group.

According to the insured's Director of Risk Management in a 7/27/98 telephone conversation, Dresser does not consider the hearing loss and HAVS claims to be active against Dresser. Linda Nabors said that Indresco, pursuant to the 1992 spin off agreement, agreed to defend and indemnify these claims

**Current Status:**

We have requested Bivona & Cohen to provide us with an update as to all pending NIHL/HAVS claims, if any. In a recent status update (5/30/03) regarding such claims in Mississippi, Bivona advised of the following: 1) the agreement to settle all NIHL/HAVS claims, reached more than five years ago, still has not been consummated; 2) it has not been consummated because the plaintiffs have not complied with providing their supporting medical documentation and the execution of the agreement was contingent

CW 00967

upon production of same by the plaintiffs; but 3) the plaintiffs also have not pursued this matter to date.

With respect to any other NIHL/HAVS claims in other jurisdictions, Bivona has provided the following update: 1) Texas – all claims settled and no pending matters; 2) Connecticut – all claims settled globally by Dresser for $950,000 in 1998, no indemnification request to AIG since all policies are high-layer excess policies; and 3) West Virginia – trial of test plaintiffs to commence in the near future in the consolidated NIHL trial setting (plaintiffs selected thus far for the test group do not have claims against Dresser), and hence we will continue to monitor the situation.

Chemicals:

Prior analysts reported that the following claims may be pending:

a.   Debbie Durham – Formaldehyde
b.   Mack Skaggs - Benzene

Current check in our system does not indicate any claims open for any chemical exposure cases.

This information and documents contained herein are provided for the sole purpose of responding to your inquiry and should not be used for any purpose other than the handling of our claim by intermediaries and our reinsurers. The documents and information provided herewith, or portions thereof, are privileged (as attorney client privilege or work product) and are provided with the understanding that you will maintain their confidentiality. If any information contained in this response or its enclosures is forwarded to retrocessionaires, we expect that the reinsurer will attempt to ensure that its confidentiality is maintained. If any other party requests this information or documentation, please advise us as to the identity of the requesting party and the nature of the request. No information or documentation provided with or in this letter should be given to any other party with out our prior written approval.

**AIG Domestic Claims Inc.**
Toxic Tort Claims Department
101 Hudson Street, 29th Floor
Jersey City, New Jersey 07302

RE:   TO:          **ALL INTERESTED REINSURERS**
      INSURED:     **DRESSER/HALLIBURTON**
      DATE:        **June 10, 2009**
      ANALYST:     **Leticia C. Diaz**
      TOXICANT:    **ASBESTOS**

| CLAIM # | POLICY # | DOL | PAYMENT |
|---|---|---|---|
| 030-127726 | 5502513 | 11/1/1978 | 1,590,892 |
| 030-128254 | 5505740 | 11/1/1977 | 1,590,892 |
| 170-008373 | 1226649 | 11/1/1977 | 795,396 |
| 170-023382 | 1186872 | 11/1/1976 | 795,446 |
| 170-054282 | 66801963 | 3/01/80 | 1,827,166 |

The June 16, 2009 scheduled payment of $6,599,792, pursuant to the Settlement Agreement with Dresser Industries/Halliburton, including Studebaker-Worthington and Harbison Walker has been processed on behalf of the insured.

## Current Status:

A settlement has been reached with Dresser Industries, Inc./DII Industries/Halliburton (Dresser). The Releasing Policyholders have agreed to release all claims, present and future, known or unknown, in connection with the policies at issue in the Harbison-Walker Adversary Proceeding, as well as the portion of the policies portioned to Dresser in the Federal Mogul Adversary Proceeding for all asbestos related claims. Pursuant to the coverage in place agreement, settlement payments are scheduled to commence in March, 2005 and potentially conclude in December, 2014

## Background

This settlement resolved multiple claims for coverage by DII, Industries LLC (f/k/a Dresser Industries) ("Dresser") for asbestos liabilities arising out of the operations of several corporate entities insured under several lines of coverage which were the subject of numerous litigations, including two declaratory judgment actions, various bankruptcy filings, several adversary proceedings, and two separate mediations.

