UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

GRANITE STATE INSURANCE
COMPANY,

             Plaintiff,

      -against-

CLEARWATER INSURANCE COMPANY,
f/k/a ODYSSEY REINSURANCE
CORPORATION, f/k/a SKANDIA
AMERICA REINSURANCE
CORPORATION,

            Defendant.

Civil Action No.: 09 CV 10607 (RJH)

## DECLARATION OF MATTHEW J. LASKY, ESQ.

1.    I am associated with the law firm of Mound Cotton Wollan & Greengrass ("MCWG"), One Battery Park Plaza, New York, New York 10004-1486, counsel for Plaintiff Granite State Insurance Company ("Granite State") in this litigation. I submit this declaration in support of Granite State's Motion For Leave To File Its Second Amended Complaint against Defendant Clearwater Insurance Company, f/k/a/ Odyssey Reinsurance Corporation, f/k/a Skandia America Reinsurance Corporation ("Clearwater").

2.    I am fully familiar with the facts stated below, and submit this declaration to provide the Court with relevant information in support of Granite State's Motion For Leave To File Its Second Amended Complaint.

3.      Attached as Exhibit "1" is Granite State's Second Amended Complaint, dated October 29, 2010 ("Second Amended Complaint").

4.      Attached as Exhibit "2" is Granite State's Amended Complaint, dated April 28, 2010.

5.      Attached as Exhibit "3" is Clearwater's Answer To Amended Complaint And Demand For Jury Trial, dated May 20, 2010.

6.      Attached as Exhibit "4" are Clearwater's First Request For The Production Of Documents, dated July 2, 2010.

8.      I have conferred in good-faith with Stephen Kennedy, counsel for Clearwater, by telephone in an effort to gain Clearwater's consent to file Granite State's Second Amended Complaint. Clearwater stated in its October 29, 2010 e-mail, attached as Exhibit "5," that it: "neither consents nor objects with respect to Granite State's plan to seek leave to amend its amended complaint in this matter."

I declare under the penalty of perjury that the foregoing is true and correct.

Executed:      October 29, 2010
               New York, New York


_____
MATTHEW J. LASKY

2

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GRANITE STATE INSURANCE COMPANY,

                   Plaintiff,

     - v -

CLEARWATER INSURANCE COMPANY,
f/k/a ODYSSEY REINSURANCE CORPORATION,
f/k/a SKANDIA AMERICA REINSURANCE
CORPORATION,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CIVIL ACTION No.
2009 Civ. 10607 (RJH)

**SECOND
AMENDED COMPLAINT**

       Granite State Insurance Company ("Granite State"), for its second amended complaint against Clearwater Insurance Company, f/k/a/ Odyssey Reinsurance Corporation, f/k/a Skandia America Reinsurance  Corporation, ("Clearwater"), alleges as follows:

<u>PARTIES</u>

      1.      Granite State is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in New York, New York.

      2.      Clearwater is a corporation organized under the laws of the State of Delaware, with its principal place of business in Stamford, Connecticut.

<u>JURISDICTION AND VENUE</u>

      3.      The matter in controversy exceeds the sum of $75,000, excluding interest and costs.

      4.      Jurisdiction exists pursuant to 28 U.S.C. §1332 (a)(1), there being complete diversity between the parties.

      5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### The Colt Industries Inc. Matter

6.      Granite State issued policy of insurance bearing number 6179-1488 providing coverage to Colt Industries Inc. ("Colt") for the period July 1, 1979 through July 1, 1980..

7.      Granite State and Clearwater entered into a contract of reinsurance, identified as facultative certificate S 25273, pursuant to which Clearwater reinsured Granite State against losses under insurance policy number 6179-1488.

8.      Granite State paid certain losses under policy number 6179-1488 for asbestos bodily injury claims asserted against Colt (the "Colt Claims").

9.      Granite State has billed Clearwater $999,858 under certificate S 25273 for Clearwater's proportionate share of the losses paid by Granite State for the Colt Claims.

10.     Clearwater has failed to honor its obligations under certificate S 25273, and has wrongfully refused to make payment to Granite State for the Colt Claims.

### Reformation Of Certificate S 25273

11.     Policy 6179-1488 provides that the limits of insurance are $12,000,000 part of $50,000,000 excess of $100,000,000.

12.     Pursuant to the agreement between Granite State and Clearwater, Clearwater was to reinsure $1,000,000 of the $12,000,000 limit of policy 6179-1488, pursuant to the terms of certificate S 25273, and Granite State was to retain, pursuant to the terms of certificate S 25273, $1,000,000 of the $12,000,000 limit.

13.     Certificate S 25273 was issued incorrectly setting forth in section B of the declarations that the limit of policy 6179-1488 was "$2,000,000 Part of $50,000,000 Per Occurrence and Aggregate Excess of $100,000,000 Per Occurrence and Aggregate," also incorrectly setting forth in Section C of the declarations that that the reinsured amount was "50%

-2-

($1,000,000) of the Limit Stated in Section B," and further incorrectly stating in section C that the "Ceding Company Retention" was "50% ($1,000,000) of the Limit Stated in Section B."

<u>The McGraw Edison Company Matter</u>

14.     Granite State issued policy of insurance bearing number 6680-1963, providing coverage to McGraw Edison Company ("McGraw") for the period March 1, 1980 through March 1, 1981.

15.     Granite State and Clearwater entered into a contract of reinsurance, identified as facultative certificate C 26285, pursuant to which Clearwater reinsured Granite State against losses under insurance policy number 6680-1963.

16.     Granite State issued policy of insurance bearing number 6681-2370, providing coverage to McGraw for the period March 1, 1981 through March 1, 1982.

17.     Granite State and Clearwater entered into a contract of reinsurance, identified as facultative certificate C 27675, pursuant to which Clearwater reinsured Granite State against losses under insurance policy number 6681-2370.

18.     Granite State issued policy of insurance bearing number 6682-3216, providing coverage to McGraw for the period March 1, 1982 through March 1, 1983.

19.     Granite State and Clearwater entered into a contract of reinsurance, identified as facultative certificate SC 29066, pursuant to which Clearwater reinsured Granite State against losses under insurance policy number 6682-3216.

