# EXHIBIT 7

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
GRANITE STATE INSURANCE COMPANY,

    Plaintiff,

   v.  Civil Action No. 2009 Civ.10607

CLEARWATER INSURANCE COMPANY,
f/k/a ODYSSEY REINSURANCE
CORPORATION, f/k/a SKANDIA
AMERICA REINSURANCE
CORPORATION,

    Defendants.
---------------------------------------X

DEPOSITION OF EVELYN DREW
New York, New York
Wednesday, January 19, 2011

REPORTED BY: BARBARA R. ZELTMAN
Professional Stenographic Reporter

Job Number: 2433

**Page 2**

1  EVELYN DREW
2
3
          January 19, 2011
4            9:39 a.m.
5
6     Deposition of EVELYN DREW, taken by
7  Plaintiff, pursuant to Notice, at the offices of
8  CLYDE & CO. US LLP, 405 Lexington Avenue, New York,
9  New York, before BARBARA R. ZELTMAN, a Professional
10 Stenographic Reporter and Notary Public within and
11 for the State of New York.

**Page 3**

1  EVELYN DREW
2  A P P E A R A N C E S:
3
4  MOUND, COTTON, WOLLAN & GREENGRASS
5  Attorneys for the Plaintiff
6     One Battery Park Plaza
7     New York, New York 10004
8     BY: ROBERT E. WILDER, ESQ.
9
10
11 CLYDE & CO. US LLP
12 Attorneys for the Defendants
13    405 Lexington Avenue
14    New York, New York 10174
15    BY: STEPHEN M. KENNEDY, ESQ.
16
17
18 ALSO PRESENT: Lisa A. Keenan, Esq., OdysseyRe

**Page 4**

1  EVELYN DREW
2
3     IT IS HEREBY STIPULATED AND AGREED
4  by and between the attorneys for the respective
5  parties herein that filing and sealing be and
6  the same are hereby waived.
7     IT IS FURTHER STIPULATED AND AGREED
8  that all objections, except as to the form of
9  the question, shall be reserved to the time
10 of trial.
11    IT IS FURTHER STIPULATED AND AGREED
12 that the within deposition may be signed and
13 sworn to before any officer authorized to
14 administer an oath with the same force and
15 effect as if signed and sworn to before
16 the Court.

Page 105

1        EVELYN DREW
2    Q   Do you know when, if ever, those
3  offices were folded together?
4    A   I don't.
5    Q   I'd like you to turn to Bates
6  Page 5 through 6 in the middle of
7  Exhibit 25, and this is a handwritten note
8  on the stationery on Gerard J. Marquart.
9        Is that name familiar to you?
10   A   Yes.
11   Q   Who is he?
12   A   He is in my office and he handles
13 claims.
14   Q   So he's in the APH unit?
15   A   No.
16   Q   What sort of claims does he handle
17 now?
18   A   I have no idea.
19   Q   Is he an assistant vice president?
20   A   No.
21   Q   What title does he have?
22   A   I would be guessing.
23   Q   People report to him?
24   A   Yes.
25   Q   Would you call him senior

Page 106

1        EVELYN DREW
2  management?
3    A   I believe he's a vice president. I
4  don't know if that's senior management.
5    Q   That would be the same level as
6  Terry Chavez?
7    A   It's the same title.
8    Q   Right.
9        Do you know if there was a time
10 when he worked on APH claims?
11   A   I don't.
12   Q   He was with the company when you
13 joined?
14   A   Yes.
15   Q   In any event, his note seems to
16 say -- can't read the first line. But then
17 seems to say "Chicago branch. Please set up
18 002 for asbestos.  001 is now EIL."
19       And there's a date stamp on here,
20 "May, 1994, Chicago."
21       Do the 001 and 002 numbers mean
22 anything to you?
23   A   No.
24   Q   I'd like you to look at Page CW-13,
25 please.

