# EXHIBIT 31

**From:**        "Donal Luna" <Donal.Luna@cwt.com>
**To:**          D_LA.P_LWLA(RJC),Allegro5.hub 05("simon_yoon@aig.com","chris.eskelan@aig.com")
**Date:**        11/15/04 9:20AM
**Subject:**     Halliburton / AIG - Execution Package

Attached are execution copies of the following documents relating to the
Halliburton policies:

1. The Assignment Agreement (provided for your review only);
2. The Consent and Agreement; and
3. The Letter Agreement regarding pricing and payment schedule.

Please note that the account information contained in the Consent and
Agreement may need to be updated.  Also, the schedule referenced in the
Letter Agreement will be added when a final schedule is negotiated.

Please send executed copies of the signature pages of the Consent and
Agreement and the Letter Agreement to my attention via fax or email.

Best regards,

Donal A. Luna
Cadwalader, Wickersham & Taft LLP
227 West Trade Street, Suite 2400
Charlotte, NC  28202
Main: 704-348-5100
Direct: 704-348-5328
Desktop Fax: 704-331-4276
Fax: 704-348-5200
donal.luna@cwt.com
www.cadwalader.com

(See attached file: Halliburton Consent and Agreement.pdf)(See attached
file: Halliburton Assignment Agreement.pdf)(See attached file: Halliburton
- AIG Pricing Agreement.pdf)
=====================================================================
NOTE:  The information in this email is confidential and may be legally privileged.  If you are not the
intended recipient, you must not read, use or disseminate the information.  Although this email and any
attachments are believed to be free of any virus or other defect
that might affect any computer system into which it is received and opened, it is the responsibility of the
recipient to ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham
& Taft LLP for any loss or damage arising in any way from its use.

=====================================================================

CC:        "Steven N.Cohen" <Steven.Cohen@cwt.com>, "Michael Edelman"
<Michael.Edelman@cwt.com>

EXHIBIT

**AIG TECHNICAL SERVICES, INC.**
80 Pine Street
New York, New York 10005

November 12, 2004

HDK PURCHASER TRUST
c/o U.S. Bank National Association, as Purchaser Trustee
100 Wall Street, 16th Floor
New York, NY 10005

> Re:   Letter Agreement

Ladies and Gentlemen:

Reference is made to that certain Consent and Agreement, dated as of the date hereof (the "Consent and Agreement"), made by AIG Technical Services, Inc. on behalf of AIU Insurance Company, American Home Assurance Company, Birmingham Fire Insurance Company, Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, New Hampshire Insurance Company, and L'Union Atlantique D'Assurances S.A., and their respective predecessors, successors and assigns (collectively, the "AIG Insurers"), in favor of HDK PURCHASER TRUST, a common law trust organized under the laws of the State of New York (together with its successors and assigns, the "Purchaser"). Capitalized terms used but not otherwise defined in this letter agreement ("Letter Agreement") shall have the meanings assigned thereto in the Consent and Agreement.

The AIG Insurers hereby jointly and severally represent, warrant and confirm to the Purchaser as follows:

(i)      this Letter Agreement is the "Letter Agreement" referred to in the Consent and Agreement;

(ii)      the dates and amounts of the AIG Settlement Payments, which the AIG Insurers agreed to make pursuant to the Settlement Agreement, are accurately set forth on Schedule I hereto;

(iii)      pursuant to the Assignment Agreement and the Consent and Agreement, each AIG Settlement Payment shall be made by the AIG Insurers to the Purchaser in the applicable amount and on the applicable date as set forth on Schedule I hereto, as the amount of any such payment may be amended in accordance with the preceding subparagraph (ii) (provided, that if any such applicable date is not a Business Day, then such payment shall be made on the immediately preceding Business Day), in each case without any set-off, counterclaim or any other deduction whatsoever;

NCLIB1 239607.3

3 GRANITE008681

(iv)    in the event that the AIG Insurers fail to pay any AIG Settlement Payment in full when due, all such delinquent amounts shall bear interest as set forth in the Consent and Agreement and shall be payable in full on demand; and

(v)    in the event that the AIG Insurers fail to pay in full any AIG Settlement Payment within 15 days following the date when due, all other AIG Settlement Payments shall become immediately due and payable on demand.

