# EXHIBIT 52

To    : "Claims Email - ImageRight" <claims-emails-prod@odysseyre.com>
From  : "Tavernese, Julie (Stamford)" <JTavernese@OdysseyRe.com>
      :
.C    :
Date  : Tue, 28 Apr 2009 14:31:29 -0400
Subject: FW: Asbestos/ $1.6M bill/McGraw Edison - Cl # 170-053344 / 170-053345/ 170-053346 /170057620 - Grand Total Due $ 1,600,661.34

-----Original Message-----
From: DePasquale, Kate (Stamford)
Sent: Tuesday, April 28, 2009 2:30 PM
To: Tavernese, Julie (Stamford)
Subject: FW: Asbestos/ $1.6M bill/McGraw Edison - Cl # 170-053344 / 170-053345/ 170-053346 /170057620 - Grand Total Due $ 1,600,661.34
Importance: High

FYI
-----Original Message-----
From: Somma, Michael (Stamford)
Sent: Tuesday, April 28, 2009 1:50 PM
To: DePasquale, Kate (Stamford)
Subject: Asbestos/ $1.6M bill/McGraw Edison - Cl # 170-053344 / 1   053345/ 170-053346 /170057620 - Grand Total Due $ 1,600,661.34
    rtance: High

-----Original Message-----
From: Wakeman, MaryEllen [mailto:MaryEllen.Wakeman@aiuholdings.com]
Sent: Thursday, April 23, 2009 2:53 PM
To: Somma, Michael (Stamford)
Subject: Insured: McGraw Edison - Cl # 170-053344 / 170-053345/ 170-053346 /170057620 - Grand Total Due $ 1,600,661.34

Mr. Somma,

Please see the attached bills and supporting documentation on the above claim. If you do not handle this claim, please forward it on with the attached bill/reports to the correct person and cc: me.  Thank you!

Please review and advise payment status

Regards,

MaryEllen Wakeman
Facultative Reinsurance Collections
Commercial Insurance, a Division of AIU Holdings
    Executive Park Drive
Bedford, H.N. 03110
Ph # 603 645-7336

Fax # 866-685-3631

CW 01019

APR-23-2009 13:52  FROM:                                          TO:918666853631        P:1/4

01/22/2008                                                                      Page 1 of 1

## Reinsurance
## FAC Proof of Loss

To :   ODOSSEY RE                          From: National Union Fire Ins Co, PA
       300 FIRST STAMFORD PLACE                  P.O. Box 3324
       STAMFORD CT  06902  UNITED STATES         Manchunster NH  03105-102 UNITED STATES
       MICHAEL D. SCOTIA .                       Facultative Collections 603 645-7331

### Claim Information

| | | | |
|---|---|---|---|
| Claim: | 170 - 053344 | Date of Loss: | 03/01/1980 |
| Named Insured: | MCGRAW EDISON | Claim Status: | O |
| Claim State: | NEW JERSEY | Producing Branch: | 3 |
| Handling Office: | 170-ASBESTOS MAINST | PUC: | 3868 |
| Policy #: | 66801963 | Div: | 043 C.V. STARR RUNOFF |
| Policy Limit: | 0.00 | SIR/DED: | 0.00 |
| Policy Period: | 03/01/1980 - 03/01/1981 | Catastrophe Number: | |
| Claim Made Date: | 02/11/2008 | FAC Cert. Period: | |
| Accident Description: | B1 | | |

### Reinsurance Information

| | | | |
|---|---|---|---|
| Reinsurance Cert. No.: | C 26285 | RICO Number: | 003728 |
| | | Intermediary: | 000000 |
| Rein. % of Pol. Lyr: | 20% | Manual Proof: | N |
| Limit: | 2,500,000.00 | Retention: | 0.00 |

### Financial Information: Current Financials: AIG Co.

| | Indemnity | Legal Expense | Adjusting Expense | Total |
|---|---|---|---|---|
| Gross Reserves | 3,545,455.00 | 0.00 | 0.00 | 3,545,455.00 |
| RICO Reserves | | | | 209,091.00 |

| | Indemnity | Legal Expense | Adjusting Expense | Recovery | Total |
|---|---|---|---|---|---|
| Gross Paids | 1,454,545.00 | 0.00 | 1,240.00 | 0.00 | 1,455,785.00 |
| Retention | 0.00 | | | | 0.00 |
| RICO Share | 290,909.00 | 0.00 | 248.00 | 0.00 | 291,157.00 |
| Prior Statement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

### Amount Due

| Indemnity | Legal Expense | Adjusting Expense | Recovery | Total |
|---|---|---|---|---|
| 290,909.00 | 0.00 | 248.00 | 0.00 | 291,157.00 |

This Statement Amount:              291,157.00
Loan Depleted from Funds Held:        0.00
Amount Due This Statement:          291,157.00

Check Amount Due To:   National Union Fire Ins Co, PA        Wire To Address:   National Union Fire Ins Co, PA
                       P.O. Box 35010                        Bank Name:         JP Morgan Chase Bank, NA
                       Newark NJ  07193 - 5010 UNITED STATES                    New York NY  10041
                                                             ABA #:             021-000-021
                                                             Account #:         323-160387

Invoice Number:        0

### Billing Information: Current Statement

| # | | Current Paid | Current O/S |
|---|---|---|---|
| 1 | Claimant Name: AGG TOX ASBESTOS<br>MJC Description: LIABILITY (O/T AUTO) B.I.<br>AJA Injury Description: B1 | 1,454,545.00 | 3,545,455.00 |
| | Total: | 1,454,545.00 | 3,545,455.00 |

CW 01020

SETTLEMENT AGREEMENT AND RELEASE AMONG

THE FEDERAL-MOGUL U.S. ASBESTOS PERSONAL INJURY TRUST,

REORGANIZED FEDERAL-MOGUL PRODUCTS, INC.,

COOPER INDUSTRIES, LLC, AIU INSURANCE COMPANY,

AMERICAN HOME ASSURANCE COMPANY,

AIG CASUALTY COMPANY
(f/k/a BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA),

GRANITE STATE INSURANCE COMPANY,

INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

LEXINGTON INSURANCE COMPANY,

AIG EUROPE S.A (solely as successor in interest to
L'UNION ATLANTIQUE S.A. D'ASSURANCES),

AND

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

CW 01021

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made by, between and among The Federal-Mogul U.S. Asbestos Personal Injury Trust (the "Trust," as further defined herein), Reorganized Federal-Mogul Products, Inc. ("Reorganized FMP," as further defined herein), Cooper Industries, LLC ("Cooper LLC"), AIU Insurance Company, American Home Assurance Company, AIG Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania), Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Lexington Insurance Company, AIG Europe S.A. (solely as successor in interest to L'Union Atlantique S.A. D'Assurances), and National Union Fire Insurance Company of Pittsburgh, PA (collectively, "the AIG Companies," as further defined herein). The Trust, Reorganized FMP, Cooper LLC, and the AIG Companies are each referred to herein as a "Party" and collectively as the "Parties."

### WITNESSETH THAT:

WHEREAS, the AIG Companies issued certain liability insurance policies to Studebaker-Worthington, Inc. ("Studebaker") and/or McGraw-Edison Company ("McGraw"), each an alleged former parent of Wagner Electric Corporation ("Wagner"), which policies are listed on Attachment A hereto (the "Subject Policies"); and

WHEREAS, numerous "Asbestos Claims" (as defined herein) may be asserted against the Trust pursuant to the "Fourth Amended Plan" (as defined herein), the "Confirmation Order" (as defined herein), the Federal-Mogul U.S. Asbestos Personal

2

CW 01022

Injury Trust Agreement, and the Federal-Mogul U.S. Asbestos Personal Injury Trust Distribution Procedures; and

WHEREAS, Cooper LLC also asserts rights in the Subject Policies as an alleged successor to Studebaker and McGraw; and

WHEREAS, on or about October 1, 2001, the "F-M Debtors" (as defined herein) commenced the Reorganization Cases; and

WHEREAS, on or about November 5, 2007, the F-M Debtors filed their Fourth Amended Joint Plan of Reorganization (as Modified) (the "Fourth Amended Plan") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, on or about November 8, 2007, the Bankruptcy Court entered an order confirming the Fourth Amended Plan, and on or about November 14, 2007 the United States District Court for the District of Delaware (the "District Court") affirmed the Bankruptcy Court's order confirming the Fourth Amended Plan;

WHEREAS, on or about December 27, 2007, the Plan Effective Date occurred;

WHEREAS, pursuant to the Fourth Amended Plan, the Trust was established and received, among other things, certain of Federal-Mogul Products, Inc.'s rights to the proceeds of the Subject Policies; and

WHEREAS, the Parties anticipate that numerous Asbestos Claims will be asserted against the Trust; and

WHEREAS, there are disputes among the Parties regarding their respective rights and obligations with respect to insurance coverage for Asbestos Claims under the Subject Policies (the "Coverage Dispute"); and

3

CW 01023

WHEREAS, Federal-Mogul Products, Inc. and the AIG Companies were parties to an adversary proceeding styled *DII Industries LLC (formerly Dresser Industries, Inc.) v. Federal-Mogul Products, Inc., et al.*, Adversary Proceeding No. 01-09018 that was pending in the District Court (the "Adversary Proceeding") until March 28, 2007, when United States District Judge Joseph H. Rodriguez entered an "Order Granting Certain Defendant Insurance Companies' Joint Motion to Abstain From Hearing Adversary Proceeding"; and

WHEREAS, in the Adversary Proceeding, Federal-Mogul Products, Inc. sought declaratory relief, actual compensatory and consequential damages, plus interest thereon, among other relief, and the AIG Companies denied that they owed any damages or relief as alleged and have defended against Federal-Mogul Products, Inc.'s claims in the Adversary Proceeding; and

WHEREAS, on September 19, 2006, Federal-Mogul Products, Inc. initiated an action against certain insurance companies, including certain of the AIG Companies, in the Superior Court of New Jersey styled *Federal-Mogul Products, Inc. v. Ace Property & Casualty Ins. Co., et al.*, Docket No. L-002535-06 (Morris County) (the "New Jersey Coverage Action"); and

WHEREAS, on or about May 8, 2007, certain insurers, initiated an action against Federal-Mogul Corporation and Federal-Mogul Products, Inc., as well as other parties (including the AIG Companies), in the Supreme Court of the State of New York, New York County, styled *Ace Property and Casualty Insurance Company, et al. v. Federal-Mogul Corporation, et al.*, Index No. 07-601535 (the "New York Coverage Action"); and

WHEREAS, in consideration of certain monetary payments and other considerations, and subject to the terms of this Agreement, the Parties wish to enter into

4

CW 01024

this Agreement, as set forth below, to settle and resolve the Coverage Dispute as between them, to provide for mutual releases as detailed in Section 3 below, to provide for dismissals with prejudice of the New Jersey Coverage Action and the New York Coverage Action as between them, to provide for a permanent withdrawal of the AIG Companies' claims, objections and appeals, if any, as provided in Section 6.D below, to limit the AIG Companies' future actions in certain respects, as more fully set forth herein, and to resolve certain other matters, all as set forth below.