## Coverage at Issue

Coverage at issue in connection with this settlement totaled over $500M, and included lines issued to numerous Dresser predecessors, successors, subsidiaries and affiliates such as Studebaker-Worthington, Inc., McGraw-Edison Company, Wagner Electric Company, Harbison-Walker Refractories, and Kellogg Brown and Root ("KBR"). Accordingly, there were three (3) sets of policy limits at issue: 1) Studebaker-Worthington ("S-W") and McGraw-Edison's ("M-E")($250M); 2) Harbison-Walker's ($232.878M); and 3) KBR's ($68M).

## Bankruptcy Proceedings and Related Actions

In 2002, Dresser filed a pre-packaged bankruptcy petition in the United States Bankruptcy Court for the Western District of Pennsylvania seeking to discharge its asbestos liabilities pursuant to Section 524(g) of the Bankruptcy Code. Dresser simultaneously commenced an Adversary Proceeding within the bankruptcy against its insurers seeking a declaratory judgment for coverage of the Harbison-Walker asbestos claims as well as other historic Dresser related asbestos claims. Thereafter, Federal-Mogul filed its own bankruptcy petition in Delaware, in which Dresser initiated an adversary proceeding regarding Federal-Mogul's claims under the S-W and M-E lines of coverage.

## Mediation

In 2002, Dresser and all of its insurers entered into a court ordered mediation in an effort to resolve the Adversary Proceeding pending in the Dresser bankruptcy. At a later date, the parties agreed to incorporate the Federal Mogul adversary proceeding into the mediation. Ultimately the mediation included Dresser's claims for coverage of the Harbison-Walker asbestos liabilities and other historic Dresser asbestos claims under the Dresser line of coverage, as well as Dresser's claim for coverage of the Worthington Pump and Studebaker-Worthington asbestos liabilities under the Studebaker-Worthington and McGraw-Edison lines of coverage.

## AIG Settlement With Dresser

After two years of mediation and intensive negotiations with Dresser and Federal-Mogul, a settlement in principle with Dresser was reached in May 2004. The settlement included Dresser's claim for coverage of the Harbison-Walker and other historic Dresser asbestos claims under the Dresser line of coverage and the Worthington Pump and Studebaker-Worthington asbestos claims under the S-W and M-E lines of coverage. Under the terms of the settlement, the AIG Companies have obtained a complete buyout from Halliburton, Dresser, and their affiliates of any and all asbestos- and silica-related claims under all of the policies at issue.

## __The Partitioning Agreement__

One hurdle that had to be overcome was the inability to reach a settlement with Federal-Mogul in connection with its claims arising out of the historic Wagner automotive brake operations and coverage for those claims under the S-W and M-E lines of coverage. In order to proceed with the settlement with Dresser, and to preclude Federal-Mogul or any other entity from seeking to access the limits of liability under the S-W and M-E policies which were subject to the settlement with Dresser, the parties agreed to a vertical partition of the limits of liability under the policies with 50% of the available limits going to Dresser and 50% of the remaining available limits going to Federal-Mogul or any other entity that may attempt to prove coverage under these policies. The Partitioning Agreement was approved by the bankruptcy courts.

Please be advised that the information and documents contained herein are provided for the sole purpose of responding to your inquiry and should not be used for any purpose other than the handling of our claim by intermediaries and our reinsurers. The documents and information provided herewith, or portions thereof, are privileged and are provided with the understanding that you will maintain their confidentiality. If any information contained in this response or its enclosures is forwarder to retrocessionaires, we expect that the reinsurer will attempt to ensure that its confidentiality is maintained. If this information or documentation is requested by any other party, please advise us as to the identity of the requesting party and the nature of the request. No information or documentation provided with or in this letter should be given to any other party without our prior written approval.