20.     Granite State issued policy of insurance bearing number 6683-3982, providing coverage to McGraw for the period March 1, 1983 through March 1, 1984.

21.     Granite State and Clearwater entered into a contract of reinsurance, identified as facultative certificate SC 30932, pursuant to which Clearwater reinsured Granite State against losses under insurance policy number 6683-3982.

22. Granite State policies bearing numbers 6681-2370, 6680-1963, 6682-3216, and 6683-3982 are hereinafter referred to collectively as the "McGraw Policies."

23. The Clearwater reinsurance certificates bearing numbers C 26285, C 27675, SC 29066, and SC 30932 are hereinafter referred to as the "McGraw Certificates"

24. In November 2004, Granite State entered into a settlement agreement that resolved issues regarding insurance coverage for asbestos bodily injury claims under the McGraw Policies (the "2004 Settlement").

25. In December 2008, Granite State entered into a settlement agreement that resolved issues regarding insurance coverage for asbestos bodily injury claims under the McGraw Policies (the "2008 Settlement").

26. Subsequent to these settlements, Granite State billed Clearwater for amounts due from Clearwater under the McGraw Certificates regarding the amounts paid by Granite State pursuant to the 2004 and 2008 Settlements.

27. Clearwater has failed to honor its obligations under the McGraw Certificates, and has not paid any of the amounts due to Granite State.

FIRST CAUSE OF ACTION
(Reformation of Certificate S 25273)

28. Granite State incorporates herein by reference, as if set forth in full, the allegations in paragraphs "1" through "13" above.

29. Certificate S 25273 provides reinsurance for policy 6179-1488, subject to a limit of $1,000,000 part of $12,000,000, per occurrence and aggregate excess of $100,000,000 per occurrence and aggregate.

30. Granite State's retention, subject to the terms of certificate S 25273, is $1,000,000 part of $12,000,000, per occurrence and aggregate excess of $100,000,000 per occurrence and aggregate.

31. Through a clerical error, certificate number S 25273 was issued with a declaration page that states, at Section B, that the "Policy Limits and Application" of policy 6179-1488 are "$2,000,000 part of $50,000,000, per occurrence and aggregate excess of $100,000,000 per occurrence and aggregate." The certificate declaration page, at Section C, also incorrectly states that the "Ceding Company Retention" is "50% ($1,000,000) of the "Limit Stated in Section B" and further incorrectly states in section D that "Skandia's Liability" is "50% ($1,000,000) of the Limit Stated in Section B."

32. Accordingly, because there was a mutual mistake by the parties, certificate number S 25273 should be reformed to reflect the true intent of the parties, that the policy limit is $12,000,000 part of $50,000,000 per occurrence and in the aggregate excess of $100,000,000 per occurrence and in the aggregate, that the reinsurance provided is in the amount of $1,000,000 part of $12,000,000 per occurrence and in the aggregate excess of $100,000,000 per occurrence and in the aggregate, and that the amount retained is $1,000,000 per occurrence and in the aggregate excess of $100,000,000 per occurrence and in the aggregate.

## SECOND CAUSE OF ACTION
### (Breach of Contract-Colt)

33. Granite State incorporates herein by reference, as if set forth in full, the allegations in paragraphs "1" through "13" above.

34. Clearwater has improperly failed to make the required payments under certificate S 25273 for the amounts paid by Granite State under policy number 6179-1488.

35. By failing to make such payments, Clearwater has breached the contractual obligations it owes Granite State under certificate S 25273.

36. Granite State has been damaged by Clearwater's breach in the amount $999,858.

### THIRD CAUSE OF ACTION
(Breach of Contract-McGraw)

37.     Granite State incorporates herein by reference, as if set forth in full, the allegations in paragraphs "1" through "5" and "14" through "26" above.

38.     Clearwater has improperly failed to make the required payments under the McGraw Certificates for the amounts paid by Granite State under the McGraw Policies.

39.     By failing to make such payments, Clearwater has breached its contractual obligations to Granite State under the McGraw Certificates.

40.     Granite State has been damaged by Clearwater's breach in an amount that exceeds $2,000,000.

### FOURTH CAUSE OF ACTION
(Declaratory Judgment-McGraw)

41.     Granite State incorporates herein by reference, as if set forth in full, the allegations in "1" through "5" and "14" through "26" above.

42.     There is an actual controversy between Granite State and Clearwater regarding Clearwater's obligation to pay Granite State the amounts due under the McGraw Certificates.

43.     Granite State is entitled to a declaration, pursuant to 28 U.S.C. § 2201, et seq., that Clearwater is obligated to make timely payments to Granite State in such amounts as they become due in the future under the McGraw Certificates for amounts to be paid by Granite State under the McGraw Policies pursuant to the 2004 and 2008 Settlements.

WHEREFORE, Granite State prays for the following relief:

(1) On the First Cause of Action, an Order reforming certificate S 25273  to conform to the true intent of the parties as alleged above;

(2) On the Second Cause of Action, judgment against Clearwater in the amount $999,858;

(3) On the Third Cause of Action, judgment against Clearwater based on Clearwater's breach of the McGraw Certificates for the amounts owed under those contracts;

(4) On the Fourth Cause of Action, a declaration that Clearwater is obligated to make timely payments under the McGraw Certificates for amounts to be paid by Granite State under the McGraw Policies arising out of the 2004 and 2008 Settlements;

(3) Pre-judgment interest, attorneys' fees and costs; and

(4) Such other and further relief as this Court deems proper.