Page 107

1        EVELYN DREW
2        This appears to be a note on the
3  stationery of an individual named John F.
4  *Petroccione.
5        Is that name familiar to you?
6    A   I've heard it in passing. I don't
7  know him.
8    Q   Is he currently at OdysseyRe, to
9  your knowledge?
10   A   I have no idea.
11   Q   I'd like you to look CW-4 in this
12 exhibit which appears to be a June 8, 1994
13 memo to Mr. Marquart from Delores Maupins
14 regarding McGraw Edison. It's got
15 SC27675P002.
16       And based on the handwritten note
17 on the next page which we looked at, CW-5,
18 and the date on that page, would you agree
19 that the subject line on Page CW-004 is
20 referring to McGraw Edison asbestos claims?
21   A   It may. I can't say for sure.
22   Q   Does the name "Delores Maupins"
23 ring a bell?
24   A   No.
25   Q   Let's look at the first page again,

Page 108

1        EVELYN DREW
2  Page 3, CW-3, this preliminary claims notice
3  form.
4        I note it says "Claim Number P002."
5        And that would correspond with
6  Mr. Marquart's suggestion on Page 5,
7  correct?
8    A   I can't say for sure. I don't know
9  what the "P" is.
10   Q   And then in the frame "Skandia
11 Liability."
12       Do you see that?
13   A   Yes.
14   Q   "Certificate information downloaded
15 from the mainframe to the Basic 4.  Please
16 check all fields for accuracy."
17       Do you know what the Basic 4 is?
18   A   I do not.
19   Q   And then there's under Claim
20 Information, it mentions a report date
21 May 25, 1994.
22       Do you see that?
23   A   Yes.
24   Q   Do you know what report that's
25 referring to?

WINTER REPORTING, INC.    (212) 953-1414

## Page 109

EVELYN DREW

2  A  No.
3  Q  This says "Prepared by Richard
4  Noriega."
5     Does his name ring a bell?
6  A  No.
7  Q  Based on your review of Page CW-3
8  as well as the other pages we've looked at
9  in this exhibit, do you have an
10 understanding of why CW-3 was prepared?
11 A  I don't. There's no explanation.
12    (Granite State Exhibit 26,
13    Declaration of Theresa A. Chavez
14    dated January 5, 2011, was marked
15    for Identification.)
16 BY MR. WILDER:
17 Q  I've marked as Granite State 26 the
18 Declaration of Theresa A. Chavez dated
19 January 5, 2011, which was filed in this
20 action.
21    Have you seen this declaration
22 before now?
23 A  No.
24 Q  Were you aware that Ms. Chavez
25 prepared a declaration for the litigation?

## Page 110

EVELYN DREW

2  A  No.
3  Q  In Paragraph 3, Ms. Chavez states
4  "As part of my responsibilities for managing
5  APH claims for Clearwater, I supervise a
6  group of six professional claims people who
7  are directly responsible for handling claims
8  that are presented by hundreds of cedent
9  companies under thousands of reinsurance
10 contracts with Clearwater."
11    Are you one of the six people who
12 Ms. Chavez supervises?
13 A  Yes.
14 Q  Paragraph 4 refers to documents
15 that Granite State is seeking in this
16 litigation and it quotes: All documents
17 concerning Clearwater's knowledge of
18 asbestos claims brought against McGraw
19 Edison [Company] from whatever source
20 derived."
21    When do you believe that Clearwater
22 first learned of asbestos claims brought
23 against McGraw Edison from any source?
24 A  Can you repeat that.
25    (Requested portion of record read:

## Page 111

EVELYN DREW

2  "Q. When do you believe that
3  Clearwater first learned of asbestos
4  claims brought against McGraw Edison from
5  any source?")
6     (End of read-back)
7  A  I don't know the exact date.
8  Q  What's the approximate date?
9  A  I really don't know what the
10 approximate date is.
11    Are you referring to any asbestos
12 claims just against McGraw? I don't know
13 when they first learned of them.
14 Q  If you needed to determine that,
15 how would go about doing it?
16    MR. KENNEDY: I'll just object
17 to the foundation of that question.
18 A  I would review our files.
19 Q  Which files would you review?
20 A  I would review my claims file.
21 Q  Only one file?
22 A  Well, the one that's set up for
23 each facultative certificate.
24 Q  You're talking about the Granite
25 State, right?