Please indicate you acknowledgment and agreement with the foregoing by you signature below.

Very truly yours,

[SIGNATURES FOLLOW]

-2-

3 GRANITE008682

**AIG TECHNICAL SERVICES, INC.**, as authorized agent for AIU Insurance Company, American Home Assurance Company, Birmingham Fire Insurance Company, Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, New Hampshire Insurance Company, and L'Union Atlantique D'Assurances S.A., and their respective predecessors, successors and assigns

By: _____
     Name:
     Title:

Acknowledged and agreed as of the date first above written:

**HDK PURCHASER TRUST**

By:  **U.S. BANK NATIONAL ASSOCIATION,**
    as Purchaser Trustee

By: _____
     Name:
     Title:

LETTER AGREEMENT

3 GRANITE008683

Schedule 1

## AIG SETTLEMENT PAYMENTS

### [TO BE PROVIDED LATER]

| Payment Date | Payment Amount |
|---|---|
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| [___]/[___]/[___] | $[_____] |
| **Total** | $[_____] |

AIG TECHNICAL SERVICES, INC., as authorized agent for AIU Insurance Company, American Home Assurance Company, Birmingham Fire Insurance Company, Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, New Hampshire Insurance Company, and L'Union Atlantique D'Assurances S.A., and their respective predecessors, successors and assigns

By: _____
Name: Christopher J. Eckeland
Title: Asst. Vice President

Acknowledged and agreed as of the date first above written:

HDK PURCHASER TRUST

By:  U.S. BANK NATIONAL ASSOCIATION,
     as Purchaser Trustee

By: _____
    Name:
    Title:

LETTER AGREEMENT

** TOTAL PAGE.05 **

3 GRANITE008685

## CONSENT AND AGREEMENT

CONSENT AND AGREEMENT, dated as of November 12, 2004 (this "Consent and Agreement"), made by AIG TECHNICAL SERVICES, INC. ("AIGTSI") on behalf of AIU Insurance Company, American Home Assurance Company, Birmingham Fire Insurance Company, Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, New Hampshire Insurance Company, and L'Union Atlantique D'Assurances S.A., and their respective predecessors, successors and assigns (collectively, the "AIG Companies"), in favor of HDK PURCHASER TRUST, a common law trust organized under the laws of the State of New York (together with its successors and assigns, the "Purchaser").

Reference is made to (i) that certain Assignment Agreement, dated as of November 12, 2004 (as amended, supplemented or otherwise modified from time to time, the "Assignment Agreement"), by and among (A) DII Industries, LLC, as debtor and debtor-in-possession, and its predecessors, successors and assigns ("DII Industries"), Kellogg, Brown & Root, Inc., as debtor and debtor-in-possession, and its predecessors, successors and assigns ("KBR"), and each of the other Releasing Policyholders (as defined in the Settlement Agreement) (the "Other Releasing Policyholders", and with DII Industries and KBR, collectively, the "Sellers" and, each, a "Seller"), (B) Halliburton Company, and its predecessors, successors and assigns ("Halliburton"), and (C) the Purchaser, and (ii) the AIG Settlement Payments referred to therein. Capitalized terms used but not otherwise defined herein shall have the meanings assigned thereto by the Assignment Agreement.