## AGREEMENTS:

NOW, THEREFORE, in full consideration of the foregoing and of the mutual agreements contained herein, and intending to be legally bound hereby, the Parties agree as follows:

1.  **Definitions**

For purposes of this Agreement and Attachment A hereto, the following definitions apply to the capitalized terms herein wherever those terms appear in this Agreement, including the prefatory paragraph, the recitals, the sections below and Attachment A hereto. Capitalized terms in the prefatory paragraph, the recitals, the sections below and Attachment A hereto have the meanings ascribed to them therein to the extent they are not otherwise defined in this Definitions section. Capitalized terms that are not defined in this Agreement are given the meanings designated in the Fourth Amended Plan, as constituted on the "Execution Date" (as defined herein). Moreover, each defined term stated in the singular shall include the plural and each defined term stated in the plural shall include the singular, and each defined term stated in the

5

CW 01025

masculine form or in the feminine form or in the neuter form shall include all others. The word "including" means "including, but not limited to."

A.   Agreement: The term "Agreement" means this Settlement Agreement and Release, as the same may be amended from time to time in writing in accordance with the provisions thereof.

B.   AIG Companies: The term "AIG Companies" means AIU Insurance Company, American Home Assurance Company, AIG Casualty Company (f/k/a ~~Birmingham Fire Insurance Company of Pennsylvania),~~ Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Lexington Insurance Company, AIG Europe S.A. (solely as successor in interest to L'Union Atlantique S.A. D'Assurances), and National Union Fire Insurance Company of Pittsburgh, PA, together with their respective (1) corporate predecessors; (2) current corporate parents, subsidiaries and the successors of such parents, subsidiaries and affiliates; and (3) as to the Entities identified in subsections 1.B(1) and (2) above, their respective current, former and future directors, members, officers, owners, shareholders, employees, agents, partners, representatives, adjusters, joint venturers, assigns, and attorneys (solely in their capacity as counsel for AIU Insurance Company, American Home Assurance Company, AIG Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania), Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Lexington Insurance Company, AIG Europe S.A. (solely as successor in interest to L'Union Atlantique S.A. D'Assurances), and National Union Fire Insurance Company of Pittsburgh, PA), and as to all of the foregoing in this Section 1.B, solely in their respective capacities as such as to this subsection 1.B(3).

6

CW 01026

C.   Asbestos Claims:  The term "Asbestos Claims" means the following:  (1) any and all past, present and future Claims, demands, actions, suits, proceedings, notices of partial or total responsibility, whether presently known or unknown, that seek compensatory, punitive or statutory damages, declaratory judgment, injunctive relief, medical monitoring, or any other form of relief whatsoever, on account of alleged bodily injury, personal injury, fear of future injury, medical monitoring, mental injury or anguish, emotional distress, shock, sickness, disease, loss of consortium, or any other illness or condition, death, property damage, loss of use of property, or diminution in the value of property, abatement or removal of asbestos or asbestos-containing products, arising from alleged, potential or actual exposure (or presence) of any type or nature whatsoever to asbestos, an asbestos-containing product, and/or any other substance, product, matter or material in any form or state that contains or is alleged to contain asbestos, either alone or in combination with any other substance; (2) Claims or suits alleging in whole or in part exposure to asbestos and/or asbestos containing products in addition to any other substance, chemical, pollutant, waste, or material of any nature; (3) Claims that involve, in whole or in part, alleged exposure to asbestos or asbestos containing products relating to or arising out of or from the packaging, handling, repairing, designing, use, marketing, installation, removal, manufacture, distribution, sale, re-sale, existence or presence (whether on premises owned or controlled by F-M Debtors or otherwise) of asbestos or an asbestos-containing product, either alone or in combination with any other substance; and (4) Asbestos Personal Injury Claims and Asbestos Property Damage Claims.

D.   Asbestos Products Claims:  The term "Asbestos Products Claims" means those Asbestos Claims that fall within the scope of the terms "products hazard,"

7

CW 01027

"completed operations hazard," or "products liability," or their equivalents, contained or incorporated in the Subject Policies.

E.    Business Day:  The term "Business Day" means any day that is not a Saturday, a Sunday or a federal holiday in the United States of America.

F.    Claim:  The term "Claim" means any of the following:  (1) "Claim" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. § 101(5), and specifically includes, without express or implied limitation, any rights under sections 502(g) or 502(h) of the Bankruptcy Code; (2) "Demand" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. § 524(g)(5); (3) any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim or (4) any claim, whether past, present or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, or direct or indirect, and whether in law, equity, admiralty or otherwise, including, without limitation, an Asbestos Claim. The term "Claim" further includes, without limitation, any claim (a) arising out of, related to, or in any manner involving asbestos or any other substance, product, matter or material in any form or state, any cumulative or other injury or damage, any activity, operation, premises, or exposure or any alleged bad faith, unfair claim practices, unfair trade practices, deceptive trade practices, insurance code violations, fraud, misrepresentation, alleged undertaking, duty or obligation, non-disclosure, breach of fiduciary duty, conspiracy, or extra-contractual or tort liability; (b) for any form of damages, punitive damages, indemnity or defense obligations, insurance premiums (whether retrospectively rated or otherwise), deductibles, self-insured retentions, costs, expenses, contribution or subrogation; and (c) pursuant to or under a contract, other

8

CW 01028

agreement, promise, representation or warranty; or (d) any direct action or statutory or regulatory right of action, assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ, demand, inquiry, request, suit, lawsuit, liability, action, cause of action, administrative proceeding, governmental action, order, judgment, settlement, lien, loss, cost or expense.

G. <u>Confirmation Order</u>: The term "Confirmation Order" means the Order entered by the Bankruptcy Court on November 8, 2007 confirming the Fourth Amended Plan to the extent necessary for the Fourth Amended Plan to become effective.

H. <u>Cooper</u>: The term "Cooper" means (1) Cooper LLC; (2) each of Cooper LLC's parents, members, subsidiaries, divisions, holding companies, merged companies, acquired companies, partners, representatives and joint venturers, predecessors-in-interest, successors-in-interest and assigns, solely in their respective capacities as such; (3) each of the directors, members, owners, officers, shareholders, agents and employees of any of the foregoing, solely in their respective capacities as such; and (4) each of Cooper's attorneys and agents, solely in their respective capacities as such; *provided, however*, that, for purposes of and when used in subsection 3.C.1 only, as to each of the foregoing identified in subsections 1.H(2) through 1.H(4), only to the extent that Cooper LLC has the power and authority to grant the releases set forth in subsection 3.C.1 on their behalf.

I. <u>Court</u>: The term "Court" means, the Bankruptcy Court, the District Court supervising the Reorganization Cases, the Third Circuit Court of Appeals or the United States Supreme Court, as applicable.

CW 01029

J.    **Execution Date**:  The term "Execution Date" means the earliest date upon which all of the Parties (or their authorized representatives) have executed this Agreement.

K.    **Final Order**:  The term "Final Order" means an order as to which the time to appeal, petition for certiorari, or move for reargument, rehearing or reconsideration has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing, or reconsideration shall then be pending or as to which any right to appeal, petition for certiorari, reargue, rehear or reconsider shall have been waived in writing by all Entities possessing such rights, or, in the event that an appeal, writ of certiorari, or reargument, rehearing or reconsideration thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which certiorari has been denied or reargument, rehearing or reconsideration was sought and denied, and the time to take any further appeal, petition for certiorari, or move for further reargument, rehearing or reconsideration shall have expired.

L.    **F-M Debtors**:  The term "F-M Debtors" means the Debtors and Debtors-In-Possession as defined in the Fourth Amended Plan.

M.    **Fourth Payment Date**:  The term "Fourth Payment Date" means the date three years (1,095 days) following the Initial Payment Date.  Should the Fourth Payment Date fall on a day other than a Business Day, then the Fourth Payment Date shall be the next Business Day.

N.    **Initial Payment Date**:  The term "Initial Payment Date" means the date fifteen Business Days following the date on which the Trust provides written notice to

10

CW 01030

the AIG Companies that the Trigger Date has occurred, such written notice to be provided in accordance with Section 17 hereof.

O.     Injunction Date:  The term "Injunction Date" means the date on which the Injunction Order becomes a Final Order.

P.     Injunction Order:   The term "Injunction Order" means an order of the District Court providing that the AIG Companies are entitled to all of the rights and protections afforded to a Protected Party under the Plan, including the protection of an injunction under Section 524(g) of the Bankruptcy Code, which order shall be in a form and substance acceptable to the Trust, Cooper LLC, and the AIG Companies.

Q.     Liquidated Wagner Asbestos Claim:     The term "Liquidated Wagner Asbestos Claim" means a Wagner Asbestos Claim that has been (1) liquidated and allowed in an amount determined pursuant to the provisions of the Plan and the Federal-Mogul U.S. Asbestos Personal Injury Trust Distribution Procedures, as may be amended from time to time pursuant to its terms; and (2) qualified for payment under the terms of the Federal-Mogul U.S. Asbestos Personal Injury Trust Distribution Procedures, as may be amended from time to time pursuant to its terms.

R.     Person:  The term "Person" shall mean an individual, a corporation, a partnership, a joint venture, an association, a trust, any other Entity or organization, and any federal, state or local government or any governmental or quasi-governmental body or political subdivision or any agency, department, board or instrumentality thereof.

S.     Plan:  The term "Plan" means the Fourth Amended Plan and Plan Documents as such may be further modified from time to time in accordance with the terms thereof; *provided, however*, that such modifications:

11

CW 01031

1.      are consistent with the terms of this Agreement;

2.      do not adversely affect the interests of the AIG Companies under this Agreement; and

3.      continue to provide for an injunction that is at least as broad and inclusive as the "Third Party Injunction" (as defined in the Fourth Amended Plan) that applies to Settling Asbestos Insurance Companies.

T.      Products Claim:  The term "Products Claim" means any Claim that falls within the scope of the terms "products hazard," "completed operations hazard," or "products liability," or their equivalents, contained or incorporated in the Subject Policies, including, without limitation, any Asbestos Products Claim.

U.      Released Claims:  The term "Released Claims" means the Claims released in Section 3 of this Agreement.

V.      Reorganized F-M Corp.:  The term "Reorganized F-M Corp." means Federal-Mogul Corporation as it exists following the Effective Date.

W.      Reorganized FMP:  The term "Reorganized FMP" means Federal-Mogul Products, Inc. as it exists following the Effective Date.

X.      Second Payment Date:  The term "Second Payment Date" means the date one year (365 days) following the Initial Payment Date.  Should the Second Payment Date fall on a day other than a Business Day, then the Second Payment Date shall be the next Business Day.

Y.      Settlement Payments:  The term "Settlement Payments" means the payments identified in and required pursuant to Section 2 below.

12

CW 01032

Z.   _Subject Policies_:  The term "Subject Policies" means:  (1) all known and unknown insurance policies issued by the AIG Companies to Studebaker and/or McGraw prior to 1987, including but not limited to the insurance policies at issue in the Adversary Proceeding, the New Jersey Coverage Action; and/or the New York Coverage Action, and/or that are identified in Attachment A hereto; and (2) any and all known and unknown insurance policies issued or allegedly issued by the AIG Companies to Federal-Mogul Products, Inc. prior to 1987; and (3) any and all known and unknown insurance policies issued or allegedly issued by the AIG Companies prior to 1987, which Reorganized FMP or any of the reorganized F-M Debtors, Cooper LLC, or the Trust claims or may claim provide coverage for "Wagner Claims" (as defined herein); _provided_, however, and subject to Section 18.C below, that policies issued to "Cooper Industries, Inc." as the first named insured or a named insured are not "Subject Policies."