Dated: New York, New York
       October 29, 2010

MOUND COTTON WOLLAN & GREENGRASS

By: _____
       Stuart Cotton (SC 7346)
       Matthew J. Lasky (ML 6666)

One Battery Park Plaza
New York, New York  10004
(212) 804-4200
*Attorneys for Plaintiff*
*Granite State Insurance Company*

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GRANITE STATE INSURANCE COMPANY,                          :

                  Plaintiff,               :

      - v -                                              :

CLEARWATER INSURANCE COMPANY,                              :
f/k/a ODYSSEY REINSURANCE CORPORATION,                    :
f/k/a SKANDIA AMERICA REINSURANCE                          :
CORPORATION,                                               :

                  Defendant.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CIVIL ACTION No.
2009 Civ. 10607 (RJH)

AMENDED COMPLAINT

Granite State Insurance Company ("Granite State"), for its amended complaint against Clearwater Insurance Company, f/k/a/ Odyssey Reinsurance Corporation, f/k/a Skandia America Reinsurance Corporation, ("Clearwater"), alleges as follows:

## PARTIES

1.      Granite State is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in New York, New York.

2.      Clearwater is a corporation organized under the laws of the State of Delaware, with its principal place of business in Stamford, Connecticut.

## JURISDICTION AND VENUE

3.      The matter in controversy exceeds the sum of $75,000, excluding interest and costs.

4.      Jurisdiction exists pursuant to 28 U.S.C. §1332 (a)(1), there being complete diversity between the parties.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### The Colt Industries Inc. Matter

6.    Granite State issued policy of insurance bearing number 6179-1488 providing coverage to Colt Industries Inc. ("Colt") for the period July 1, 1979 through July 1, 1980..

7.    Granite State and Clearwater entered into a contract of reinsurance, identified as facultative certificate S 25273, pursuant to which Clearwater reinsured Granite State against losses under insurance policy number 6179-1488.

8.    Granite State paid certain losses under policy number 6179-1488 for asbestos bodily injury claims asserted against Colt (the "Colt Claims").

9.    Granite State has billed Clearwater $999,858 under certificate S 25273 for Clearwater's proportionate share of the losses paid by Granite State for the Colt Claims.

10.    Clearwater has failed to honor its obligations under certificate S 25273, and has wrongfully refused to make payment to Granite State for the Colt Claims.

### Reformation Of Certificate S 25273

11.    Policy 6179-1488 provides that the limits of insurance are $12,000,000 part of $50,000,000 excess of $100,000,000.

12.    Pursuant to the agreement between Granite State and Clearwater, Clearwater was to reinsure $1,000,000 of the $12,000,000 limit of policy 6179-1488, pursuant to the terms of certificate S 25273, and Granite State was to retain, pursuant to the terms of certificate S 25273, $1,000,000 of the $12,000,000 limit.

13.    Certificate S 25273 was issued incorrectly setting forth in section B of the declarations that the limit of policy 6179-1488 was "$2,000,000 Part of $50,000,000 Per Occurrence and Aggregate Excess of $100,000,000 Per Occurrence and Aggregate," also incorrectly setting forth in Section C of the declarations that that the reinsured amount was "50%

-2-

($1,000,000) of the Limit Stated in Section B," and further incorrectly stating in section C that the "Ceding Company Retention" was "50% ($1,000,000) of the Limit Stated in Section B."

### The McGraw Edison Company Matter

14.     Granite State issued policy of insurance bearing number 6680-1963, providing coverage to McGraw Edison Company ("McGraw") for the period March 1, 1980 through March 1, 1981.

15.     Granite State and Clearwater entered into a contract of reinsurance, identified as facultative certificate C 26285, pursuant to which Clearwater reinsured Granite State against losses under insurance policy number 6680-1963.

16.     Granite State issued policy of insurance bearing number 6681-2370, providing coverage to McGraw for the period March 1, 1981 through March 1, 1982.

17.     Granite State and Clearwater entered into a contract of reinsurance, identified as facultative certificate C 27675, pursuant to which Clearwater reinsured Granite State against losses under insurance policy number 6681-2370.

18.     Granite State issued policy of insurance bearing number 6682-3216, providing coverage to McGraw for the period March 1, 1982 through March 1, 1983.

19.     Granite State and Clearwater entered into a contract of reinsurance, identified as facultative certificate SC 29066, pursuant to which Clearwater reinsured Granite State against losses under insurance policy number 6682-3216.

20.     Granite State issued policy of insurance bearing number 6683-3982, providing coverage to McGraw for the period March 1, 1983 through March 1, 1984.

21.     . Granite State and Clearwater entered into a contract of reinsurance, identified as facultative certificate SC 30932, pursuant to which Clearwater reinsured Granite State against losses under insurance policy number 6683-3982.

22.     Granite State policies bearing numbers 6681-2370, 6680-1963, 6682-3216, and 6683-3982 are hereinafter referred to collectively as the "McGraw Policies."

23.     The Clearwater reinsurance certificates bearing numbers C 26285, C 27675, SC 29066, and SC 30932 are hereinafter referred to as the "McGraw Certificates"

24.     In December 2008 Granite State entered into a settlement agreement that resolved issues regarding insurance coverage for asbestos bodily injury claims under the McGraw Policies (the "2008 Settlement").

25.     Subsequent to the 2008 Settlement, Granite State billed Clearwater $2,451,702 for amounts due from Clearwater under the McGraw Certificates regarding the amount paid by Granite State pursuant to the 2008 Settlement.

26.     Clearwater has failed to honor its obligations under the McGraw Certificates, and has not paid any of the amount due to Granite State.

### FIRST CAUSE OF ACTION
(Reformation of Certificate S 25273)

27.     Granite State incorporates herein by reference, as if set forth in full, the allegations in paragraphs "1" through "13" above.

28.     Certificate S 25273 provides reinsurance for policy 6179-1488, subject to a limit of $1,000,000 part of $12,000,000, per occurrence and aggregate excess of $100,000,000 per occurrence and aggregate.

29.     Granite State's retention, subject to the terms of certificate S 25273, is $1,000,000 part of $12,000,000, per occurrence and aggregate excess of $100,000,000 per occurrence and aggregate.

30.     Through a clerical error, certificate number S 25273 was issued with a declaration page that states, at Section B, that the "Policy Limits and Application" of policy 6179-1488 are "$2,000,000 part of $50,000,000, per occurrence and aggregate excess of $100,000,000 per

-4-

occurrence and aggregate." The certificate declaration page, at Section C, also incorrectly states that the "Ceding Company Retention" is "50% ($1,000,000) of the "Limit Stated in Section B" and further incorrectly states in section D that "Skandia's Liability" is "50% ($1,000,000) of the Limit Stated in Section B."