## Page 112

EVELYN DREW

2  A  Yes.
3  Q  My question related to Clearwater's
4  knowledge of asbestos claims brought against
5  McGraw Edison Company.
6     If you wanted to find out when
7  Clearwater first obtained knowledge of
8  asbestos claims brought against McGraw
9  Edison from any source whatsoever, how would
10 you go about doing that?
11 A  I don't even know if I could answer
12 that.
13    There are -- we have numerous,
14 numerous files, opened and closed. I don't
15 even know how -- I would believe every
16 single file would have to be reviewed, but
17 there's just so many I don't know if I would
18 be able to figure that out.
19 Q  And these files that you just
20 referenced in that answer, they're all
21 McGraw Edison files?
22 A  If that's what I was looking for,
23 claims against McGraw Edison by any company.
24 Q  And there are hundreds of those
25 files?

Page 117

EVELYN DREW

2  A  Yes.
3  Q  Are these printouts from some
4  database?
5  A  Yes.
6  Q  Can you describe the database?
7  A  It's called RSG.
8  Q  RSG.
9     Does that stand for something?
10 A  I have no idea.
11 Q  What is it used for?
12 A  It depends on the person entering
13 it.
14 Q  Well, do you use it?
15 A  I do.
16 Q  What do you use it for?
17 A  There's multiple reasons. I don't
18 know if I can be exhaustive.
19 Q  For example, let's look at
20 Page 4571.
21    And I noticed your name was on this
22 page under Claims Examiner.
23 A  Yes.
24 Q  And the contract number looks like
25 one of the certificates at issue here.

Page 118

EVELYN DREW

2  A  Yes.
3  Q  Is that correct?
4  A  Yes.
5  Q  So what does this page reflect?
6  A  It reflects what it says. It has a
7  claim number, who the broker was and who is
8  currently handling the claim.
9  Q  Right.
10 A  And then "cedent claimant number"
11 would be what was reported to us.
12 Q  Right.
13    Does this page reflect data that
14 you input?
15 A  No.
16 Q  Can you tell who input it?
17 A  I do not know.
18 Q  Is the system, like, programmed to
19 know that you are the claims examiner?
20 A  No.
21 Q  What are some of the reasons you
22 would -- strike that.
23    Do you input data into the system
24 from time to time?
25 A  Sometimes.

Page 119

EVELYN DREW

2  Q  And what are some of the reasons
3  you would do that?
4  A  I make payments out of the system.
5  Q  Is that the only use you make of
6  this?
7  A  No. As I said, there's multiple
8  uses for the system as a whole, RSG.
9  Q  I'm focusing on you. You make
10 payments out of it?
11 A  Right.
12 Q  What else?
13 A  I go in there and I can set a
14 reserve in the system. I can find out what
15 our retentions are for our
16 retrocessionaires.
17    There's numerous reasons, I
18 believe. It could be anything.
19    If I'm looking for the cedent's
20 claim number, I would go in.
21 Q  And all the claim professionals
22 have access to this RSG?
23 A  Yes.
24 Q  The page we were looking at, I
25 don't know if you still have it open, 4571.

Page 120

EVELYN DREW

2  A  Uh-huh.
3  Q  It says "Cedent report date,
4  May 31, 1994."
5     Are you aware of a Granite State
6  report, May 31, 1994, relating to the McGraw
7  Edison asbestos claims?
8  A  I'm not.
9  Q  Could you turn back one page to
10 4570, please.
11    And I notice in sort of the second
12 half of the bottom part of the text, you see
13 where it says "our report date, May 31,
14 1994."
15    Do you see that?
16 A  Yes.
17 Q  Are you aware of a Clearwater or
18 Odyssey report dated May 31, 1994 in respect
19 of the McGraw Edison claims?
20 A  No.
21 Q  It says "Diary June 10, 2006."
22    Do you know what that's about?
23 A  No.
24 Q  Do you or other claims examiners at
25 Odyssey use this system as a tickler system

Page 165

EVELYN DREW

Do you see that at the bottom of the page?
A   Yes.
Q   And you are responding to a request for payments from Granite State, correct?
A   Yes.
Q   And you referred Mary Ellen Wakeman to a letter from Julie Tavernese dated June 8, 2009, correct?
A   Yes.
Q   And is the letter you referred to in your e-mail the attachment to Granite State 35?
A   Yes.
Q   And you forwarded that to Mary Ellen Wakeman the same day, June 23, correct?
A   I believe so. I don't know.
Q   If you look at the first page of Exhibit 35 --
A   Sorry. Yes, June 23, yes, I did.
Q   And this letter was written and signed by Julie Tavernese?
A   Yes.