The AIG Companies hereby, jointly and severally, unconditionally and irrevocably, (i) consent to the sale and assignment of the AIG Settlement Payments by the Sellers to the Purchaser and (ii) agree directly with and for the benefit of the Purchaser that the AIG Companies shall pay to the Purchaser each AIG Settlement Payment in the applicable amount and on the applicable date (provided, that if such applicable date is not a Business Day, then such payment shall be made on the immediately preceding Business Day) as set forth in a letter agreement, dated as of the date hereof, between the Purchaser and the AIG Companies (the "Letter Agreement") in each case without any set-off, counterclaim or any other deduction whatsoever. The AIG Companies hereby confirm that the AIG Settlement Payments set forth in the Letter Agreement are the payments the AIG Companies agreed to make to the Sellers pursuant to the Settlement Agreement and that the schedule of payments specified in the Letter Agreement reflects the amounts payable pursuant to the Settlement Agreement.

As a clarification and not as a limitation of their unconditional and irrevocable payment obligations hereunder, each AIG Company hereby (a) agrees that its obligations in respect of the AIG Settlement Payments are absolute, unconditional and enforceable, (b) waives any and all defenses to payment and any right of set off or recoupment of claims or counterclaims they may now or hereafter have, and (c) agrees that it will not assert as a defense

NCLIB1 240017.3

to payment, a basis for nonpayment, or as a right or basis for set off, without limitation, any of the following, among other things:

(i)   (A) the failure of any representations made by the Purchaser or any Seller to be true or correct; (B) any indulgence, concession, waiver or consent given to any Seller; (C) any taking, exchange, release, amendment, non-perfection, realization or application of or on any security for or guarantee of the AIG Settlement Payments; (D) any breach by any Seller of any provision of the Settlement Agreement or the failure by any Seller to perform any obligation under the Settlement Agreement; (E) any defect as to the valid creation, existence or solvency of any Seller or any change, restructuring, or termination in or of the corporate structure or existence of any Seller; (F) the insolvency of any Seller or the commencement of bankruptcy proceedings involving any Seller, or similar proceedings under state or local law;

(ii)   (A) the rescission, rejection, nullification, reformation or modification of the Settlement Agreement or the Assignment Agreement, in each case in whole or in part (including, but not limited to, in respect of the assignment of the AIG Settlement Payments as provided in the Assignment), for any reason whatsoever, including but not limited to statute, the rejection of the Settlement Agreement in any bankruptcy, insolvency or similar proceeding; other judicial action, or otherwise, or (B) any order, decree, decision, judgment, or statute rendering or deeming the Settlement Agreement or the Assignment Agreement void or unenforceable in whole or in part (including, but not limited to, in respect of the assignment of the AIG Settlement Payments as provided in the Assignment), for any reason whatsoever;

(iii)   (A) any order, decree, decision, judgment or legislation requiring the AIG Companies to make payment of any AIG Settlement Payments to a party other than the Purchaser, or having such effect, or the establishment of a trust for the benefit of a party other than the Purchaser in connection with any portion of the AIG Settlement Payments, even if the result would be double or multiple payments by the AIG Companies of the amount of any portion of the AIG Settlement Payments; or (B) the filing by a party other than the Purchaser in any court or tribunal of a claim to any right, title or interest in any AIG Settlement Payments, or the filing by the AIG Companies of an interpleader or similar action seeking avoidance of double or multiple payments of any AIG Settlement Payments;

(iv)   any claim of any AIG Company or any other Person against any Seller or the Purchaser, any liability of any Seller or the Purchaser to any AIG Company any misrepresentation with respect to the Settlement Agreement or breach by any Seller of any provision of the Settlement Agreement, any limitation of the liability or obligations of any Seller under the Settlement Agreement or any other agreement or instrument, any non-payment of any premium by any Seller or the Purchaser, or the defense of fraud in the inducement, performance or fact in connection with the Settlement Agreement, the AIG Policies or any circumstances related thereto;

(v)   any right of set-off, deduction, diminution, abatement, recoupment, suspension, deferment and/or counterclaim (including, without limitation, any such right

-2-

NCLIB1 240017.3

3 GRANITE008687

acquired by assignment or otherwise, and any such right acquired as a result of the termination or buyback of any of the AIG Policies) that any AIG Company or any of its affiliates may have against any Seller or the Purchaser or that may be available to an AIG Company so as to entitle the AIG Company to deny payment of any amount due to be paid hereunder or so as to entitle an AIG Company to limit, reduce or extinguish any of its liability hereunder;