AA.   _Third Payment Date_:  The term "Third Payment Date" means the date two years (730 days) following the Initial Payment Date.  Should the Third Payment Date fall on a day other than a Business Day, then the Third Payment Date shall be the next Business Day.

BB.   _Trigger Date_:  The term "Trigger Date" means the day on which written notice is transmitted to the AIG Companies in the manner set forth in Section 17 of this Agreement, stating that all of the following have occurred; _provided_, that all of the following have in fact occurred:

1.   the Injunction Order has become a Final Order; and

13

CW 01033

2.    the Injunction Order provides that, with respect to the Subject Policies, the AIG Companies are entitled to all the rights and protections afforded to a Protected Party under the under the Plan, including the protection of an injunction under Section 524(g) of the Bankruptcy Code.

CC.   <u>Trust</u>:    The term "Trust" means The Federal-Mogul U.S. Asbestos Personal Injury Trust established in accordance with the Fourth Amended Plan, the Confirmation Order, the Federal-Mogul U.S. Asbestos Personal Injury Trust Agreement, and the Federal-Mogul U.S. Asbestos Personal Injury Trust Distribution Procedures.

DD.   <u>Wagner Asbestos Claims</u>: The term "Wagner Asbestos Claims" means any and all Asbestos Claims arising or allegedly arising, directly or indirectly, from acts, omissions, business, or operations of Wagner.

EE.   <u>Wagner Claims</u>: The term "Wagner Claims" means Wagner Asbestos Claims and any and all Products Claims, arising or allegedly arising, directly or indirectly, from acts, omissions, business, or operations of Wagner.

2.    **Payment of the Settlement Amount**

A.    The AIG Companies shall make the following payments to the Trust:

1.    the AIG Companies shall pay the sum of Ten Million Five Hundred Thousand United States Dollars ($10,500,000.00) to the Trust on the Initial Payment Date;

2.    the AIG Companies shall pay an additional Ten Million Five Hundred Thousand United States Dollars ($10,500,000.00) to the Trust on or before the Second Payment Date;

14

CW 01034

3.    the AIG Companies shall pay an additional Ten Million Five Hundred Thousand United States Dollars ($10,500,000.00) to the Trust on or before the Third Payment Date; and

4.    the AIG Companies shall pay an additional Eight Million Five Hundred Thousand United States Dollars ($8,500,000.00) to the Trust on or before the Fourth Payment Date.

5.    <u>Additional Payments</u>

(a)    In addition to the payments set forth in subsections 2.A.1 through 2.A.4 above, in the event that the Trust incurs at least Eight Hundred Million United States Dollars ($800,000,000.00) in Liquidated Wagner Asbestos Claims, then the AIG Companies shall pay an additional Eight Million United States Dollars ($8,000,000.00) to the Trust within thirty (30) days of the date on which the Trust provides a summary of said incurred and liquidated amounts, together with written, certified notice to the AIG Companies stating that the Trust has incurred at least Eight Hundred Million United States Dollars ($800,000,000.00) in Liquidated Wagner Asbestos Claims, but in no event shall this payment become due or be made prior to May 15, 2014.

(b)    In addition to the payments set forth in subsections 2.A.1 through 2.A.5(a) above, in the event that the Trust incurs an additional Fifty Million United States Dollars ($50,000,000.00) or more in Liquidated Wagner Asbestos Claims, such that the value of all such Liquidated Wagner Asbestos Claims, in the aggregate, is at least Eight Hundred Fifty Million United States Dollars ($850,000,000.00), then the AIG Companies shall pay an additional Eight Million United States Dollars ($8,000,000.00) to the Trust within thirty (30) days of the date on

15

CW 01035

which the Trust provides a summary of said incurred and liquidated amounts, together with written, certified notice to the AIG Companies stating that the Trust has incurred an additional Fifty Million United States Dollars ($50,000,000.00) or more in Liquidated Wagner Asbestos Claims and that the value of all such Liquidated Wagner Asbestos Claims, in the aggregate, is at least Eight Hundred Fifty Million United States Dollars ($850,000,000.00); *provided, however,* that in no event shall this payment become due or be made prior to May 15, 2015.

(c)     In addition to the payments set forth in subsections 2.A.1 through 2.A.5(b) above, in the event that the Trust incurs an additional Fifty Million United States Dollars ($50,000,000.00) or more in Liquidated Wagner Asbestos Claims, such that the value of all such Liquidated Wagner Asbestos Claims, in the aggregate, is at least Nine Hundred Million United States Dollars ($900,000,000.00), then the AIG Companies shall pay an additional Eight Million United States Dollars ($8,000,000.00) to the Trust within thirty (30) days of the date on which the Trust provides a summary of said incurred and liquidated amounts, together with written, certified notice to the AIG Companies stating that the Trust has incurred an additional Fifty Million United States Dollars ($50,000,000.00) or more in Liquidated Wagner Asbestos Claims and that the value of all such Liquidated Wagner Asbestos Claims, in the aggregate, is at least Nine Hundred Million United States Dollars ($900,000,000.00); *provided, however,* that in no event shall this payment become due or be made prior to May 15, 2016.

(d)     In addition to the payments set forth in subsections 2.A.1 through 2.A.5(c) above, in the event that the Trust incurs an additional Fifty Million United States Dollars ($50,000,000.00) or more in Liquidated Wagner Asbestos

16

CW 01036

Claims, such that the value of all such Liquidated Wagner Asbestos Claims, in the aggregate, is at least Nine Hundred Fifty Million United States Dollars ($950,000,000.00), then the AIG Companies shall pay an additional Eight Million United States Dollars ($8,000,000.00) to the Trust within thirty (30) days of the date on which the Trust provides a summary of said incurred and liquidated amounts, together with written, certified notice to the AIG Companies stating the Trust has incurred an additional Fifty Million United States Dollars ($50,000,000.00) or more in Liquidated Wagner Asbestos Claims and that the value of all such Liquidated Wagner Asbestos Claims, in the aggregate, is at least at least Nine Hundred Fifty Million United States Dollars ($950,000,000.00), *provided, however,* that in no event shall this payment become due or be made prior to May 15, 2017.

B.    For the avoidance of doubt, the payments set forth in subsections 2.A.2 through 2.A.5 above shall become due only in the event the Trust first provides written notice to the AIG Companies that the Trigger Date has occurred, as contemplated by Section 2.A.1 above, such written notice to be provided in accordance with the provisions of Section 17 below.

C.    None of the Settlement Payments, or any part thereof, shall now or in the future be subject to retrospective premium charges, deductibles, charge backs, self-insured retentions, or any other setoff or adjustment of any type under the Subject Policies. The AIG Companies covenant, with respect to the Subject Policies and the Released Claims, not to sue the Trust, the reorganized F-M Debtors, including without limitation Reorganized FMP, or Cooper for any retrospective premium charges, deductibles, charge backs, self-insured retentions, or any other setoff or adjustment of

17

any type under, arising out of or relating to the Subject Policies, which they may have as a result of this Agreement.

D.   Each of the Parties may allocate the Settlement Payments among the Subject Policies as it sees fit, in its sole discretion, and no Party shall be bound by any other Party's allocation.

E.   Time is of the Essence

Time is of the essence with respect to the payment of the Settlement Payments and the entry of the dismissals identified in Section 4 below.

F.   Finality of Payment

Subject to the terms of Section 2.G below, any and all payments by the AIG Companies are deemed final and irrevocable payments upon the occurrence of the Trigger Date.

G.   Periodic Audits

After reasonable notice to the Trust, the AIG Companies will be entitled to carry out, at their sole expense, an audit of the notifications made by the Trust pursuant to Sections 2.A.5(a) through 2.A.5(d) in connection with Liquidated Wagner Asbestos Claims. The Trust will cooperate in good faith with such audit, which cooperation may include making reasonably available to the AIG Companies files, claim records and pertinent personnel, and receipts, statements of account, or other proof of Liquidated Wagner Asbestos Claims. Any and all audits conducted by or on behalf of the AIG Companies pursuant to this Section 2.G shall be subject to a confidentiality agreement to be negotiated in good faith by the AIG Companies and the Trust prior to the commencement of any such audit.

18

CW 01038

**3.**    **Releases**

A.    Releases By the Trust

1.    Effective on the Trigger Date, the Trust shall be deemed to (and hereby does) remise, release, covenant not to sue and forever discharge the AIG Companies forever from and against any and all past, present, existing, potential or future obligations for any manner of action, causes of action, choses in action, administrative action or proceedings, defense, indemnity, claims of bad faith, arbitrations, mediations, suits, duties, debts, accounts, promises, warranties, damages (consequential, punitive or statutory), claims for extra-contractual damages, injuries, rights, agreements, requests for relief, costs, expenses, penalties, fees, sums of money, losses, liabilities, Claims or Demands of any kind, nature, character or description whatsoever, in law or in equity, whether presently known or unknown, asserted or unasserted, suspected or unsuspected, whether sounding in tort or contract, or arising under the statutes or administrative regulations of any jurisdiction, with respect to any and all past, present or future Claims of any type whatsoever that the Trust ever had, now has, or hereafter may have concerning:

(a)    Asbestos Claims, including Asbestos Products Claims, under, arising out of or relating to the Subject Policies;

(b)    Claims that were or could have been asserted in the Adversary Proceeding, the New Jersey Coverage Action, and/or the New York Coverage Action in connection with Asbestos Claims, including Asbestos Products Claims, under, arising out of or relating to the Subject Policies;

(c)    any violation or alleged violation (whether or not in bad faith) of any statute or regulation, including, without limitation, Unfair Claim Practices

19

CW 01039

Acts or similar statutes of each of the fifty (50) states (where applicable) concerning, relating to and/or arising out of Asbestos Claims, including Asbestos Products Claims, under, arising out of or relating to the Subject Policies;

        (d)     any negligent undertaking or alleged negligent undertaking by or on the part of the AIG Companies concerning, arising out of or relating to Asbestos Claims, including Asbestos Products Claims, under, arising out of or relating to the Subject Policies; or

        (e)     any breach of contract, failure to abide by any duty or obligation, or fraud, misrepresentation, nondisclosure, misconduct or alleged bad-faith committed by the AIG Companies prior to the Execution Date concerning, relating to and/or arising out of Asbestos Claims, including Asbestos Products Claims, under, arising out of or relating to the Subject Policies.

        2.     The occurrence of the Trigger Date shall be deemed by the Parties to terminate any and all obligations whatsoever of the AIG Companies to the Trust for the Released Claims delineated in this Section 3.A with respect to Asbestos Claims, including Asbestos Products Claims, under, arising out of or relating to the Subject Policies.