31.    Accordingly, because there was a mutual mistake by the parties, certificate number S 25273 should be reformed to reflect the true intent of the parties, that the policy limit is $12,000,000 part of $50,000,000 per occurrence and in the aggregate excess of $100,000,000 per occurrence and in the aggregate, that the reinsurance provided is in the amount of $1,000,000 part of $12,000,000 per occurrence and in the aggregate excess of $100,000,000 per occurrence and in the aggregate, and that the amount retained is $1,000,000 per occurrence and in the aggregate excess of $100,000,000 per occurrence and in the aggregate.

<u>SECOND CAUSE OF ACTION</u>
(Breach of Contract-Colt)

32.    Granite State incorporates herein by reference, as if set forth in full, the allegations in paragraphs "1" through "13" above.

33.    Clearwater has improperly failed to make the required payments under certificate S 25273 for the amounts paid by Granite State under policy number 6179-1488.

34.    By failing to make such payments, Clearwater has breached the contractual obligations it owes Granite State under certificate S 25273.

35.    Granite State has been damaged by Clearwater's breach in the amount $999,858.

<u>THIRD CAUSE OF ACTION</u>
(Breach of Contract-McGraw)

36.    Granite State incorporates herein by reference, as if set forth in full, the allegations in paragraphs "1" through "5" and "14" through "26" above.

37.    Clearwater has improperly failed to make the required payments under the McGraw Certificates for the amounts paid by Granite State under the McGraw Policies.

38.    By failing to make such payments, Clearwater has breached its contractual obligations to Granite State under the McGraw Certificates.

39.    Granite State has been damaged by Clearwater's breach in the amount $2,451,702.

### FOURTH CAUSE OF ACTION
(Declaratory Judgment-McGraw)

40.    Granite State incorporates herein by reference, as if set forth in full, the allegations in "1" through "5" and "14" through "26" above.

41.    There is an actual controversy between Granite State and Clearwater regarding Clearwater's obligation to pay Granite State the amounts due under the McGraw Certificates.

42.    Granite State is entitled to a declaration, pursuant to 28 U.S.C. § 2201, et seq., that Clearwater is obligated to make timely payments to Granite State in such amounts as they become due in the future under the McGraw Certificates for amounts to be paid by Granite State under the McGraw Policies pursuant to the 2008 Settlement.

WHEREFORE, Granite State prays for the following relief:

(1) On the First Cause of Action, an Order reforming certificate S 25273  to conform to the true intent of the parties as alleged above;

(2) On the Second Cause of Action, judgment against Clearwater in the amount $999,858;

(3) On the Third Cause of Action, judgment against Clearwater in the sum of $2,451,702 based on Clearwater's breach of the McGraw Certificates;

(4) On the Fourth Cause of Action, a declaration that Clearwater is obligated to make timely payments under the McGraw Certificates for amounts to be paid by Granite State under the McGraw Policies arising out of the 2008 Settlement;

-6-

(3) Pre-judgment interest, attorneys' fees and costs; and

(4) Such other and further relief as this Court deems proper.

Dated: New York, New York
      April 28, 2010

Mound Cotton  Wollan &
Greengrass

By: _____
    Stuart Cotton (SC 7346)
    SCotton@Moundcotton.com

One Battery Park Plaza
New York, New York 10004
(212) 804-4200

Attorneys for Plaintiff,
Granite State Insurance Company

-7-

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK       )
                                 ) ss:

COUNTY OF NEW YORK    )

        **Ayisha Edgar,** being duly sworn, deposes and says:

        Deponent is not a party to this action is over the age of 18 years and resides in Kings County, New York.

        On the 10th day of May, 2010, deponent served the **AMENDED COMPLAINT** upon:

TO:    Stephen M. Kennedy
       Adam A. Nagorski
       Clyde & Co.
       The Chrysler Building
       405 Lexington Avenue
       New York, New York 10174

at the address designated by said attorney for that purpose, by depositing the same, enclosed in a postpaid properly addressed wrapper directed to each of said attorney at the above address, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

                                          AYISHA EDGAR

Sworn to before me this
10th day of May, 2010

NOTARY PUBLIC

LABE FELDMAN
Notary Public, State of New York
No. 02FE6 554200
Qualified in Bronx County
Commission Expires June 16, 2011

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

GRANITE STATE INSURANCE
COMPANY,

           Plaintiff,

     -against-

CLEARWATER INSURANCE COMPANY,
f/k/a ODYSSEY REINSURANCE
CORPORATION, f/k/a SKANDIA
AMERICA REINSURANCE
CORPORATION,

          Defendant.

--------------------------------------------------------x

Civil Action No.: 09 CV 10607 (RJH)

**ANSWER TO AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

Defendant Clearwater Insurance Company (f/k/a Odyssey Reinsurance Corporation f/k/a Skandia America Reinsurance Corporation) ("Clearwater"), by and through its attorneys Clyde & Co US LLP, answers Plaintiff Granite State Insurance Company's ("Granite State") Amended Complaint (the "Complaint") as follows:

      1.    Clearwater denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint.

      2.    Clearwater admits the allegations contained in paragraph 2 of the Complaint.

      3.    Clearwater admits the allegations contained in paragraph 3 of the Complaint.

      4.    Clearwater denies that jurisdiction exists over controversies regarding contracts that provide that arbitration is the exclusive remedy for disputes arising thereunder. Clearwater otherwise admits the allegations contained in paragraph 4 of the Complaint.

      5.    Clearwater denies that venue is proper for controversies regarding contracts that provide that arbitration is the exclusive remedy for disputes arising thereunder. Clearwater

otherwise admits the allegations contained in paragraph 5 of the Complaint.

6.   Clearwater admits the allegations contained in paragraph 6 of the Complaint.

7.   Clearwater admits the allegations contained in paragraph 7 of the Complaint.

8.   Clearwater denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint.

9.   Clearwater admits it has received certain billings and other documents under the facultative certificate but otherwise denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint.