Page 166

EVELYN DREW

Q   Why is it that she prepared this letter if you took over the claim in May?
A   I believe the questions that she had regarding this claim were referenced in the claims committee document that we previously reviewed and so she was sending the inquiries out that she had.
Q   And so this was sort of her final act on the claim, if you will?
A   It may have been.
Q   And she didn't discuss what she was putting in this letter before she sent it out with you?
A   No.
Q   Did you know she was going to be sending a letter?
A   It depends on the time frame that -- on June 8, did I know?
Q   No. Did you know between May 11th and June 8th that Julie Tavernese is going to be drafting and sending a letter on these claims that you had taken over?
A   I can't remember within that specific time frame if I knew.

Page 167

EVELYN DREW

Q   Okay.
    Now, I noticed that Ms. Tavernese's letter lists the ceding company as ISCOP/Granite State.
    Do you know what ISCOP is?
A   No.
Q   Isn't that an AIG company with that acronym?
A   I don't think it's that acronym.
Q   Insurance Company of Pennsylvania?
A   I think it's probably ICSOP.
Q   So it's a typo?
A   I think so.
Q   So were there or are there ICSOP claims ceded to OdysseyRe with respect of Dresser or Federal Mogul?
A   I don't know.
Q   Are you currently working on any?
A   Not that I recall any.
Q   Do you know why Ms. Tavernese included ICSOP here?
A   I would be speculating as to why she included it.
Q   Do you have an understanding of why

Page 168

EVELYN DREW

she included it based on your knowledge of the files?
A   I can speculate why she included it.
Q   I don't want you to speculate, but if it's an educated inference, that's not speculation.
A   I can tell you I reference the documents that I receive. I reference the information that I provided.
    I don't know if she was provided with ICSOP.
Q   Okay. So you are saying maybe that whatever she was responding to at that --
A   It could have been. I'm speculating.
Q   On the last page of the letter, there are only two pages, the second page of the letter, she states, "We would also like to review Re Studebaker/McGraw Edison files. Please provide us with some dates so that we may set up a mutually agreeable file review for these claims."
    Do you know what your response was?

Page 169

EVELYN DREW

A To the best of my recollection, I don't think anybody ever responded to us on our request.
Q On this particular request?
A On more than that request on this document.
Q In respect of a claim review?
A In respect of only a claim review, I do not believe anyone responded to us with respect to a claim review.
    (Granite State Exhibit 36, E-mail chain, top e-mail dated Monday, August 17, 2009, 8:46, CW-01725 through CW-01743, was marked for Identification.)
BY MR. WILDER:
Q GS 36 is Bates number CW-1725 through 1743.
    And it's a string of e-mails attaching several reports.
    And my question is: Did you receive the July 29, 2009 e-mail in this exhibit with these attachments?
A I believe so. I can't say for sure

Page 170

EVELYN DREW

but if every single one of these attachments was in that e-mail, then I believe so.
Q Did you understand this to be, in part at least, in response to Julie Tavernese's letter that we just looked at, the June 8th, letter.
A I don't know what this is.
    I don't know how AIG or Granite State characterized this because the document itself is addressed to Resolute, not Julie.
Q But the e-mail is addressed to you. Let's look at the second page of the exhibit. June 24th e-mail from you to Mary Ellen Wakeman.
A Right.
Q And this is what -- we'd looked at this e-mail earlier where you advised Mary Ellen Wakeman that there were outstanding questions in Julie Tavernese's June 8th letter?
A Right.
Q Then she responds by saying "I have the request from Julie out to our examiner,"

Page 171

EVELYN DREW

she continues. And then in the next e-mail, she sends you the attached report from the examiner.
    So is it your understanding that this report or reports was in part intended to address questions raised by Julie Tavernese?
    MR. KENNEDY: Object to the form.
A I don't know what Mary Ellen and the examiner were reporting to Julie. All I can say is this document is addressed to Resolute Management and not to Julie Tavernese.
Q But the report was sent to you by e-mail, correct?
A The July 17th Resolute letter?
Q Yes.
A Yes. It was sent to me via e-mail.
Q Right. It was sent to you via e-mail and you were told that Julie's questions were sent to the examiner, correct?
A Based on this, I don't know if this