(vi)    (A) the genuineness, legality, validity or the enforceability of each Seller's obligations under the Settlement Agreement, (B) the legality, validity or enforceability by the Purchaser of the Assignment Agreement or the Assignment of AIG Settlement Payments, or (C) the breach of any implied or express warranty by any Seller or the Purchaser;

(vii)    any and all defenses to payment and right of set off under, arising from or in connection with the Assignment Agreement and this Consent and Agreement, including but not limited to fraud, fraud in the inducement, performance or fact, or the failure of the Purchaser or any Seller to perform any covenant, condition or obligation under any Transaction Document to which it is a party (other than failure by the Purchaser to pay the Payment Amount to the Sellers on the Effective Date);

(viii)    any and all defenses to payment and right of set off of counterclaims under the AIG Policies or the Settlement Agreement for any reason whatsoever, including but not limited to (a) the failure to collect or recover from a reinsurer or defenses to coverage that may be asserted by a reinsurer; (b) any exclusion or defense to coverage that may be available under the AIG Policies; and (c) any defense to payment or right to set off which is in any way based on the grounds of non-disclosure or misrepresentation to an AIG Company;

(ix)    any and all defenses to payment and right of set off of counterclaims based on the unsatisfactory nature of the due diligence investigations, if any, carried out by the AIG Companies or the Purchaser, or on the breach of any duty of disclosure to any AIG Company (including without limitation any duty claimed to arise from the doctrine of "utmost good faith" or any similar or related doctrine);

(x)    any and all defenses to payment and right of set off of counterclaims based on the assertion that an AIG Company relied upon information, statements, data or any other material provided by or on behalf of any Seller or the Purchaser, or on an assertion that an AIG Company did not make its own independent decision to execute, deliver and be bound based upon its own judgment, or on an assertion that any Seller or the Purchaser was acting as a fiduciary or an advisor to an AIG Company; and

(xi)    any other circumstance, occurrence, happening or event whatsoever, whether similar or dissimilar to the foregoing, whether foreseen or unforeseen (including, without limitation, any statute of limitations), or omission that might otherwise constitute a legal or equitable discharge or defense of an insurer, surety or guarantor.

-3-

NCLIB1 240017.3

3 GRANITE008688

The AIG Companies agree and acknowledge that the foregoing clarification of the defenses they have waived in connection with this Agreement (the "Waiver of Defenses") was specifically drafted and agreed for the purposes of this Agreement, that the Waiver of Defenses shall not be deemed or considered standard form or "boilerplate" even if it is similar to or resembles waivers of defenses in other contracts, that the Waiver of Defenses was reviewed and evaluated by counsel to the AIG Companies prior to the execution of this Agreement, and that principles of construction and interpretation that would void any term of the Waiver of Defenses, deem any term of the Waiver of Defenses unenforceable, or construe any term of the Waiver of Defenses in favor of one party over the other, shall not apply to the interpretation or application of the Waiver of Defenses. The AIG Company understand, accept and acknowledge that they have waived fraud-related defenses.

Each of the AIG Companies covenants and agrees that it shall not consent to, and shall oppose, the entry of any order, decree, judgment or injunction, and shall oppose the adoption of any legislation, that would require the AIG Companies to make payment of any AIG Settlement Payment to a party other than the Purchaser or that would prohibit, divert, channel or otherwise limit or restrict payment to the Purchaser of any AIG Settlement Payment, or which would have any such effect.