        3.     In furtherance of its express intent to effect the releases contained in this Section 3.A, the Trust, as of the Trigger Date, expressly waives any and all rights it may have under any contract, statute, code, regulation, ordinance, or common law, that may limit or restrict the effect of a general release of any Claims not known to or suspected to exist in its favor at the time of the execution of this Agreement concerning, relating to and/or arising out of the Released Claims delineated in this Section 3.A. Without limiting the foregoing releases, the Trust acknowledges and agrees that the

CW 01040

AIG Companies shall have no further obligation whatsoever to the Trust to provide coverage, defense, indemnity and/or any further obligation whatsoever relating to, arising out of, and/or in connection with the Released Claims delineated in this Section 3.A. It is expressly agreed and understood that with respect to the Subject Policies, the Trust will not assert any other or further Claims whatsoever against the AIG Companies in connection with any liability that has arisen, or may arise in the future, out of the Released Claims delineated in this Section 3.A.

4.      Notwithstanding anything in this Agreement to the contrary, nothing in this Section 3.A shall be construed as releasing the AIG Companies from their obligations under this Agreement, including, without limitation, the obligation to pay in full the Settlement Payments pursuant to Section 2 above.

5.      THE TRUST ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS ATTORNEYS CONCERNING, AND IS FAMILIAR WITH, CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVES ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.

6.      The Trust expressly assumes the risk that acts, omissions, matters, causes or things may have occurred that it does not know or does not suspect to exist and hereby waives the terms and provisions of any statute, rule or doctrine of

CW 01041

common law that either: (i) narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or (ii) restricts or prohibits the releasing of such claims.

7.      It is the intention of the Trust to reserve no rights or benefits whatsoever in connection with the Released Claims delineated in this Section 3.A and to assure the AIG Companies their peace and freedom from all such Released Claims delineated in this Section 3.A.

8.      Nothing contained in this Section 3 or elsewhere in this Agreement or the Injunction Order shall release, and the Released Claims delineated in this Section 3.A do not include, any rights to coverage of, or any claims for coverage by, the Trust under, arising out of or relating to the limits applicable to non-Asbestos Claims under, arising out of or relating to the Subject Policies. Likewise, it is agreed that the AIG Companies fully reserve their rights to dispute any possible claims to coverage that are not released by this Agreement.

**B.      Releases By Reorganized FMP**

1.      The Parties recognize and acknowledge that, as a result of the confirmation of the Fourth Amended Plan, Reorganized FMP does not have any liability for Asbestos Claims, including, without limitation, Asbestos Products Claims.

2.      Effective on the Trigger Date, Reorganized FMP shall be deemed to (and hereby does) remise, release, covenant not to sue and forever discharge the AIG Companies forever from and against any and all past, present, existing, potential or future obligations for any manner of action, causes of action, choses in action, administrative action or proceedings, defense, indemnity, claims of bad faith,

22

CW 01042

arbitrations, mediations, suits, duties, debts, accounts, promises, warranties, damages (consequential, punitive or statutory), claims for extra-contractual damages, injuries, rights, agreements, requests for relief, costs, expenses, penalties, fees, sums of money, losses, liabilities, Claims or Demands of any kind, nature, character or description whatsoever, in law or in equity, whether presently known or unknown, asserted or unasserted, suspected or unsuspected, whether sounding in tort or contract, or arising under the statutes or administrative regulations of any jurisdiction, with respect to any and all past, present or future Claims of any type whatsoever that Reorganized FMP ever had, now has, or hereafter may have concerning:

(a)     Products Claims under, arising out of or relating to the Subject Policies.

(b)     Claims that were or could have been asserted in the Adversary Proceeding, the New Jersey Coverage Action, and/or the New York Coverage Action in connection with Products Claims under, arising out of or relating to the Subject Policies;

(c)     any violation or alleged violation (whether or not in bad faith) of any statute or regulation, including, without limitation, Unfair Claim Practices Acts or similar statutes of each of the fifty (50) states (where applicable) concerning, relating to and/or arising out of Products Claims under, arising out of or relating to the Subject Policies;

(d)     any negligent undertaking or alleged negligent undertaking by or on the part of the AIG Companies concerning, arising out of or relating to Products Claims under, arising out of or relating to the Subject Policies; or

23

CW 01043

(e)    any breach of contract, failure to abide by any duty or obligation, fraud, misrepresentation, nondisclosure, misconduct or alleged bad-faith committed by the AIG Companies prior to the Execution Date concerning, relating to and/or arising out of Products Claims under, arising out of or relating to the Subject Policies.

3.    The occurrence of the Trigger Date shall be deemed by the Parties to terminate any and all obligations whatsoever of the AIG Companies to Reorganized FMP for the Released Claims delineated in this Section 3.B with respect to Products Claims under, arising out of or relating to the Subject Policies.

4.    In furtherance of its express intent to effect the releases contained in this Section 3.B, Reorganized FMP, as of the Trigger Date, expressly waives any and all rights it may have under any contract, statute, code, regulation, ordinance, or common law, that may limit or restrict the effect of a general release of any Claims not known to or suspected to exist in its favor at the time of the execution of this Agreement concerning, relating to and/or arising out of the Released Claims delineated in this Section 3.B. Without limiting the foregoing releases, Reorganized FMP acknowledges and agrees that the AIG Companies have no further obligation whatsoever to Reorganized FMP to provide coverage, defense, indemnity and/or any further obligation whatsoever relating to, arising out of, and/or in connection with the Released Claims delineated in this Section 3.B. It is expressly agreed and understood that with respect to the Subject Policies, Reorganized FMP will not assert any other or further Claims whatsoever against the AIG Companies in connection with any liability that has arisen, or may arise in the future, out of the Released Claims delineated in this Section 3.B.

24

CW 01044

5.   REORGANIZED FMP ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS ATTORNEYS CONCERNING, AND IS FAMILIAR WITH, CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVES ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.

6.   Reorganized FMP expressly assumes the risk that acts, omissions, matters, causes or things may have occurred that it does not know or does not suspect to exist and hereby waives the terms and provisions of any statute, rule or doctrine of common law that either: (a) narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or (b) restricts or prohibits the releasing of such claims.

7.   It is the intention of Reorganized FMP to reserve no rights or benefits whatsoever in connection with the Released Claims delineated in this Section 3.B and to assure the AIG Companies their peace and freedom from all such Released Claims delineated in this Section 3.B.

25

CW 01045

C.    Releases by Cooper

1.    Effective on the Trigger Date, Cooper shall be deemed to (and hereby does) remise, release, covenant not to sue and forever discharge the AIG Companies from and against any and all past, present, existing, potential or future obligations for any manner of action, causes of action, choses in action, administrative action or proceedings, defense, indemnity, claims of bad faith, arbitrations, mediations, suits, duties, debts, accounts, promises, warranties, damages (consequential, punitive or statutory), claims for extra-contractual damages, injuries, rights, agreements, requests for relief, costs, expenses, penalties, fees, sums of money, losses, liabilities, Claims or Demands of any kind, nature, character or description whatsoever, in law or in equity, whether presently known or unknown, asserted or unasserted, suspected or unsuspected, whether sounding in tort or contract, or arising under the statutes or administrative regulations of any jurisdiction, with respect to any and all past, present or future Claims of any type whatsoever that Cooper ever had, now has, or hereafter may have concerning:

(a)    Products Claims under, arising out of or relating to the Subject Policies;

(b)    any violation or alleged violation (whether or not in bad faith) of any statute or regulation, including, without limitation, Unfair Claim Practices Acts or similar statutes of each of the fifty (50) states (where applicable) concerning, relating to and/or arising out of Products Claims under, arising out of or relating to the Subject Policies, and/or any disputes associated therewith;

26

CW 01046

(c)   any negligent undertaking or alleged negligent undertaking by or on the part of the AIG Companies relating to Products Claims under, arising out of or relating to the Subject Policies; or

(d)   any breach of contract, failure to abide by any duty or obligation, or other misconduct or alleged bad-faith committed by the AIG Companies prior to the Execution Date concerning, relating to and/or arising out of Products Claims under, arising out of or relating to the Subject Policies.

(e)   The occurrence of the Trigger Date shall be deemed by the Parties to terminate any and all obligations whatsoever of the AIG Companies to Cooper with respect to Products Claims under, arising out of or relating to the Subject Policies.

2.   In furtherance of its express intent to effect the releases contained in this Section 3.C, Cooper, as of the Trigger Date, expressly waives any and all rights it may have under any contract, statute, code, regulation, ordinance, or common law, that may limit or restrict the effect of a general release of any Claims not known to or suspected to exist in its favor at the time of the execution of this Agreement concerning, relating to and/or arising out of the Released Claims delineated in this Section 3.C. Without limiting the foregoing releases, Cooper acknowledges and agrees that the AIG Companies shall have no further obligation whatsoever to Cooper to provide coverage, defense, indemnity and/or any other benefits relating to, arising out of, and/or in connection with the Released Claims delineated in this Section 3.C. It is expressly agreed and understood that with respect to the Subject Policies, Cooper will assert no other or further Claims whatsoever against the AIG Companies in connection with any

27

CW 01047

liability that has arisen or may arise in the future out of the Released Claims delineated in this Section 3.C.

3.     COOPER ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS ATTORNEYS CONCERNING, AND IS FAMILIAR WITH, CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVES ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.

4.     Cooper expressly assumes the risk that acts, omissions, matters, causes or things may have occurred that it does not know or does not suspect to exist and hereby waives the terms and provisions of any statute, rule or doctrine of common law that either: (a) narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or (b) restricts or prohibits the releasing of such claims.

5.     It is the intention of Cooper to reserve no rights or benefits whatsoever in connection with the Released Claims delineated in this Section 3.C and to assure the AIG Companies their peace and freedom from all such Released Claims delineated in this Section 3.C.

6.     Nothing contained in this Section 3 or elsewhere in this Agreement or the Injunction Order shall release, and the Released Claims in this Section 3.C do

28

CW 01048

not include, any rights to coverage of, or any claims for coverage by, Cooper under, arising out of or relating to the non-products/non-completed operations limits of the Subject Policies.

D.    Releases By the AIG Companies

1.    At the same time the releases delineated in Sections 3.A, 3.B and 3.C above become effective, and except as provided in Section 6.D below, the AIG Companies shall be deemed to (and hereby do) remise, release, covenant not to sue and forever discharge the Trust, Reorganized FMP and Cooper forever from and against any and all past, present, existing, potential or future obligations for any manner of action, causes of action, choses in action, administrative action or proceedings, claims of bad faith or reverse bad faith, arbitrations, mediations, suits, duties, debts, accounts, promises, warranties, damages (consequential, punitive or statutory), claims for extra-contractual damages, injuries, rights, agreements, requests for relief, costs, expenses, penalties, fees, sums of money, losses, liabilities, or Claims of any kind, nature, character or description whatsoever, in law or in equity, whether presently known or unknown, asserted or unasserted, suspected or unsuspected, whether sounding in tort or contract, or arising under the statutes or administrative regulations of any jurisdiction, arising out of, or in connection with or relating to:

(a)    as to the Trust only, (i) Asbestos Claims, including Asbestos Products Claims, under, arising out of or relating to the Subject Policies; and (ii) Claims that were or could have been asserted in the Adversary Proceeding, the New Jersey Coverage Action, and/or the New York Coverage Action in connection with Asbestos Claims, including Asbestos Products Claims, under, arising out of or relating to the Subject Policies;

29

CW 01049

(b)    as to Reorganized FMP only, (i) Products Claims under, arising out of or relating to the Subject Policies; and (ii) Claims that were or could have been asserted in the Adversary Proceeding, the New Jersey Coverage Action, and/or the New York Coverage Action in connection with Asbestos Claims, including Asbestos Products Claims, under, arising out of or relating to the Subject Policies; and

(c)    as to Cooper only, Products Claims under, arising out of or relating to the Subject Policies.