10.   Clearwater denies the allegations contained in paragraph 10 of the Complaint.

11.   Clearwater admits the allegations contained in paragraph 11 of the Complaint and refers to the document at issue, which speaks for itself, for its complete terms.

12.   Clearwater admits the allegations contained in paragraph 12 of the Complaint, except denies that it owes any amount to Granite State under the facultative certificate.

13.   Clearwater admits the allegations contained in paragraph 13 of the Complaint, except denies that it owes any amount to Granite State under the facultative certificate.

14.   Clearwater admits the allegations contained in paragraph 14 of the Complaint.

15.   Clearwater admits the allegations contained in paragraph 15 of the Complaint.

16.   Clearwater admits the allegations contained in paragraph 16 of the Complaint.

17.   Clearwater admits the allegations contained in paragraph 17 of the Complaint.

18.   Clearwater admits the allegations contained in paragraph 18 of the Complaint.

19.   Clearwater admits the allegations contained in paragraph 19 of the Complaint.

20.   Clearwater admits the allegations contained in paragraph 20 of the Complaint.

21.   Clearwater admits the allegations contained in paragraph 21 of the Complaint.

22.   No response is required to paragraph 22 of the Complaint, as no allegations are stated therein.

23.   No response is required to paragraph 23 of the Complaint, as no allegations are stated therein.

24.   Clearwater denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint.

25.   Clearwater admits it has received certain "Proofs of Loss" and other documents under the facultative certificates but otherwise denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint.

26.   Clearwater denies the allegations contained in paragraph 26 of the Complaint.

27.   Clearwater incorporates by reference its responses to paragraphs 1 through 13 of the Complaint.

28.   Clearwater denies the allegations contained in paragraph 28 of the Complaint, except admits that facultative certificate S 25273 provides reinsurance for policy 6179-1488, subject to a limit of $1,000,000, part of $12,000,000 part of $50,000,000 Per Occurrence and Aggregate Excess of $100,000,000 Per Occurrence and Aggregate.   Clearwater further denies that it owes any amount to Granite State under the facultative certificate.

29.   Clearwater denies the allegations contained in paragraph 29 of the Complaint, except admits that Granite State's retention, subject to the terms of facultative certificate S 25273, is $1,000,000 part of $12,000,000 part of $50,000,000 Per Occurrence and Aggregate Excess of $100,000,000 Per Occurrence and Aggregate.   Clearwater further denies that it owes any amount to Granite State under the facultative certificate.

- 3 -

30.    Clearwater admits the allegations contained in paragraph 30 of the Complaint, except denies that it owes any amount to Granite State under the facultative certificate.

31.    Clearwater denies the allegations contained in paragraph 31 of the Complaint, except admits that facultative certificate S 25273 should be reformed as follows:

- In Section B, the policy limit should read: "$12,000,000 Part of $50,000,000 Per Occurrence and Aggregate Excess of $100,000,000 Per Occurrence and Aggregate"

- In Section C, the ceding company retention should read: "$1,000,000 of the Limit Stated in Section B"

- In Section D, the reinsurer's liability should read: "$1,000,000 of the Limit Stated in Section B"

Clearwater further denies that it owes any amount to Granite State under the facultative certificate.

32.    Clearwater incorporates by reference its responses to paragraphs 1 through 13 of the Complaint.

33.    Clearwater denies the allegations contained in paragraph 33 of the Complaint.

34.    Clearwater denies the allegations contained in paragraph 34 of the Complaint.

35.    Clearwater denies the allegations contained in paragraph 35 of the Complaint.

36.    Clearwater incorporates by reference its responses to paragraphs 1 through 5 and 14 through 26 of the Complaint.

37.    Clearwater denies the allegations contained in paragraph 37 of the Complaint.

38.    Clearwater denies the allegations contained in paragraph 38 of the Complaint.

39.    Clearwater denies the allegations contained in paragraph 39 of the Complaint.

40.   Clearwater incorporates by reference its responses to paragraphs 1 through 5 and 14 through 26 of the Complaint.

41.   Clearwater denies the allegation in paragraph 41 of the Complaint that there is an actual controversy such that could warrant a declaratory judgment regarding potential future matters between the parties.

42.   Clearwater denies the allegations of contained in paragraph 42 of the Complaint.

### AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

43.   Certain of the parties' contracts of reinsurance, including those identified as SC 29066 and SC 30932, provide that arbitration is the exclusive remedy for disputes arising thereunder.

#### SECOND AFFIRMATIVE DEFENSE

44.   Plaintiff's Complaint fails to state any claim upon which relief can be granted.

#### THIRD AFFIRMATIVE DEFENSE

45.   Plaintiff failed to implement reasonable and adequate practices and procedures to ensure the proper reporting to Clearwater of notice and related claim information, including, but not limited to, information specifically requested by Clearwater about claims.

#### FOURTH AFFIRMATIVE DEFENSE

46.   Plaintiff's claims may be barred in whole or in part by its failure to provide timely and sufficient notice of loss under the applicable facultative certificates.

## FIFTH AFFIRMATIVE DEFENSE

47.   Some or all of the claims paid by Plaintiff to its policyholders may not be covered or may be excluded from the coverage provided by the applicable facultative certificates.

## SIXTH AFFIRMATIVE DEFENSE

48.   Any obligations on the part of Clearwater under a facultative certificate are subject to all terms, conditions and limitations in such certificate.

WHEREFORE, having fully answered Plaintiff's Complaint, Clearwater requests that the Complaint be dismissed in its entirety and such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Clearwater demands a jury trial on all issues so triable under applicable law.