Page 172

EVELYN DREW

was intended to be the response by the examiner to Julie's questions, since it's not addressed to Julie.
Q What about the fact that there's an e-mail that says "Good morning, Evelyn, please see the attached report from the examiner on this above claim."
A She's just sending me the attached report from the examiner.
Q And it doesn't mean anything to you that this chain is all about Julie's inquiries about the Granite State claim?
A I don't believe these are responses to Julie's inquiries regarding the Granite State claims.
Q That's fine. Okay.
    Did you read these attachments when you got them?
A Yes, I believe so.
Q And you didn't feel they addressed any of the questions in Julie's letter?
A No, I don't think so.
    (Granite State Exhibit 37, E-mail chain, top e-mail dated

43 (Pages 169 to 172)

Page 237

EVELYN DREW

1
2  Q  Names of other cedents?
3  A  No.
4  Q  Other Granite State files?
5  A  Yes.
6  Q  You see Date of Report?
7  A  Yes.
8  Q  What are those dates? There are
9  four different dates there. February 24,
10 2009 and so on.
11 A  Based on my recollection and my
12 review of the claims files, those may be the
13 dates of the first documents in our claims
14 file from Granite State.
15 Q  Is that your best recollection --
16 A  Yes.
17 Q  -- of what that is?
18 A  Yes.
19 Q  And of course, any documents in
20 your file that are literally not from
21 Granite State, they are either from Chartis
22 or AIG, correct?
23    MR. KENNEDY: Object to the
24 form.
25 A  I'm sorry. Could you say that

Page 238

EVELYN DREW

1
2  again.
3  Q  Any documents in your file were
4  not -- I haven't seen any document with a
5  Granite State letterhead, have you?
6  A  Letterhead, no.
7  Q  So any communications come from
8  either Chartis or previously AIG?
9  A  No.
10 Q  No? Who else?
11 A  I believe there are some bills in
12 the file that might reference ICSOP or
13 National Union.
14 Q  They reference. So how do you
15 determine what's from Granite State. When
16 you say date of the earliest document in the
17 file from Granite State, how do you define
18 "Granite State"?
19 A  For me, I meant to say in my file
20 that references this claim, the earliest
21 document not file.
22 Q  Were these claim numbers, for
23 example, were these certificates?
24 A  Yes.
25 Q  And this was the first update since

Page 239

EVELYN DREW

1
2  the original Claims Committee prepared by
3  Julie Tavernese?
4  A  I believe so, yes.
5  Q  And I assume you only changed
6  certain parts of it, right? It's not a
7  rewrite?
8  A  Excuse me.
9  Q  You only amend certain parts of it,
10 you didn't rewrite the whole Claims
11 Committee, right?
12 A  There are portions I did.
13 Q  And portions that remained the
14 same?
15 A  Yes. There are some portions that
16 remained the same.
17 Q  Can you turn to Page 6 of the
18 report at Page 1229.
19    Just if you could tell me
20 generically again, what material is redacted
21 here?
22 A  Other claim numbers.
23 Q  Relating to Granite State policies?
24 A  Yes.
25 Q  And these Granite State policies

Page 240

EVELYN DREW

1
2  incepted in 1981, 1982 and 198 -- well, I
3  can't tell the last one.
4     One of them was in 1981 and one was
5  in 1982?
6  A  Our claim files. I'm sorry, can
7  you repeat that.
8  Q  In other words, there's Date of
9  Loss column, and so the first two redactions
10 relate to some Granite State policy other
11 than the ones at issue here with date of
12 loss in 1981 and 1982?
13 A  No.
14 Q  Oh, so then in other words, there
15 were redactions all the way across?
16 A  I don't know what you are talking
17 about.
18 Q  I know. I'm trying to rush.
19    There is a little box that says
20 "Redacted" and it's black, but I'm guessing
21 that the black should have extended further
22 to the left as material removed, that's to
23 the left of these black boxes like the dates
24 of loss, the policy numbers?
25 A  I don't know -- I don't understand