All payments made by an AIG Company pursuant hereto shall be made no later than the date when due, in U.S. dollars, in the full amount of the applicable AIG Settlement Payment, without any set-off, counterclaim or any other deduction whatsoever, pursuant to the following payment instructions:

> U.S. Bank National Association, Minneapolis, MN
> ABA#: 091-000-022
> FBO:  U.S. Bank Trust NA
> A/C:  1801-2116-7365
> Attn:  Jill Ling 651-495-3712
> Ref:  HDK Purchaser Trust A/C 784943000

Any payment in respect of the AIG Settlement Payments that is not paid when due shall bear interest at a rate per annum equal to the greater of (i) the Prime Rate, and (ii) 8.1%, and in each case shall be payable on demand. Further, in the event the AIG Companies fail to pay any AIG Settlement Payment within 15 days following the date when due, all other AIG Settlement Payments shall become immediately due and payable on demand.

Each AIG Company hereby covenants and agrees that it shall not, prior to the date which is one year and one day after the payment of the final payment of AIG Settlement Payments, acquiesce, petition or otherwise invoke or cause the Purchaser to invoke the process of any court or government authority for the purpose of commencing or sustaining a case against the Purchaser under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Purchaser or any substantial part of its property, or making a general assignment for the benefit of creditors, or ordering the winding up or liquidation of the affairs of the Purchaser.

NCLIB1 240017.3

3 GRANITE008689

Each AIG Company hereby covenants and agrees that it shall not, prior to the date which is one year and one day after the final payment of AIG Settlement Payments, institute against, or join or assist any other Person in instituting against, the Purchaser any suit, litigation, or other proceeding, other than in connection with satisfying its indemnification obligations to the Purchaser. The provisions of this paragraph shall survive termination of this Agreement.

Each AIG Company hereby represents and warrants that, as of the Assignment Agreement Effective Date, (i) the Sellers have fulfilled all of the conditions and prerequisites, and have taken all necessary steps, under the AIG Policies to trigger, perfect and effectuate the AIG Companies' payment obligations under the Settlement Agreement in connection with the AIG Settlement Payments, (ii) all rights and obligations between the Sellers and the AIG Companies under the AIG Policies have been released and terminated (other than the rights transferred to the Purchaser pursuant to the Assignment Agreement and the other Transaction Documents), and no Seller has any right or interest therein or thereunder, and (iii) the AIG Companies have made no payment constituting an AIG Settlement Payment to a Seller or any other person or entity (other than any such payment made to the Purchaser).

The AIG Companies jointly and severally, (a) indemnify the Purchaser and hold it harmless against any and all losses, claims, damages or liabilities to which the Purchaser may become subject arising in any manner out of or in connection with this Consent and Agreement or the other Transaction Documents or arising in any manner out of or in connection with the events and circumstances that gave rise to the transactions contemplated by the Transaction Documents (including, without limitation, any dispute in respect of asbestos-related bodily injury claims that are, or are purported to be, the subject of insurance policies provided by the AIG Companies), except to the extent it is finally judicially determined that such losses, claims, damages or liabilities resulted from the gross negligence or willful misconduct of the Purchaser or the material breach by the Purchaser of its obligations hereunder; and (b) agree to reimburse the Purchaser promptly upon request for any legal or other expenses reasonably incurred by it in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuits, investigations, claims or other proceedings with respect to which the AIG Companies are indemnifying the Purchaser hereunder.

The Purchaser agrees that any request for reimbursement shall contain reasonable detail for the AIG Companies to verify the propriety of such request.

The AIG Companies agree that the indemnification and reimbursement commitments set forth above shall apply whether or not the Purchaser is a formal party to any such lawsuits, claims or other proceedings and that such commitments shall extend upon the terms set forth in this paragraph to any controlling person, affiliate, director, officer, employee or agent of the Purchaser (each, an "Indemnified Person"). If indemnification is to be sought hereunder by an Indemnified Person, then as soon as practicable such Indemnified Person shall notify the AIG Companies of the commencement of any action or proceeding with respect thereto; provided, however, that the failure to so notify any AIG Company shall not relieve any AIG Company from any liability that it may have to such Indemnified Person pursuant to this Consent and Agreement, except to the extent that an AIG Company has been prejudiced in any

-5-

NCLIB1 240017.3

3 GRANITE008690

material respect by such failure, or from any liability it may have to such Indemnified Person other than pursuant to this Consent and Agreement.