2.    In furtherance of the AIG Companies' express intent to effect the releases contained in this Section 3.D, and except as provided in Section 8.D below:

(a)    the AIG Companies, as of the Trigger Date, expressly waive any and all rights they may have under any contract, statute, code, regulation, ordinance, or common law, that may limit or restrict the effect of a general release of any Claims or Demands not known to or suspected to exist in their favor at the time of the execution of this Agreement concerning, relating to and/or arising out of the Released Claims delineated in this Section 3.D;

(b)    without limiting the foregoing releases, the AIG Companies acknowledge and agree that the Trust (subject to the provisions of Section 2.F above), Reorganized FMP, and Cooper shall have no further obligations whatsoever to the AIG Companies relating to, arising out of, and/or in connection with the Released Claims applicable to each, as delineated in this Section 3.D;

(c)    it is expressly agreed and understood that with respect to the Released Claims delineated in subsection 3.D.1.(a) above, the AIG Companies will not assert any other or further Claims whatsoever against the Trust;

30

CW 01050

(d)   it is expressly agreed and understood that with respect to the Released Claims delineated in subsection 3.D.1.(b) above, the AIG Companies will not assert any other or further Claims whatsoever against Reorganized FMP; and

(e)   it is expressly agreed and understood that with respect to the Released Claims delineated in subsection 3.D.1.(c) above, the AIG Companies will not assert any other or further Claims whatsoever against Cooper.

3.   Notwithstanding anything to the contrary herein, nothing in this Section 3.D shall be construed as releasing the Trust, Reorganized FMP or Cooper from their respective obligations under this Agreement.

4.   THE AIG COMPANIES ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.

5.   The AIG Companies expressly assume the risk that acts, omissions, matters, causes or things may have occurred that they do not know or do not suspect to exist and hereby waive the terms and provisions of any statute, rule or doctrine of common law that either:  (a) narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related to such

31

CW 01051

acts, omissions, matters, causes or things; or (b) restricts or prohibits the releasing of such claims.

6.     Except as set forth in Section 2.F as to the Trust only, it is the intention of the AIG Companies to reserve no rights or benefits whatsoever in connection with the Released Claims delineated in this Section 3.D and to ensure the Trust, Reorganized FMP and Cooper their peace and freedom from all such Released Claims delineated in this Section 3.D.

E.    Upon the Trigger Date, the Parties shall be bound by the releases delineated in this Section 3.

F.    Exhaustion/Impairment of Policy Limits

The occurrence of the Trigger Date shall be deemed by the Parties:

1.     as to the Trust and Reorganized FMP, to exhaust all limits of liability, including without limitation all occurrence and aggregate limits under the Subject Policies, except insofar as this Section 3 limits the extent of releases as to the Subject Policies.  If any Person thereafter inquires regarding the impairment or exhaustion of the limits of the Subject Policies, to the extent that such limits of liability are released pursuant to this Section 3, the Trust, Reorganized FMP, and the AIG Companies shall represent that all such limits of liability have been exhausted and are no longer available to the Trust and Reorganized FMP; and

2.     as to Cooper, to exhaust all limits of liability applicable to Products Claims under, arising out of or relating to the Subject Policies.  If any Person thereafter inquires regarding the impairment or exhaustion of the limits of the Subject Policies, Cooper and the AIG Companies shall represent that all limits of liability applicable to

CW 01052

Products Claims under or in connection with the Subject Policies have been exhausted and are no longer available to Cooper.

4.    **Dismissal of Adversary Proceeding, New Jersey Coverage Action and New York Coverage Action**

A.    No later than ten (10) Business Days following the Trigger Date, Reorganized FMP and/or the Trust (as applicable) will dismiss with prejudice its Claims, counterclaims or cross-claims (if any) against the AIG Companies in the Adversary Proceeding, the New Jersey Coverage Action, and the New York Coverage Action, with respect to Released Claims. It shall not be a breach of this Agreement if Reorganized FMP and/or the Trust (as applicable) is unable to file a notice of dismissal with prejudice of its Claims, counterclaims or cross-claims (if any) with respect to Released Claims against the AIG Companies in the Adversary Proceeding because of the March 28, 2007 Order of the District Court abstaining from the Adversary Proceeding.

B.    No later than ten (10) days following the Trigger Date, the AIG Companies shall dismiss with prejudice their Claims, counterclaims or cross-claims (if any) against the Trust, Reorganized F-M Corp., Reorganized FMP, and Cooper in the Adversary Proceeding, the New Jersey Coverage Action, and the New York Coverage Action, (as applicable) with respect to Released Claims. It shall not be a breach of this Agreement if the AIG Companies are unable to file a notice of dismissal with prejudice of its Claims, counterclaims or cross-claims (if any) with respect to Released Claims against the Trust, Federal-Mogul Corporation, Federal-Mogul Products, Inc., Cooper, in the Adversary Proceeding because of the March 28, 2007 Order of the District Court abstaining from the Adversary Proceeding.

33

CW 01053

C.     The Parties shall bear their own costs, expenses, and counsel fees in the Adversary Proceeding, the New Jersey Coverage Action, and the New York Coverage Action.  Nothing herein shall prevent the Trust (as applicable), Reorganized F-M Corp., and/or Reorganized FMP from recovering their costs, expenses and counsel fees in the Adversary Proceeding, the New Jersey Coverage Action, and the New York Coverage Action from any Entity other than the AIG Companies.

5.     **Defense of the Third-Party Injunction**

A.     In the event that, following the Trigger Date, any Claim is brought against the AIG Companies that is subject to the Third Party Injunction, the Trust will exercise its reasonable best efforts (at its sole expense) to establish that such Claim is enjoined as to the AIG Companies by operation of the Third Party Injunction.  To that end, the Trust will, at its expense, defend the application of the Third Party Injunction as to any Claim asserted against the AIG Companies that is subject to the Third Party Injunction. The Trust shall not have any obligation to further defend or to indemnify any Claim that is not subject to the Third Party Injunction.

B.     Within fifteen (15) Business Days of the AIG Companies' receipt of any demand, notice, summons or other process in connection with any Claim that the AIG Companies reasonably believe is subject to the Third Party Injunction, the AIG Companies shall forward such demand, notice, summons or other process to the Trust. The Trust shall notify the AIG Companies in writing within fifteen (15) Business Days of its receipt of notice of such Claim from the AIG Companies whether the Trust agrees that such Claim triggers the Trust's obligations pursuant to Section 5.A above.  In the event that there is a dispute as to whether a Claim triggers the Trust's obligations

34

CW 01054

pursuant to Section 5.A above, the Trust and the AIG Companies shall meet and confer to attempt to resolve any such dispute. If the Trust and the AIG Companies are unable to resolve such dispute by meeting and conferring, they may litigate before the Bankruptcy Court (or, if the Bankruptcy Court refuses to exercise jurisdiction, before any court of competent jurisdiction) whether the Claim at issue triggers the Trust's obligations pursuant to Section 5.A above. While such dispute remains unresolved, the AIG Companies shall have the right to defend the Claim they contend is subject to the Third Party Injunction as they deem appropriate, but shall be entitled to reimbursement from the Trust of all reasonable expenses incurred by the AIG Companies in defending such Claim, in the event that the Bankruptcy Court, the District Court, or any court of competent jurisdiction later determines that the Claim at issue triggered the Trust's obligations pursuant to Section 5.A above. The AIG Companies shall cooperate reasonably with the Trust with respect to the obligations set forth in this Section 5.

6.   **Bankruptcy-Related Obligations**

A.   The Trust shall file, no later than ten (10) Business Days after the Execution Date, a motion seeking entry of the Injunction Order, which motion shall be in a form and in substance reasonably satisfactory to the AIG Companies (the "Motion"). The AIG Companies will reasonably support the Trust's efforts to obtain entry of the Injunction Order.

B.   Adequate notice of the Motion and of the hearing on the Motion shall be given by mailing a copy of the Motion and notice of the hearing on the Motion to: (1) the counsel for the respective Official Committees (to the extent such Official Committees continue in existence and have standing and capacity pursuant to Section

35

CW 01055

11.7 of the Fourth Amended Plan; (2) counsel for the FCR; (3) all other Persons or Entities, including but not limited to Federal-Mogul Products, Inc.'s insurers, that, as of the date the Motion was filed, had filed a notice of appearance or other demand for service of papers in the Reorganization Cases; (4) Federal-Mogul Products, Inc.'s insurers that are or were parties to the Adversary Proceeding, the New York Coverage Action, and/or the New Jersey Coverage Action; and (5) any other presently existing Entities that are insureds or have claimed to be insureds under the Subject Policies, solely to the extent those Persons are known to the Trust.

C.    Subject to the provisions of subsections 6.F.1 and 6.F.2 below, immediately upon the Execution Date, unless and until this Agreement becomes null and void pursuant to its terms (if ever), the AIG Companies shall not actively assist or cooperate with any other party in connection with the Adversary Proceeding, the New York Coverage Action, the New Jersey Coverage Action or the appeal from the Bankruptcy Court appealing the Order of the Bankruptcy Court, entered on March 19, 2008 by Judge Judith K. Fitzgerald in bankruptcy case number 01BK10578 as it pertains to the Subject Policies (the "Bankruptcy Appeal"), except as to Claims not released under this Agreement, and only to the extent any such Claims may be involved in the Adversary Proceeding, the New York Coverage Action, the New Jersey Coverage Action or the Bankruptcy Appeal.

D.    Within two (2) days after the Trigger Date, unless and until this Agreement becomes null and void pursuant to its terms (if ever), the AIG Companies shall withdraw with prejudice:

CW 01056

1.     their participation in any and all of the pending contested matters related in any way to the Reorganization Cases, the Adversary Proceeding, the New York Coverage Action, the New Jersey Coverage Action or the Bankruptcy Appeal, except as to Claims not released under this Agreement and only to the extent any such Claims may be involved in the Adversary Proceeding, the New York Coverage Action, the New Jersey Coverage Action or the Bankruptcy Appeal, and any related proceedings; and

2.     each of the proofs of claim set forth on Attachment B hereto to the extent that such proofs of claim relate to (a) Products Claims under, arising out of, or relating to the Subject Policies; and (b) Claims that were or could have been asserted in the Adversary Proceeding, the New Jersey Coverage Action, and/or the New York Coverage Action in connection with Asbestos Claims, including Asbestos Products Claims, under, arising out of or relating to the Subject Policies; *provided*, however, that such proofs of claim shall not be withdrawn to the extent they relate to matters other than those specified in clauses (a) and (b) above.

E.     The AIG Companies shall not assist or cooperate with any other party with respect to defenses or limitations to insurance coverage for Wagner Asbestos Claims asserted against any of the reorganized F-M Debtors, the Trust, or Cooper.