Dated: New York, New York
       May 20, 2010

Respectfully submitted,

CLYDE & CO US LLP

By: _____
       Stephen M. Kennedy
       Adam A. Nagorski
       The Chrysler Building
       405 Lexington Avenue
       New York, New York 10174
       (212) 710-3900
       *Attorneys for Defendant,*
       *Clearwater Insurance Company*

- 6 -

TO:   Stuart E. Cotton
Matthew J. Lasky
MOUND COTTON WOLLAN & GREENGRASS
One Battery Park Plaza
New York, New York 10004
(212) 804-4200
*Attorneys for Plaintiff,*
*Granite State Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2010, I electronically filed the foregoing with the Clerk of the Court

for the United States District Court for the Southern District of New York by using the CM/ECF

system. I certify that service will be accomplished by the CM/ECF system upon:

Stuart E. Cotton
Matthew J. Lasky
MOUND COTTON WOLLAN & GREENGRASS
One Battery Park Plaza
New York, New York 10004
(212) 804-4200
*Attorneys for Plaintiff,*
*Granite State Insurance Company*


Adam A. Nagorski

- 8 -

# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                              )

GRANITE STATE INSURANCE       )
COMPANY,                         )
                              )

           Plaintiff,         )     Civil Action No.: 09 CV 10607 (RJH)

          -against-        )

CLEARWATER INSURANCE COMPANY, )
f/k/a ODYSSEY REINSURANCE     )
CORPORATION, f/k/a SKANDIA    )
AMERICA REINSURANCE        )
CORPORATION,                )
                              )

          Defendant.        )
------------------------------------------------------------x

## DEFENDANT CLEARWATER INSURANCE COMPANY'S
## <u>FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS</u>

     Defendant Clearwater Insurance Company (f/k/a Odyssey Reinsurance Corporation and

Skandia America Reinsurance Corporation) ("Clearwater") submits the following document

requests to Plaintiff Granite State Insurance Company.  Clearwater reserves the right to

supplement these requests as discovery in this case proceeds.

### <u>DEFINITIONS AND INSTRUCTIONS</u>

     1.      "Communications" means all telephone, facsimile, electronic, computer, radio,

personal, and other conversations, statements, discussions, debates, arguments, discourses,

colloquies, interviews, consultations, and every other kind of oral utterance or nonverbal

communication between persons.

     2.      "Concerning" means, in whole or in part, evidencing, constituting, containing,

embodying, connecting, reflecting, identifying, stating, referring to, dealing with, or in any way

pertaining to.

1

3.      "Documents" means all memoranda (including written memoranda of telephone conversations, other oral communications, discussions, agreements, acts and activities), letters (including drafts or working copies of letters), e-mails, postcards, telegrams, telephone records, facsimiles, intraoffice and interoffice communications, correspondence, handwritten or typewritten notes, pamphlets, diaries, records of every kind, sound recordings, transcripts of sound recordings, contracts and/or agreements (including drafts, working copies, or unexecuted versions of such contracts and/or agreements), books, letters, reports, catalogs, price lists, financial statements, spreadsheets, books of account, journals, ledgers, purchase orders, invoices, indices, data processing cards, other data processing materials, data sheets, tapes, photographs, Photostats, microfilm, videotapes, maps, directives, bulletins, circulars, notices, messages, reports, tabulations, notes, economic or statistical studies, surveys, pools, minutes, instructions, requests, cancelled checks, calendars, desk pads, appointment books, scrapbooks, notebooks, specifications, drawings, diagrams, sketches, and writings of every kind and character, including preliminary drafts and other copies of the foregoing, however produced.

4.      "Person" means any natural person or any business, legal or governmental entity, or association.

5.      "Relating to" means concerning, referring to, describing, evidencing, supporting, refuting or constituting.

6.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

2

7.     "AIG" means Granite State Insurance Company and its predecessors, successors, agents, officers, employees, parents, and affiliates, including, but not limited to American International Group, AIG Domestic Claims, Inc., AIG Technical Services, Inc., and Chartis.

8.     "Clearwater" means Clearwater Insurance Company and its predecessors, successors, affiliates, agents, officers and employees.

9.     "McGraw" means the McGraw Edison Company and all subsidiaries, divisions, predecessors, successors, and affiliates including, but not limited to, any entity asserting claims under insurance policies issued by AIG to McGraw.

10.    "Colt" means Colt Industries Inc. and all subsidiaries, divisions, predecessors, successors, and affiliates including, but not limited to, any entity asserting claims under insurance policies issued by AIG to Colt.

11.    The "1980 McGraw Policy" means the AIG policy bearing number 6680-1963, effective March 1, 1980 to March 1, 1981.

12.    The "1981 McGraw Policy" means the AIG policy bearing number 6681-2370, effective March 1, 1981 to March 1, 1982.

13.    The "1982 McGraw Policy" means the AIG policy bearing number 6682-3216, effective March 1, 1982 to March 1, 1983.

14.    The "1983 McGraw Policy" means the AIG policy bearing number 6683-3982, effective March 1, 1983 to March 1, 1984.

15.    The "1982 and 1983 McGraw Policies" means, collectively, the 1982 McGraw Policy and the 1983 McGraw Policy.

16.    The "1980 McGraw Fac Cert" means the Clearwater facultative certificate bearing number SC26285, effective March 1, 1980 to March 1, 1981.

3

17.     The "1981 McGraw Fac Cert" means the Clearwater facultative certificate bearing number SC27675, effective March 1, 1981 to March 1, 1982.

18.     The "1982 McGraw Fac Cert" means the Clearwater facultative certificate bearing number SC29066, effective March 1, 1982 to March 1, 1983.

19.     The "1983 McGraw Fac Cert" means the Clearwater facultative certificate bearing number SC30932, effective March 1, 1982 to March 1, 1983.

20.     The "1982 and 1983 McGraw Fac Certs" means, collectively, the 1982 McGraw Fac Cert and the 1983 McGraw Fac Cert.

21.     The "Colt Policy" means the AIG policy bearing number 6179-1488, effective July 1, 1979 to July 1, 1980.

22.     The "Colt Fac Cert" means the Clearwater facultative certificate bearing number S25273, effective July 1, 1979 to July 1, 1980.

23.     The "AIG Policies" means, collectively, the 1980 McGraw Policy, the 1981 McGraw Policy, and the Colt Policy.

24.     The "Clearwater Fac Certs" means, collectively, the 1980 McGraw Fac Cert, the 1981 McGraw Fac Cert, and the Colt Fac Cert.