Any of the AIG Companies (each, an "Indemnitor") shall have the right to assume the defense (at the relevant Indemnitors' expense) of any such claim for which such Indemnitors have indemnification responsibility pursuant to this Consent and Agreement through counsel of such Indemnitors' own choosing by so notifying the Indemnified Person or Indemnified Persons within thirty (30) days of the first receipt by the applicable Indemnitors of the notice referenced above from the such Indemnified Persons. If under applicable standards of professional conduct, a conflict with respect to any significant issue between any Indemnified Person and the applicable Indemnitors would reasonably be expected to exist in respect of such claim, such Indemnitors shall pay the reasonable fees and expenses of such additional counsel as may be required to be retained in order to resolve such conflict. The applicable Indemnitors shall be liable for the reasonable fees and expenses of counsel employed by any Indemnified Person for any period during which none of such Indemnitors has assumed the defense of any such claim (other than during any period in which all Indemnified Persons will have failed to give notice of the claim as provided above). If the Indemnitors assume such defense, the Indemnified Persons shall have the right to participate in the defense thereof and to employ counsel, at its own expense, separate from the counsel employed by the Indemnitors. If the Indemnitors choose to defend or prosecute any such claim, the Indemnified Persons shall agree to any settlement, compromise or discharge of such claim that the Indemnitors may recommend and that, by its terms, discharges the Indemnified Persons from the full amount of liability in connection with such claim; provided, however, that, without the consent of the Purchaser, the Indemnitors shall not consent to, and the Indemnified Persons shall not be required to agree to, the entry of any judgment or enter into any settlement that (i) provides for injunctive or other non-monetary relief affecting the Purchaser or any Indemnified Person or (ii) does not include as an unconditional term thereof the giving of a release from all liability with respect to such claim by each claimant or plaintiff to each Indemnified Person that is the subject of such claim. In no event shall an AIG Company enter into a settlement that affects, or purports to affect, the payment by the AIG Companies of the AIG Settlement Payments to the Purchaser, and any such settlement or purported settlement shall be void *ab initio*.

The parties hereto confirm that any dispute that arises relating to this Consent and Agreement shall not be subject to arbitration.

EACH PARTY IRREVOCABLY CONSENTS TO PERSONAL AND SUBJECT MATTER JURISDICTION IN THE STATE AND/OR FEDERAL COURTS OF NEW YORK, IN THE UNITED STATES OF AMERICA, FOR RESOLUTION OF ANY ISSUE THAT ARISES BETWEEN THEM IN CONNECTION WITH THIS AGREEMENT, AND SERVICE OF PROCESS MAY BE MADE UPON ANY PARTY BY MAILING AND/OR FAXING TO THE OTHER PARTIES A COPY OF THE APPLICABLE DOCUMENTATION.

THIS CONSENT AND AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

NCLIB1 240017.3

3 GRANITE008691

The terms of this Consent and Agreement shall be binding upon and inure to the benefit of the AIG Companies and the Purchaser, and their respective successors, nominees, and assigns; provided, that the AIG Companies shall not assign their obligations hereunder without the prior written consent of the Purchaser, and any purported such assignment shall be void *ab initio*.

Upon request of the Purchaser at any time and from time to time, the AIG Companies shall, at the expense of the AIG Companies, duly execute and deliver, or cause to be duly executed and delivered, such further agreements, documents and instruments, and do or cause to be done such further acts as may be necessary or, in the sole discretion of the Purchaser exercised in good faith, advisable to effectuate the provisions or purposes of this Consent and Agreement and the other Transaction Documents.

AIGTSI represents and warrants that it has the power and authority, and has been authorized, to enter into this Consent and Agreement on behalf of the AIG Companies, and that upon execution and deliver of this Consent and Agreement by AIGTSI, this Consent and Agreement shall constitute a legal, valid and binding obligation of the AIG Companies, enforceable against the AIG Companies in accordance with its terms.