F.     Following the Trigger Date, the Trust and Cooper (but as to Cooper, only with respect to subsection 6.F.2 as it applies to the Adversary Proceeding, the New Jersey Coverage Action, the New York Coverage Action or the Bankruptcy Appeal) shall not:

CW 01057

1.  serve any new discovery or pursue any existing discovery as to the AIG Companies pertaining to insurance coverage for the Released Claims; or

2.  Introduce evidence in any way related to the AIG Companies in the Adversary Proceeding, the New Jersey Coverage Action, the New York Coverage Action or the Bankruptcy Appeal; *provided, however,* that the Trust may introduce:

(a)  with the consent of the AIG Companies, which consent shall not be withheld unreasonably, this Agreement and the Settlement Payments to be paid hereunder (i) for the purposes of effectuating insurance coverage from an insurer other than the AIG Companies, so long as not presented as any kind of admission by the AIG Companies that they, in fact, owed obligations under the Subject Policies; (ii) in connection with any claim for contribution, subrogation, indemnification, reimbursement or other similar claim asserted against the AIG Companies with respect to coverage for Wagner Claims; and/or (iii) for the purposes of demonstrating the exhaustion of the products/completed operations limits under the Subject Policies;

(b)  the Subject Policies; and

(c)  such portions of any documents or other materials that are not specific to the AIG Companies and that do not characterize any act, decision, obligation or position of the AIG Companies or characterize the terms and conditions of any of the Subject Policies.

G.  The Trust shall not seek to terminate, reduce, or limit the scope of the Third Party Injunction with respect to the AIG Companies.

38

CW 01058

7.    **Effectiveness Of Agreement And Voidability**

A.    This Agreement is subject to the contingency set forth in this Section 7.A. If the Court does not enter an order that provides that the AIG Companies are entitled to the protections of the Third-Party Injunction, then any Party (other than Cooper) may declare this Agreement null and void by providing written notice to the other Parties in the manner provided in Section 17 below within sixty (60) days of the date on which such order becomes a Final Order, in which case, this Agreement shall terminate, subject to the provisions of Section 7.B below.

B.    Notwithstanding anything in this Agreement to the contrary, in the event this Agreement is declared by any Party (other than Cooper) to be null and void pursuant to this Section 7:

1.    this Agreement, other than Sections 1, 7, 12, 13, and 17 (which sections shall remain in full force and effect), shall be vitiated and shall be a nullity and shall be void ab initio;

2.    upon thirty (30) days prior written notice to the Trust (pursuant to Section 17 below), the portion of the Settlement Payments that were paid by the AIG Companies to the Trust pursuant to Section 2 above, if any, together with any accrued interest thereon, shall be re-paid by the Trust to the AIG Companies;

3.    the Parties shall not be bound by the terms of any Injunction Order;

4.    the AIG Companies shall not be entitled to all of the rights and protections afforded to a Protected Party under the Plan, including the protection of an injunction under Section 524(g) of the Bankruptcy Code;

39

CW 01059

5.    the Parties shall have all of the rights, defenses and obligations under or with respect to the Subject Policies that they would have had absent this Agreement;

6.    the releases provided in Section 3 above shall become null and void ab initio;

7.    to the extent that the AIG Companies could have participated in any pending contested matters described in Section 6 above, the Parties shall be free to pursue their claims against one another in the Adversary Proceeding, the New Jersey Coverage Action, the New York Coverage Action and/or the Bankruptcy Appeal; and

8.    any otherwise applicable statutes of limitations or repose, or other time-related limitations, shall be deemed to have been tolled for the period from the Execution Date through the date that this Agreement is declared null and void, and no Party shall assert, plead, raise or otherwise rely on or take advantage of, whether actively or passively, any time-related defense to any Claim by any other Party related to such period, and if any Party breaches this obligation, it shall be deemed to have created a new cause of action against it at the time of such breach for which it shall be liable in damages equal to the amount of damages it avoided by reason of the breach.

**3.    Judgment Reduction**

The Parties agree that, to the extent any other insurer has or may have a contribution, subrogation, indemnification, reimbursement or other similar claim against one or more of the AIG Companies in connection with coverage for Released Claims, such other insurer may assert such claim as a defense or offset against any claim for coverage for underlying Released Claims that Reorganized FMP (as to Products Claims

40

CW 01060

only) and/or the Trust may assert against such insurer (an "Asbestos Coverage Claim").

An insurer's contribution, subrogation, indemnification, reimbursement or other similar claim against the AIG Companies in connection with coverage for Released Claims shall be allowed as an offset against an Asbestos Coverage Claim to the same extent and in the same amount as such contribution, subrogation, indemnification, reimbursement or other similar claim would have been allowable against the AIG Companies (except in the event of any injunction that was granted in connection with the confirmation of the Fourth Amended Plan), and said insurer shall receive a dollar-for-dollar credit equal to the amount awarded to said insurer in connection with its contribution, subrogation, indemnification, reimbursement or other similar claim against the AIG Companies in connection with coverage for Released Claims (the "Contribution Award"); or alternatively, Reorganized FMP (as to Products Claims only) and/or the Trust shall reduce the amount of any final binding arbitration award or final judgment against, or settlement proceeds to be received by Reorganized FMP (as to Products Claims only) and/or the Trust from, such other insurer by the amount of any final binding arbitration award or final judgment against, or settlement proceeds to be received by, such other insurer in connection with its claim for contribution, subrogation, indemnification, reimbursement or other similar claim against the AIG Companies in connection with coverage for Released Claims. The AIG Companies shall not be subject to liability for any Contribution Award, and under no circumstances shall the AIG Companies be required to pay any additional amounts to another insurer or the Trust as a result of or related to any Contribution Award. Reorganized FMP (as to Products Claims only) and the Trust shall cooperate with the AIG Companies in any litigation against the AIG Companies seeking contribution, subrogation, indemnification,

41

CW 01061

reimbursement or other similar payments with respect to any liability under the Subject Policies, to the extent such liability is released under this Agreement, by supporting any arguments advanced by the AIG Companies that their obligations with respect to such claims have been fully released, satisfied, and extinguished by this Agreement.

9.  **Assignment of Subrogation, Contribution and Reimbursement Rights Against Other Insurers**

Other than claims against the AIG Companies' reinsurers or retrocessionaires, the AIG Companies agree that they shall not seek reimbursement of any payments that they have made or are obligated to make under this Agreement or otherwise with respect to Released Claims, whether by way of a claim for contribution or subrogation, or otherwise, from any Entity other than the AIG Companies' reinsurers or retrocessionaires in their capacity as such. Reorganized FMP (as to Products Claims only) and the Trust shall use their reasonable best efforts to obtain from all insurers with which they settle an agreement similar to that set forth in the preceding sentence; *provided* that, notwithstanding anything to the contrary herein, the failure of Reorganized FMP and/or the Trust to obtain such an agreement from any other insurer with which they settle shall not constitute a breach of this Agreement. Notwithstanding the foregoing, subject to the effect of any injunction issued pursuant to section 524(g) of the Bankruptcy Code, the AIG Companies may file a cross-complaint or counterclaim against any Entity that has first asserted a claim seeking reimbursement for any payment that it has paid or is required to pay, whether by way of a claim for contribution and/or subrogation or otherwise, against the AIG Companies in connection with any Released Claims; *provided* that, to the extent the AIG Companies recover any amount in respect of such cross-complaint or counterclaim from such third party, the proceeds

42

CW 01062

of such recovery shall be paid by the AIG Companies per the instruction of Reorganized FMP and/or the Trust (as applicable), after the AIG Companies are reimbursed from such proceeds for their reasonable fees, costs and expenses incurred in prosecuting and defending such claim and after crediting the AIG Companies for any amounts they may owe to such third parties as a result of the third parties' claims against the AIG Companies. For the avoidance of doubt, any payment of such proceeds per the instructions of Reorganized FMP and/or the Trust shall be in addition to, and shall not reduce or count towards the AIG Companies' obligation under this Agreement to pay, in full, the Settlement Payments pursuant to and in accordance with Section 2 above.

10.    **Cooperation**

A.    The AIG Companies shall use their reasonable best efforts to comply with reasonable requests from the Trust for claims payment records or policies issued by the AIG Companies required by the Trust in connection with any insurance claims, arbitrations, or litigations related to the Settlement Payments (or any portion thereof), this Agreement or the Asbestos Claims; *provided, however* that the Trust shall have no obligation to pay any internal costs of the AIG Companies including costs associated with time or expense of the AIG Companies, or any of its agents or employees.

B.    Reorganized FMP and the Trust shall use their reasonable best efforts to comply with reasonable requests from the AIG Companies for documents and other information required by the AIG Companies in connection with any reinsurance claims, arbitrations, or litigations relating to the Settlement Payments, this Agreement or the Asbestos Claims so long as claimant information is maintained in confidence; *provided, however* that the AIG Companies shall have no obligation to pay any internal costs of

43

CW 01063

Reorganized FMP and/or the Trust including costs associated with time or expense of Reorganized FMP and/or the Trust, or any of their agents or employees.

11.    **Reasonably Equivalent Value**

The Parties acknowledge and agree that: (i) this Agreement was bargained for and entered into in good faith and as the result of arm's-length negotiations; and (ii) this Agreement is based on their respective independent assessments, with the assistance and advice of counsel, that the payments and other benefits to be received by the Parties pursuant to this Agreement constitute a fair and reasonable settlement of the Parties' claims against each other and constitute reasonably equivalent value for the releases, indemnity, and other benefits conveyed under this Agreement.

12.    **Confidentiality**

A.    Except as set forth in Section 12.B below, the Parties agree that all matters relating to the negotiation of this Agreement shall be confidential and are not to be disclosed except by order of a court of competent jurisdiction or by written agreement of the Parties.

B.    In the event that a private litigant, by way of document request, interrogatory, subpoena, or questioning at deposition, trial, or other proceeding attempts to compel disclosure of anything protected by this Section 12, the Party from whom disclosure is sought shall decline to provide the requested information on the ground that this Agreement prevents such disclosure. In the event that such private litigant seeks an order from any court or governmental body to compel such disclosure, or in the event that a court, government official, or governmental body (other than the Internal Revenue Service or Securities and Exchange Commission) requests or

44

CW 01064

requires disclosure of anything protected by this Section 12, the Party from whom disclosure is sought shall immediately give written notice by facsimile or hand-delivery to the other Parties, and shall immediately provide copies of all notice papers, orders, requests or other documents in order to allow each Party to take such protective steps as may be appropriate. Notice under this Section 12 shall be made pursuant to Section 17 below.

C.    All materials protected by this Section 12 shall be deemed to fall within the protection afforded to compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

D.    Notwithstanding anything in this Section 12 to the contrary, nothing in this Agreement shall prevent any Party from disclosing or releasing this Agreement in any form and at any time after the Execution Date:

1.    to reinsurers or retrocessionaires of the AIG Companies directly or through intermediaries;

2.    to outside auditors, attorneys or accountants of any Party;

3.    to the extent required by law, including, to the extent applicable, to the Internal Revenue Service, the Securities and Exchange Commission, or other U.S. or other governmental authority that properly requires disclosure by a Party hereto;

4.    to the extent and in any form that such information is required to be disclosed or released to satisfy reporting requirements imposed by law, including any Federal securities laws; and

5.    as necessary and with the consent of all Parties, in connection with the entry of the Injunction Order.