25.     The "Dresser Settlement Agreement" means the 2004 settlement agreement between AIG and Dresser Industries and/or DII Industries and/or Halliburton under insurance policies issued to McGraw and/or other entities.

26.     The "Partitioning Agreement" means the 2004 agreement by that name between AIG, DII Industries, Federal-Mogul Products, Cooper Industries, and/or other parties.

4

27.    The "Federal-Mogul Settlement Agreement" means the 2008 settlement agreement between AIG, the Federal-Mogul U.S. Asbestos Personal Injury Trust, and/or other parties under insurance policies issued to McGraw and/or other entities.

28.    If any responsive documents are being withheld, whether based upon a claim of privilege, work product protection or other basis of confidentiality, provide a Privilege Log describing the following for each withheld document:

        a.   document type;

        b.   title and/or file-reference, if any;

        c.   date[s];

        d.   author(s);

        e.   recipient(s) (including carbon copies and blind copies, if any);

        f.   general subject matter of document[s]; and

        g.   basis for withholding document[s], and each fact upon which you rely in claiming the privilege or protection.

29.    These requests are continuing in nature, and must be supplemented if additional responsive documents or information become available.

## DOCUMENT REQUESTS

1.    Any and all copies of the Clearwater Fac Certs, including drafts of the Clearwater Fac Certs or any portions thereof.

2.    Any and all term sheets, cover notes, or similar documents relating to the Clearwater Fac Certs, including drafts of such documents.

3.    Any and all documents and communications concerning the formulation, negotiation, underwriting and/or placement of the Clearwater Fac Certs, including, but not

limited to, placement slips/files, underwriting files, correspondence files, and/or contract wording files, and any such documents or communications in the files of AIG's agents or brokers.

4.     Any and all copies of the AIG Policies.

5.     Any and all copies of any policies underlying the AIG Policies.

6.     Any and all documents and concerning premium paid to AIG under the AIG Policies.

7.     Any and all documents concerning payments by AIG of any losses, expenses, and/or defense costs under the AIG Policies.

8.     Any and all copies of checks, wire transfer confirmations and/or financial screens concerning the AIG Policies.

9.     Any and all documents and concerning the premium paid to Clearwater in connection with the Clearwater Fac Certs, including, but not limited to, copies of checks, wire transfer confirmations, financial screens, and any accounting or other relevant document.

10.    Any and all documents concerning reinsurance layoff sheets relating to the AIG Policies.

11.    Any and all documents concerning AIG's net retention under the Clearwater Fac Certs.

12.    Any and all documents concerning the exhaustion of the insurance policies underlying any of the AIG Policies.

13.    For each of the AIG Policies, any and all documents concerning whether losses under the policy were or are also covered by any other excess policies issued to the insured.

14.     For each of the AIG Policies, any and all documents concerning whether policies underlying the AIG policy were maintained for the duration of the AIG Policy.

15.     Any and all notices or reports by AIG to its reinsurers concerning actual or potential losses, claims, or reserves under the AIG Policies and/or the 1982 and 1983 McGraw Policies, including, but not limited to, precautionary notices.

16.     Any and all documents and communications concerning any reinsurance in addition to the Clearwater Fac Certs potentially or actually available to AIG for any losses, expenses, and/or defense costs under the AIG Policies.

17.     Any and all documents and communications concerning claims under the AIG Policies, including, but not limited to, documents and communications contained in the claims files of AIG or its agents or brokers.

18.     Any and all documents and communications concerning any notices or reports received by AIG or its agents and representatives of potential or actual losses, occurrences, or claims under the AIG Policies and/or the 1982 and 1983 McGraw Policies.

19.     Any and all documents sent by or on behalf of AIG to any other individual or entity concerning the Clearwater Fac Certs, or to Clearwater concerning the Clearwater Fac Certs and/or AIG Policies, including, but not limited to, documents sent through any intermediary.

20.     Any and all documents and communications concerning AIG notifying Clearwater – including, but not limited to, the decision to, or the decision not to, notify Clearwater or reinsurers generally – regarding actual or potential claims, losses, and/or settlements relating to the AIG Policies and/or the 1982 and 1983 McGraw Policies, either directly or through an intermediary.

7

21.     Any and all documents and communications concerning AIG ceding and/or allocating losses under the AIG Policies to the Clearwater Fac Certs.

22.     Any and all documents concerning any practices, guidelines or procedures of or used by AIG to prepare, process, issue or report notices or communications to reinsurers relating to losses or claims, including, but not limited to, all formal or informal guidelines, manuals, bulletins or memoranda in effect from the time of the issuance of the AIG Policies to the present.

23.     Any and all documents concerning any discussion, correspondence, e-mails, or other communications concerning the existence, need, sufficiency, and/or adequacy of reporting or notice procedures, practices, or guidelines used by AIG to report to or notify its reinsurers regarding any asbestos losses or claims.

24.     Any and all documents concerning any discussion, correspondence, e-mails, or other communications concerning the timeliness or untimeliness of AIG's reporting of asbestos losses or claims to reinsurers.

25.     Any and all documents concerning payments by AIG under the AIG Policies, including, but not limited to, any and all documents concerning AIG's internal requests for and/or approval of requests for authority to make payments under the AIG Policies.

26.     Any and all documents concerning any practices, guidelines or procedures of or used by AIG for the setting, estimating, posting, evaluation, adjusting, or supplementing of reserves, including, but not limited to, all formal or informal guidelines, manuals, bulletins or memoranda in effect from the time of the issuance of the AIG Policies to the present.

27.     Any and all documents and communications concerning AIG's setting, estimating, posting, evaluation, adjusting, or supplementing reserves under the AIG Policies and/or and the 1982 and 1983 McGraw Policies, including, but not limited to, any and all

8

documents showing the reserve chronology under each of the AIG Policies and/or the 1982 and 1983 McGraw Policies relating to any losses, expenses, and/or defense costs concerning claims under those policies.

28.     Any and all documents concerning any reviews, analyses, or studies by any consultant or other third party concerning AIG's reserves relating to asbestos exposures, claims, and/or losses.