[SIGNATURES FOLLOW]

NCLIB1 240017.3

-7-

3 GRANITE008692

EXECUTION COPY

IN WITNESS WHEREOF, the parties hereto have caused this Consent and Agreement to be executed as of the date first above written by their respective duly authorized officers.

> **AIG TECHNICAL SERVICES, INC.,** as authorized agent for AIU Insurance Company, American Home Assurance Company, Birmingham Fire Insurance Company, Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, New Hampshire Insurance Company, and L'Union Atlantique D'Assurances S.A., and their respective predecessors, successors and assigns

By: _____
      Name:
      Title:

Accepted:

**HDK PURCHASER TRUST**

By: U.S. BANK NATIONAL ASSOCIATION,
    as the Purchaser Trustee

  By: _____
      Name:
      Title:

NCLIB1 240017.3

3 GRANITE008693

EXECUTION COPY

IN WITNESS WHEREOF, the parties hereto have caused this Consent and Agreement to be executed as of the date first above written by their respective duly authorized officers.

AIG TECHNICAL SERVICES, INC., as authorized agent for AIU Insurance Company, American Home Assurance Company, Birmingham Fire Insurance Company, Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, New Hampshire Insurance Company, and L'Union Atlantique D'Assurances S.A., and their respective predecessors, successors and assigns

By: _____
Name:   Christopher J. Eskeland
Title: Asst. Vice President

Accepted:

HDK PURCHASER TRUST

By: U.S. BANK NATIONAL ASSOCIATION,
    as the Purchaser Trustee

        By: _____
            Name:
            Title:

NCLIBI 240017.4

3 GRANITE008694

## Halliburton Final Stream

| Date | Payment |
|------|---------|
| 03/31/05 | $2,731,280.00 |
| 06/30/05 | $2,731,280.00 |
| 09/30/05 | $2,731,280.00 |
| 12/31/05 | $2,731,280.00 |
| 03/31/06 | $2,731,280.00 |
| 06/30/06 | $2,731,280.00 |
| 09/30/06 | $2,731,280.00 |
| 12/31/06 | $2,731,280.00 |
| 03/31/07 | $2,731,280.00 |
| 06/30/07 | $2,731,280.00 |
| 09/30/07 | $2,731,280.00 |
| 12/31/07 | $2,731,280.00 |
| 03/31/08 | $2,731,280.00 |
| 06/30/08 | $2,731,280.00 |
| 09/30/08 | $2,731,280.00 |
| 12/31/08 | $2,731,280.00 |
| 03/31/09 | $9,104,266.00 |
| 06/30/09 | $9,104,266.00 |
| 09/30/09 | $9,104,266.00 |
| 12/31/09 | $9,104,266.00 |
| 03/31/10 | $9,104,266.00 |
| 06/30/10 | $9,104,266.00 |
| 09/30/10 | $9,104,266.00 |
| 12/31/10 | $9,104,266.00 |
| 03/31/11 | $9,104,266.00 |
| 06/30/11 | $9,104,266.00 |
| 09/30/11 | $9,104,266.00 |
| 12/31/11 | $9,104,266.00 |
| 03/31/12 | $9,104,266.00 |
| 06/30/12 | $9,104,266.00 |
| 09/30/12 | $9,104,266.00 |
| 12/31/12 | $9,104,266.00 |
| 03/31/13 | $9,104,266.00 |
| 06/30/13 | $9,104,266.00 |
| 09/30/13 | $9,104,266.00 |
| 12/31/13 | $9,104,266.00 |
| 03/31/14 | $9,104,266.00 |
| 06/30/14 | $9,104,266.00 |
| 09/30/14 | $9,104,266.00 |
| 12/31/14 | $9,104,266.00 |
| Total | $262,202,864.00 |

3 GRANITE008695