CW 01065

E.     The Trust may file with the Court a copy of this Agreement, together with the Motion.

13.   **Non-Prejudice and Construction of Agreement**

A.     This Agreement is not a contract of insurance, nor is this Agreement subject to rules of construction governing contracts of insurance, including without limitation, the doctrine of contra proferentum.   This Agreement and the payment hereunder are a compromise between the Parties and shall not be construed as an admission of coverage under the Subject Policies, nor shall this Agreement or any provision hereof be construed as a waiver, modification or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Policies, recognizing that the Parties will now be legally bound to the terms of this Settlement Agreement.

B.     This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions.   Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Persons outside the scope of this Agreement.  This Agreement is without prejudice to positions taken by the AIG Companies with regard to other insureds, and without prejudice to positions taken by the Trust with regard to other insurers.

C.     This Agreement is the jointly-drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed.   As such, no Party will claim that any ambiguity in this Agreement shall be construed against any other Party.

46

CW 01066

14.  **No Modification**

No change or modification of this Agreement shall be valid unless made in writing and signed by the Parties (or their attorney-in-fact) whose interests are affected by such change or modification.

15.  **Integration**

This Agreement, including Attachment A hereto, constitutes the entire agreement among the Parties with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, among the Parties with respect hereto.

16.  **Execution**

There will be multiple signed originals of this Agreement, which may be executed in multiple counterparts. Facsimiles or scanned versions of signatures by the Parties shall be treated as originals.

17.  **Notices**

Unless another person is designated, in writing, for receipt of notices hereunder, notices to the respective Parties shall be sent to the following Persons:

If to The Trust:                Kirk P. Watson Esq., Managing Trustee
                                c/o K&L Gates
                                111 Congress Avenue, Suite 900
                                Austin, TX 78701
                                Tel. (512) 482-6805
                                Fax (512) 482-6859
                                email kirk.watson@klgates.com

                                and

47

CW 01067

Edward D. Robertson Jr. Esq., Trustee
c/o Bartimus, Frickelton, Robertson & Gorny
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel. (913) 266-2300
Fax (913) 266-2366
email chiprob@earthlink.net

and

Hon. Kenneth M. Kawaichi (Ret.), Trustee
c/o JAMS The Resolution Experts
100 Pringle Avenue, Suite 700
Walnut Creek, California 94596
Tel. (925) 938-5060
Fax (925) 938-6732
email kkawaichi@sbcglobal.net

With a copy (which shall         Stanley Levine, Esq.
not constitute notice for        Campbell & Levine LLC
purposes of this Agreement) to:  1700 Grant Building
                                 Pittsburgh, PA 15219
                                 Tel. (412) 261-0310
                                 Fax (412) 261-5066
                                 email sel@camlev.com

and

Bette M. Orr, Esq.
Gilbert Oshinsky LLP
1100 New York Avenue, NW, Suite 700
Washington, D.C. 20005
Tel. (202) 772-2323
Fax (202) 772-2325
email orb@gotofirm.com

48

CW 01068

If to Cooper LLC:

Cooper Industries, LLC
Attn: General Counsel
600 Travis
Suite 5800
Houston, TX 77210-4446
Telephone: (713) 209-8407
Facsimile:  (713) 209-8989

With a copy (which shall
not constitute notice for
purposes of this Agreement) to:

Michael H. Ginsberg, Esq.
Jones Day
500 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 394-7919
Facsimile:  (412) 394-7959

If to Reorganized FMP:

General Counsel
Federal-Mogul Corporation
26555 Northwestern Highway
Southfield, MI 48034
Telephone:  (248) 354-7700
Facsimile:  (248) 354-8950
email:  Bobby.Katz@federalmogul.com

With a copy (which shall
not constitute notice for
purposes of this Agreement) to:

Kevin Lantry, Esq.
Sidley Austin Brown & Wood
555 West Fifth Street
Los Angeles, California  90013
Telephone:  (213) 896-6022
Facsimile:  (213) 896-6600
klantry@Sidley.com

49

CW 01069

If to the AIG Companies:

Steven K. Parness
Assistant Vice President
AIG Domestic Claims, Inc.
101 Hudson Street
29th Floor
Jersey City NJ 07302
Telephone: (201) 631-7061
Facsimile: (201) 631-5005

With a copy (which shall
not constitute notice for
purposes of this Agreement) to:

Thomas G. Wilkinson, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2000
Facsimile: (215) 665-2013

and

James B. Dolan, Jr., Esq.
Cozen O'Connor
200 Four Falls Corporate Center, Suite 400
West Conshohocken, PA 19482-0800
Telephone: (610) 941-5400
Facsimile: (610) 941-0711

18. **Representations and Warranties**

A.    The Trust represents and warrants that it has full authority to enter this Agreement as a binding and legal obligation of itself.   The person signing this Agreement on behalf of the Trust represents and warrants that he or she is authorized by the Trust to execute this Agreement as a binding and legal obligation of the Trust.

50

CW 01070

B.     Subject to the last clause of Section 1.H above, Cooper LLC represents and warrants that it has full corporate authority to enter this Agreement as a binding and legal obligation of itself, including full authority to grant the releases set forth in Section 3.C as a binding and legal obligation of itself.  The person signing this Agreement on behalf of Cooper LLC represents and warrants that he or she is authorized by Cooper LLC to execute this Agreement as a binding and legal obligation of Cooper LLC as to the releases set forth in Section 3.C.

C.     Cooper represents and warrants that it is not seeking and will not seek coverage under insurance policies issued by the AIG Companies to Cooper Industries, Inc. for Wagner Claims and claims that are or could be asserted in the Adversary Proceeding, the New Jersey Coverage Action, and/or the New York Coverage Action. For the avoidance of doubt, this representation and warranty does not apply to insurance policies issued by the AIG Companies to McGraw, Studebaker, and/or any other predecessor or successor of Cooper Industries, Inc. and/or Cooper.

D.     Cooper represents and warrants that, as of the Execution Date, it is not aware of the existence of any Asbestos Claim asserted against it involving Wagner that falls outside the products hazard or completed operations hazard of the Subject Policies.

E.     Reorganized FMP represents and warrants that it has full authority to enter this Agreement as a binding and legal obligation of itself, including full authority to grant the releases set forth in Section 3.B, as a binding and legal obligation of itself. The person signing this Agreement on behalf of Reorganized FMP represents and warrants that he or she is authorized by Reorganized FMP to execute this Agreement

51

CW 01071

as a binding and legal obligation of Reorganized FMP as to the releases set forth in Section 3.B.

    F.    The AIG Companies represent and warrant that they have full corporate authority to enter this Agreement as a binding and legal obligation of the AIG Companies including full authority to grant the releases set forth in Section 3.D as a binding and legal obligation of the AIG Companies. The person signing this Agreement on behalf of the AIG Companies represents and warrants that he or she is authorized by the AIG Companies to execute this Agreement as a binding and legal obligation of the AIG Companies.

    G.    Each Party represents and warrants that it has conducted a diligent search for copies or other evidence of the Subject Policies, and that, as of the Execution Date, it is not aware of any the existence of any liability insurance policies issued to Studebaker or McGraw and subscribed to by the AIG Companies other than the Subject Policies listed on Attachment A hereto.

## 19.   Further Assurances

Each Party shall use its best efforts to carry out the provisions of this Agreement and to consummate, perform, and make effective the settlement contemplated hereby.

## 20.   Governing Law

This Agreement shall be governed by, and shall be construed in accordance with, the laws of Delaware without regard to its choice of law rules.

[The remainder of this page is left blank intentionally]

52

CW 01072

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**FOR THE FEDERAL-MOGUL U.S.**
**ASBESTOS PERSONAL INJURY TRUST**

By: _____

Name: KIRK WATSON

Title: MANAGING TRUSTEE

Date: 12/29/2008

**FOR REORGANIZED FEDERAL-MOGUL**
**PRODUCTS, INC.**

By: _____

Name: _____

Title: _____

Date: _____

**FOR COOPER INDUSTRIES, LLC**

By: _____

Name: _____

Title: _____

Date: _____

**FOR AIU INSURANCE COMPANY,**
**AMERICAN HOME ASSURANCE COMPANY,**
**AIG CASUALTY COMPANY (f/k/a/ BIRMINGHAM**
**FIRE INSURANCE COMPANY OF PENNSYLVANIA),**
**GRANITE STATE INSURANCE COMPANY,**
**INSURANCE COMPANY OF THE STATE OF**
**PENNSYLVANIA, LEXINGTON INSURANCE**
**COMPANY, AIG EUROPE S.A. (solely as successor**
**in interest to L'UNION ATLANTIQUE S.A.**
**D'ASSURANCES), AND NATIONAL UNION FIRE**
**INSURANCE COMPANY OF PITTSBURGH, PA**

By: _____

Name: _____

Title: _____

Date: _____

53

CW 01073

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**FOR THE FEDERAL-MOGUL U.S. ABSESTOS PERSONAL INJURY TRUST**

By: _____

Name: _____

Title: _____

Date: _____

**FOR REORGANIZED FEDERAL-MOGUL PRODUCTS, INC.**

By: _____

Name: Robert L. Katz

Title: General Counsel

Date: JAN 5 2009

**FOR COOPER INDUSTRIES, LLC**

By: _____

Name: _____

Title: _____

Date: _____

**FOR AIU INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, AIG CASUALTY COMPANY (f/k/a BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA), GRANITE STATE INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, LEXINGTON INSURANCE COMPANY, AIG EUROPE S.A. (solely as successor in interest to L'UNION ATLANTIQUE S.A. D'ASSURANCES), AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**

By: _____

Name: _____

Title: _____

Date: _____

CW 01074

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**FOR THE FEDERAL-MOGUL U.S. ASBESTOS PERSONAL INJURY TRUST**

By: _____

Name: _____

Title: _____

Date: _____

**FOR REORGANIZED FEDERAL-MOGUL PRODUCTS, INC.**

By: _____

Name: _____

Title: _____

Date: _____

**FOR COOPER INDUSTRIES, LLC**

By: _____

Name: Bruce Taub

Title: Sr. V.P. + General Counsel

Date: 12-30-08

**FOR AIU INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, AIG CASUALTY COMPANY (f/k/a/ BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA), GRANITE STATE INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, LEXINGTON INSURANCE COMPANY, AIG EUROPE S.A. (solely as successor in interest to L'UNION ATLANTIQUE S.A. D'ASSURANCES), AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**

By: _____

Name: _____

Title: _____

Date: _____

53

CW 01075

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**FOR THE FEDERAL-MOGUL U.S. ASBESTOS PERSONAL INJURY TRUST**

By: _____

Name: _____

Title: _____

Date: _____

**FOR REORGANIZED FEDERAL-MOGUL PRODUCTS, INC.**

By: _____

Name: _____

Title: _____

Date: _____

**FOR COOPER INDUSTRIES, LLC**

By: _____

Name: _____

Title: _____

Date: _____

**FOR AIU INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, AIG CASUALTY COMPANY (f/k/a/ BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA), GRANITE STATE INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, LEXINGTON INSURANCE COMPANY, AIG EUROPE S.A. (solely as successor in interest to L'UNION ATLANTIQUE S.A. D'ASSURANCES), AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**