29.     Any and all documents and communications concerning AIG's exposure to any losses, expenses and/or defense costs under any of the AIG Policies, including, but not limited to, all documents and communications concerning the number and/or monetary amount of possible, projected, potential or actual asbestos-related claims against McGraw and/or Colt.

30.     Any and all documents concerning any and all settlement (including the Dresser Settlement Agreement, the Partitioning Agreement, and the Federal-Mogul Settlement Agreement), coverage in place, cost sharing, or any other agreement entered into by AIG relating to any losses, expenses, and/or defense costs under the AIG Policies, including, but not limited to, internal requests for and/or approval of such agreements, and reports or minutes concerning any group, committee, or board.

31.     Any and all documents concerning the Dresser Settlement Agreement, including, but not limited to, a complete copy of that settlement agreement and any attachments thereto.

32.     Any and all documents concerning the Partitioning Agreement, including, but not limited to, a complete copy of that agreement and any attachments thereto.

33.     Any and all documents concerning the Federal-Mogul Settlement Agreement, including, but not limited to, a complete copy of that settlement agreement and any attachments thereto.

34.     Any and all documents or communications concerning coverage for or settlement of any losses, expenses, and/or defense costs under the AIG Policies, including, but not limited to, documents contained in the coverage files of AIG or its agents or brokers, analyses or memoranda by legal counsel, and committee minutes or reports.

35.     Any and all documents and communications concerning any reports, analyses, audits, inspections, or examinations by or on behalf of AIG concerning actual and/or potential asbestos-related claims asserted against McGraw or Colt.

36.     Any and all documents concerning any coverage litigation, arbitration, or mediation concerning the AIG Policies, including, but not limited to, any and all documents concerning the New Jersey and New York litigations and mediations related to claims asserted by Federal-Mogul Products, Inc. and/or its subsidiaries, divisions, predecessors, successors, or affiliates under policies issued by AIG to McGraw.

37.     Any and all documents and communications concerning whether the losses, expenses, and/or defense costs under the AIG Claims arise out of a single occurrence or multiple occurrences and/or were paid by AIG on a single or multiple occurrence basis.

38.     Any and all documents concerning any losses, claims, expenses and/or costs ceded to the Clearwater Fac Certs, including, but not limited to, documents concerning the allocation of such losses, claims, expenses and/or costs to reinsurers, and whether such losses, claims, expenses and/or costs arise out of one or multiple occurrences and/or are being presented on an occurrence or aggregate basis.

39.     Any and all documents concerning the reinsurance of all of the policies issued by AIG that are the subject of the Dresser Settlement Agreement, the Partitioning Agreement, or the Federal-Mogul Settlement Agreement, including, but not limited to, documents concerning the

reinsurance contracts covering those policies and any and all analyses, reports, and other documents concerning the allocation to the reinsurance contracts covering those policies.

40.     Any and all documents and communications concerning, identifying or specifying the occurrence(s) which caused and/or gave rise to any claims under the AIG policies, including, but not limited to, documents and communications concerning whether claims under the AIG Policies relate to, concern, or constitute products, completed operations, operations, non-products or premises claims or losses.

41.     Any and all documents concerning the amounts for which claims asserted by McGraw or Colt were settled and how those amounts compared to the total available limits of AIG companies' policies.

42.     Any and all documents concerning AIG's allocation of payments under settlements of the AIG Policies to reinsurers, including, but not limited to, documents concerning the method of such allocation and/or how AIG accounted for any discount off total available AIG policy limits that it received in any settlement.

43.     Any and all documents containing or concerning Brattle Group, NERA, Campos & Stratis, and/or any other third party models, studies, worksheets, reports, audits, memoranda or analyses relating to any of the AIG Policies and/or payments or settlements of claims under the AIG Policies.

44.    Any and all documents that AIG intends to offer into evidence at the trial of this

matter.

Dated: July 2, 2010
       New York, New York

Respectfully submitted,

CLYDE & CO US LLP

Stephen M. Kennedy
Adam A. Nagorski
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 710-3900
*Attorneys for Defendant,*
*Clearwater Insurance Company*

TO:
Stuart E. Cotton
Matthew J. Lasky
MOUND COTTON WOLLAN & GREENGRASS
One Battery Park Plaza
New York, New York 10004
(212) 804-4200
*Attorneys for Plaintiff,*
*Granite State Insurance Company*

12

# EXHIBIT 5

**Matthew Lasky - Granite v. Clearwater (McGraw Edison)**

| | |
|---|---|
| **From:** | "Kennedy, Stephen" <Stephen.Kennedy@clydeco.us> |
| **To:** | 'Matthew Lasky' <MLasky@moundcotton.com>, "Nagorski, Adam" <Adam.Nagorski@clydeco.us> |
| **Date:** | 10/29/2010 11:41 AM |
| **Subject:** | Granite v. Clearwater (McGraw Edison) |
| **CC:** | 'Stuart Cotton' <SCotton@moundcotton.com> |

Matt,

Clearwater neither consents nor objects with respect to Granite State's plan to seek leave to amend its amended complaint in this matter.

Regards,

Steve

Stephen M. Kennedy
Clyde & Co US LLP
The Chrysler Building
405 Lexington Avenue
11th Floor
New York, New York 10174
Tel: (212) 710-3935
Fax: (212) 710-3950

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you.

Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales and regulated by the Solicitors Regulation Authority.

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK         )
                                         ) ss:

COUNTY OF NEW YORK     )

       **Ayisha Edgar,** being duly sworn, deposes and says:

       Deponent is not a party to this action is over the age of 18 years and resides in

Kings County, New York.

       On the 29th day of October, 2010, deponent caused to be served by electronic mail the

within:

### DECLARATION OF MATTHEW J. LASKY, ESQ.

       On Stephen M. Kennedy and Adam A. Nagorski, counsels for Clearwater Insurance
Company for via electronic mail on October 29, 2010 at the electronic address previously
provided by them.

                          AYISHA EDGAR

Sworn to before me this
29TH day of October, 2010

_____
NOTARY PUBLIC

FRANCIS A. GARUFI
Notary Public, State of New York
No. 02GA6069106
Qualified in Queens County
Commission Expires Jan. 22, 20__