By: _____

Name: STEVEN K. FARUZZI

Title: ASSISTANT VICE-PRESIDENT

Date: December 29, 2008

53

CW 01076

## ATTACHMENT A
## SUBJECT POLICIES

| ORIGINAL ISSUING CARRIER | POLICY NUMBER | POLICY START DATE | POLICY END DATE |
|---|---|---|---|
| AIU Insurance Company | 75100055 | 1/1/1978 | 3/1/1979 |
| AIU Insurance Company | 75-100054 | 1/1/1978 | 3/1/1979 |
| AIU Insurance Company | 75 100053 | 1/1/1978 | 3/1/1979 |
| AIU Insurance Company | 75101026 | 3/1/1979 | 3/1/1980 |
| AIU Insurance Company | 75101027 | 3/1/1979 | 3/1/1980 |
| AIU Insurance Company | 75101028 | 3/1/1979 | 3/1/1980 |
| AIU Insurance Company | 75-100908 | 3/1/1982 | 3/1/1983 |
| AIU Insurance Company | 75-103524 | 3/1/1983 | 3/1/1984 |
| AIU Insurance Company | 75-103525 | 3/1/1983 | 3/1/1984 |
| AIU Insurance Company | 75-103591 | 3/1/1984 | 3/1/1985 |
| AIU Insurance Company | 75-103592 | 3/1/1984 | 3/1/1985 |
| AIU Insurance Company | 75-103656 | 3/1/1985 | 3/1/1986 |
| AIU Insurance Company | 75-103663 | 3/1/1985 | 3/1/1986 |
| American Home Assurance Company | CB-355594 | 3/21/1969 | 3/21/1972 |
| American Home Assurance Company | CB-2692335 | 8/21/1972 | 1/1/1975 |
| American Home Assurance Company (London) | 501/A7414904 | 10/1/1974 | 10/1/1977 |
| Birmingham Fire Insurance Company of Pennsylvania | 5E6073331 | 1/1/1978 | 3/1/1979 |
| Birmingham Fire Insurance Company of Pennsylvania | 5E 6073469 | 3/1/1979 | 3/1/1980 |
| Granite State Insurance Company | SCLD 80-94000 | 10/1/1976 | 1/1/1977 |
| Granite State Insurance Company | SCLD 80-94063 | 1/1/1977 | 1/1/1978 |
| Granite State Insurance Company | SCLD 80-94064 | 1/1/1977 | 1/1/1978 |
| Granite State Insurance Company | 6680-1963 | 3/1/1980 | 3/1/1981 |

CW 01077

| ORIGINAL ISSUING CARRIER | POLICY NUMBER | POLICY START DATE | POLICY END DATE |
|---|---|---|---|
| Granite State Insurance Company | 6681-2370 | 3/1/1981 | 3/1/1982 |
| Granite State Insurance Company | 6681-2371 | 3/1/1981 | 3/1/1982 |
| Granite State Insurance Company | 6682-3216 | 3/1/1982 | 3/1/1983 |
| Granite State Insurance Company | 6682-3217 | 3/1/1982 | 3/1/1983 |
| Granite State Insurance Company | 6683-3982 | 3/1/1983 | 3/1/1984 |
| Granite State Insurance Company | 6683-3983 | 3/1/1983 | 3/1/1984 |
| Granite State Insurance Company | 6684-4637 | 3/1/1984 | 3/1/1985 |
| Granite State Insurance Company | 6685-5584 | 3/1/1985 | 3/1/1986 |
| The Insurance Company of the State of Pennsylvania | 41767295 | 10/1/1976 | 1/1/1977 |
| Lexington Insurance Company | GC5500201 | 10/1/1974 | 1/1/1977 |
| Lexington Insurance Company | 551 1459 | 5/15/1979 | 3/1/1980 |
| Lexington Insurance Company (London) | PY205379 | 5/15/1979 | 3/1/1980 |
| Lexington Insurance Company (London) | 549/55162/80 | 3/1/1980 | 3/1/1981 |
| Lexington Insurance Company (London) | 543/55163/80 | 3/1/1980 | 3/1/1981 |
| L'Union Atlantique S.A. D'Assurances (London) | 543/55162/80 | 3/1/1980 | 3/1/1981 |
| L'Union Atlantique S.A. D'Assurances (London) | 543/55163/80 | 3/1/1980 | 3/1/1981 |
| National Union Fire Insurance Company of Pittsburgh, PA | CB1011901 | 1/1/1975 | 1/1/1978 |
| National Union Fire Insurance Company of Pittsburgh, PA | 1229452(A) | 1/1/1978 | 3/1/1979 |
| National Union Fire Insurance Company of Pittsburgh, PA | 1229452(B) | 1/1/1978 | 3/1/1979 |

CW 01078

| ORIGINAL ISSUING CARRIER | POLICY NUMBER | POLICY START DATE | POLICY END DATE |
|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, PA | GLA 127-0148(A) | 3/1/1979 | 3/1/1980 |
| National Union Fire Insurance Company of Pittsburgh, PA | GLA 127-0148(B) | 3/1/1979 | 3/1/1980 |
| National Union Fire Insurance Company of Pittsburgh, PA | 1225321(A) | 3/1/1979 | 3/1/1980 |
| National Union Fire Insurance Company of Pittsburgh, PA | 1225321(B) | 3/1/1979 | 3/1/1980 |
| National Union Fire Insurance Company of Pittsburgh, PA | 1226440 | 3/1/1980 | 3/1/1981 |
| National Union Fire Insurance Company of Pittsburgh, PA | 1226084 | 3/1/1981 | 3/1/1982 |
| National Union Fire Insurance Company of Pittsburgh, PA | 9605832 | 3/1/1985 | 3/1/1986 |

CW 01079

## ATTACHMENT B
## AIG COMPANIES' PROOFS OF CLAIM

| Claim Number | Debtor | Total Amount of Claim at Time Case Filed |
|---|---|---|
| 6638 | Federal-Mogul Piston Rings, Inc. | Unliquidated |
| 6639 | Federal-Mogul Corporation | Unliquidated |
| 6640 | Federal-Mogul Ignition Company | Unliquidated |
| 6641 | Federal-Mogul U.K. Holdings, Inc. | Unliquidated |
| 6642 | Federal-Mogul FX, Inc. | Unliquidated |
| 6643 | Federal-Mogul Machine Tool, Inc. | Unliquidated |
| 6644 | Ferodo America, Inc. | $1,335,000.00 |
| 6645 | Federal-Mogul Mystic, Inc. | Unliquidated |
| 6646 | Federal-Mogul Global Properties, Inc. | Unliquidated |
| 6647 | Federal-Mogul Venture Corporation | Unliquidated |
| 6648 | Federal-Mogul Puerto Rico, Inc. | Unliquidated |
| 6649 | Federal-Mogul Products, Inc. | Unliquidated |
| 6650 | Federal-Mogul Dutch Holdings | Unliquidated |
| 6651 | Federal-Mogul World Wide, Inc. | Unliquidated |
| 6652 | Federal-Mogul Global Inc. | Unliquidated |
| 6653 | McCord Sealing Inc. | Unliquidated |
| 6654 | J.W.J. Holdings | Unliquidated |
| 6655 | Federal-Mogul Powertrain, Inc. | Unliquidated |
| 6656 | Gasket Holdings Inc. | Unliquidated |
| 6657 | FM International LLC | Unliquidated |
| 6658 | Carter Automotive Company, Inc. | Unliquidated |
| 6659 | Felt Products Manufacturing Co. | Unliquidated |
| 6660 | T&N Industries Inc. | $94,203.00 |

CW 01080

To    : "Wakeman, MaryEllen" <MaryEllen.Wakeman@aiuholdings.com>
From  : <support@easylink.com>
        :
        :
Date  : Thu, 23 Apr 2009 14:48:08 -0400
Subject: Fax From:   0410425091136768800


Thank you for using EasyLink's Fax to E-mail service.

Attached is a 2 page fax that you received on Thu Apr 23 2009 18:48 GMT.

**AIG Domestic Claims**

101 Hudson Street, 29th Floor
Jersey City, NJ 07302

To: All Interested Reinsurers
From: Jeffrey Wactlar
Re: Insured: McGraw Edison
Date: March 12, 2009

This is a preliminary reserve based upon claim data. We will review the reserve periodically as additional information is received.

| Claim no. | Policy no. | Div. | Effective Dates | Limits |
|---|---|---|---|---|
| 170-053344 | 66801963 | 43 | 3/1/80-3/1/81 | $10M p/o $25M x $20M |
| 170-053345 | 6681-2370 | 43 | 3/1/81-3/1/82 | $15M p/o $25M x $25M |
| 170-053346 | 6682-3216 | 43 | 3/1/82-3/1/83 | $15M p/o $25M x $25M |
| 170-057620 | 6683-3982 | 43 | 3/1/83-3/1/84 | $15M p/o $25M x $25M |

Basic Information:

The asbestos-related bodily injury claims asserted against Federal Mogul arise out of its statue as successor in interest to Wagner Electric Corporation. Wagner was a wholly-owned subsidiary of Studebaker-Worthington, Inc. In 1979, Studebaker-Worthington was purchased by a subsidiary of the McGraw-Edison company. Wagner manufactured and sold asbestos-containing friction products, including brake assemblies and brake linings. Federal Mogul filed for bankruptcy in 2001. From 1998 to 2001, there were approximately 35,000 asbestos related claims filed against Federal Mogul as successor to Wagner.

Description of Claim:

Of the 35,000 pending claims, 2.2% are mesothelioma claims, 4.4% are lung cancer claims, 0.28% are other cancer claims, and 0.09% are characterized as "other". The majority of the claims are asbestosis. Federal Mogul paid $84.1 million in response to the Wagner asbestos claims before filing for bankruptcy in 2001.

The AIG Member Companies ("AIG") issued 40 excess liability policies with aggregate available limits totaling $175.8 million. The bankruptcy court is currently making final determinations on Federal Mogul's settlement agreements with its carriers. We recently reached a settlement with Federal Mogul which will become operative upon the Court's approval. This settlement will conclude the current declaratory judgment actions regarding coverage for the Wagner claims pending before the New Jersey and New York state courts.

CW 01082

APR-23-2009 14:25   FROM:                                    TO:918666853631          P:2/2

March 27, 2009
Page 2

The information and document contained herein is provided for the sole
purpose of responding to our inquiry and should not be used for any purpose other
than the handling of our claim by intermediaries and our reinsure. The documents
and information provided herewith, or portions thereof, are privileged (as attorney
client privilege or work product) and are provided with the understanding that you
will maintain their confidentiality. If any information contained in this response
or its enclosures is forwarded to retrocessionaires, we expect that the reinsurer
will attempt to ensure that its confidentiality is maintained. If any other party
requests this information or documentation, please advise us as to the identity of
the requesting party and the nature of the request. No information or
documentation provided with or in this letter should be given to any other party
without our prior written approval.

CW 01083